**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PICTIVA DISPLAYS INTERNATIONAL LTD., KEY PATENT INNOVATIONS LIMITED** | ) | |
| Plaintiffs, | ) | Civil Action No. 2:23-cv-00495-JRG |
| v. | ) | JURY TRIAL DEMANDED |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.** | ) | [redacted] |
| Defendants. | ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO SAMSUNG DISPLAY CO., LTD.'S MOTION TO AMEND THE PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**


I. FACTUAL BACKGROUND .......... 1

II. LEGAL STANDARD .......... 2

III. ARGUMENT .......... 3

A. SDC's Motion Is Untimely. .......... 3

B. All Discretionary Factors Weigh Against Modifying the Protective Order. .......... 3

C. SDC's Arguments are Meritless. .......... 6

IV. CONCLUSION .......... 7

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan, Inc. v. Teva Pharms. USA*,
2017 WL 772486 (E.D. Tex. Feb. 28, 2017) .......... 2, 3, 4, 5

*Headwater Res. LLC v. Samsung Elecs. Am., Inc.*,
2024 WL 1468923 (E.D. Tex. Apr. 4, 2024) .......... 2

*Raytheon Co. v. Indigo Sys. Corp.*,
2008 WL 4371679 (E.D. Tex. Sept. 18, 2008) .......... 4, 5

*Ring Plus, Inc. v. Cingular Wireless, LLC*,
2007 WL 9702621 (E.D. Tex. July 24, 2007) .......... 3

*U.S. v. Ocwen Loan Serv'g, LLC*,
No. 4:12-cv-543, 2016 WL 278968 (E.D. Tex. Jan. 22, 2016) .......... 4

**Rules**

Patent Rule 3-4 .......... 1

Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited (collectively, "Pictiva") oppose Samsung Display Co., Ltd.'s ("SDC") motion to amend the protective order (Dkt. 132). SDC's motion is not only untimely, but is also not supported by good cause.

## I. FACTUAL BACKGROUND

The deadline to comply with P.R. 3-4 was May 6, 2024. Defendants failed to produce any responsive documents by that date, [redacted]. Based on that representation, Pictiva served a subpoena on SDC on June 14, 2024, and attached the protective order agreed upon by the parties and entered by the Court ("PO"). SDC served objections and responses on June 27, 2024, agreeing to produce responsive documents once it received authorization from [redacted] without making any objection to the PO or request to modify it.

SDC started producing documents in September 2024, but several key categories of highly relevant technical documents (e.g., GDS files, recipes, run specifications, and other technical documents concerning [redacted]) were missing. After Pictiva sent multiple follow-ups asking why this information was missing, SDC notified Pictiva on the Wednesday before Thanksgiving that—rather than producing documents concerning [redacted] under an AEO designation as contemplated by the PO—it had produced them under the restrictive "source code" designation. Dkt. 132-3 at 3 (Dec. 3 email from Zhong to Hausman). As a result, Pictiva can only access the documents by traveling to Samsung's counsel's office, and the documents are also subject to burdensome use and printing restrictions.

On December 2, 2024, Pictiva conducted a review of SDC's "source code" production. Because the majority of the documents housed on the source code computer are in Korean and the computer lacks any capability to run Pictiva's automated translation API, Pictiva had to hire a

translator at significant cost to review the documents. Pictiva's review confirmed that that none of the materials produced on the "source code" computer are "computer source code" or "live data (that is, data as it exists residing in a database or databases)," the only types of documents that qualify as "Source Code Materials" under the PO. Dkt. 48, ¶ 8.

SDC does not dispute that "[u]nder the PO, source code designation is for 'source code' or live data," and has confirmed that it "does not assert that the recipes or the specification documents fall under either category." Dkt. 122-1 at 5. Nevertheless, SDC refuses to re-designate recipes or run specifications; nor did SDC agree to Pictiva's proposed compromise for SDC to provide paper print outs of all the relevant documents from the source code computer or provide the documents electronically under a heightened AEO designation where they are kept them on a locked computer in Pictiva's outside counsel's office. *See, e.g.*, Ex. 1; Ex. 2.

Samsung's refusal to properly designate these documents has already prejudiced Pictiva by delaying its ability to depose SDC witnesses on these highly relevant documents and drastically increasing the associated costs. Indeed, SDC's improper designation of these documents precludes Pictiva from taking the depositions of SDC's technical witnesses remotely, and SDC also refuses to produce its witnesses in the U.S. at the location of the source code computer. This prompted Pictiva to file a motion to de-designate the documents on December 17, 2024. Dkt. 122. It was not until after Pictiva filed that motion that SDC filed the instant Motion to modify the PO.

## II. LEGAL STANDARD

When deciding whether to modify a protective order, courts in this District consider four factors: "(1) the nature of the protective order, (2) the foreseeability, at the time of issuance of the order, of the modification requested, (3) the parties' reliance on the order, and most significantly (4) whether good cause exists for modification." *Headwater Res. LLC v. Samsung Elecs. Am., Inc.*, 2024 WL 1468923, at *1 (E.D. Tex. Apr. 4, 2024); *Allergan, Inc. v. Teva Pharms. USA*, 2017 WL 772486, at *4

(E.D. Tex. Feb. 28, 2017). The movant "bears the burden of showing good cause for the modification." *Allergan*, 2017 WL 772486, at *3.

## III. ARGUMENT

### A. SDC's Motion Is Untimely.

A motion to amend a protective order "is generally untimely if it is made after the date the discovery material was to be produced." *Ring Plus, Inc. v. Cingular Wireless, LLC*, 2007 WL 9702621, at *3 (E.D. Tex. July 24, 2007). Here, Pictiva served a document subpoena on SDC on June 14, 2024, and SDC's served its response on June 27, 2024. In that response, SDC did not raise any issues with the adequacy of the PO or otherwise request modification of the definition of "source code." Nor did SDC request such a modification when it began producing documents in September 2024. Instead, SDC resorted to self-help by mis-designating the documents, waiting for Pictiva to object and file a motion to de-designate, and only then filing this Motion. SDC's failure to timely raise this issue is particularly egregious in light of its new revelation that it represented to [redacted] back in June 2024 that [redacted], even though SDC had a copy of the PO and knew that the documents did not meet the definition of "source code." SDC's lack of diligence alone justifies denial of its Motion. *See id.* (finding "Plaintiff failed timely to move to amend the Agreed Protective Order" because it "waited almost four months after the date its responses to Defendants' discovery requests were due").[1]

### B. All Discretionary Factors Weigh Against Modifying the Protective Order.

Even if the Court finds SDC's delay in filing this Motion is excusable, denial is still warranted because SDC cannot satisfy its burden to show the discretionary factors favor its modifications. In fact, SDC failed to present any arguments or evidence addressing the relevant factors.

[1] SDC cannot claim ignorance on this issue, given that its counsel's has specifically requested modification of the PO to address issues raised by another third-party subpoenaed in this case.

**Nature of the Protective Order**: "The 'nature' of the protective order refers to 'its scope and whether it was court imposed or stipulated to by the parties.'" *Allergan*, 2017 WL 772486, at *4. Here, the PO was stipulated to by Pictiva and Defendants and then entered by the Court. It contains a provision that specifically identifies categories of information that qualify as "source code." Dkt. 48, ¶ 8. SDC's proposed modification expands that definition to include additional categories. This type of specific provision is "the least susceptible to modification." *Raytheon Co. v. Indigo Sys. Corp.*, 2008 WL 4371679, at *2 (E.D. Tex. Sept. 18, 2008) ("Specific protective order are the narrowest type and cover specifically identified information," and "are the least susceptible to modification").

SDC argues that the PO was negotiated with its parent entity (SEC), not SDC, but it does not (and cannot) dispute that Pictiva provided it with a copy of the PO at the time the subpoena was served, and that it served responses and produced documents under the PO without objecting or requesting a modification. This indicates SDC's "willingness to date to litigate this case under the existing protective order," which "weighs against modification." *Allergan*, 2017 WL 772486, at *5.

**Foreseeability of the Requested Modification**: "When determining foreseeability, the court looks into 'whether the need for modification was foreseeable at the time the parties negotiated the original stipulated protective order.'" *U.S. v. Ocwen Loan Serv'g, LLC*, No. 4:12-cv-543, 2016 WL 278968, at *3 (E.D. Tex. Jan. 22, 2016). Although SDC was not directly involved in negotiating the PO, both its counsel and its parent company, SEC, knew or should have expected at the time the PO was entered that Pictiva would seek GDS files, run specifications or recipes. At the very least, SDC's proposed modification to the definition of "source code" was foreseeable at the time Pictiva served SDC with its document subpoena in June 2024 and when SDC requested approval from [redacted] to produce responsive documents. Therefore, the second factor weighs strongly against SDC's belated request. *Allergan*, 2017 WL 772486, at *5 (finding this factor "cuts against FCL," a non-party "to the case at the time the protective order was entered," because it "now seeks a modification that would

allow LPI in-house employees to review Allergan's confidential information, a desire that was foreseeable at the time FCL's case was consolidated—i.e., at the time FCL accepted the protective order as governing").

**Reliance on the protective order:** Pictiva "relied on the protective order in deciding the manner in which documents would be produced in discovery." *Allergan*, 2017 WL 772486, at *5. Specifically, Pictiva relied on the stipulated definition of "source code" when it negotiated the corresponding restrictions placed on that information, including printing allowances, use at depositions, inclusion in filings and expert reports, and presentation at trial. Had Pictiva known Defendants and SDC were going to take the position that these additional categories of documents would fall within the scope of "source code," it would have insisted on more relaxed printing restrictions, cost-shifting provisions, and provisions for obtaining official translations of "source code" material. Thus, Pictiva's heavy reliance "on the protective order counsels against modification." *Raytheon*, 2008 WL 4371679, at *3.

**Good cause**: "Good cause 'requires changed circumstances or new situations warranting modifications of a protective order." *Allergan*, 2017 WL 772486, at *6 (E.D. Tex. Feb. 28, 2017). Here, SDC points to no evidence of "changed circumstances or new situations" that would establish good cause. SDC became aware of the PO and its discovery obligations no later than June 14, 2024. SDC does not—and cannot—contend that circumstances have changed since then that would justify its belated request to modify the PO. The Court should thus deny the motion for this reason alone.

Moreover, granting this Motion would cause severe prejudice to Pictiva. Because SDC improperly produced GDS files, run specifications, and recipes on a locked source code computer in its SV office, Pictiva had to bear the cost of sending reviewers from Southern California and hiring an in-person translator to assist with the review because many of the documents were produced in Korean. SDC has exacerbated the prejudice to Pictiva by refusing to produce its witnesses in the U.S.

at the source code computer location and instead forcing Pictiva's counsel to travel to Korea to question its witnesses about the improperly designated documents. To the extent modification is allowed, Pictiva's litigation costs will be further multiplied because its experts will also have to travel to Samsung's counsel's office to review these highly relevant technical documents. It will also impede Pictiva's ability to reasonably present the information at trial, particularly given that much of the relevant material is in Korean and the current provisions in the PO do not account for obtaining certified translations of "source code" material.

### C. <u>SDC's Arguments are Meritless</u>.

None of SDC's arguments warrant modification of the PO. SDC first points to other cases where "GDS files" were included within the scope of "source code" under the protective order. In all of those cases, however, the parties agreed on that definition, which is clearly not the case here. Furthermore, the fact that SEC, SEA, and SDC have proposed that source code material include "*.gds files" in other cases, such as *Solas Oled LTD*, Case No. 1:21-cv-07201 (LGS) (S.D.N.Y.), and yet failed to do so here only confirms that they could have (and should have) done so at the time the PO was negotiated, if they believed the AEO designation was insufficient. Dkt. 132-5 (Ex. E).

SDC's claim that it cannot produce the GDS files, recipes or run specifications as AEO because it would violate its declaration [redacted] is similarly unavailing. As an initial matter, SDC fails to explain why it made such a declaration—which was inconsistent with the PO—in the first place, that [redacted]. SDC also does not address Pictiva's proposal of "producing the remaining source code files to Pictiva's counsel on a physical memory device to be loaded onto a single secured computer in Pictiva counsel's custody," which would undoubtedly comply with the alleged declaration without the need to make any modifications to the PO. Dkt. 122 at 5. SDC's claim is also belied by the fact that it has actually produced the same type of

information under an AEO designation. For example, source code SDC-SD-00001 through 00008 (which SDC is refusing to de-designate) provides [redacted], which is the same type of information contained in [redacted]:

[redacted]

*See, e.g.*, SSDC_00070979 at 709993. As another example, SDC-SC-000024-37 contain [redacted] that are substantially the same as those described in document SDC_00071124. The [redacted] shown in certain GDS files can also be found in documents such as SDC_00024367 at 24388, 24390-399. SDC provides no explanation for why its declaration to [redacted] allows production of this information under the lower AEO designation only in some instances.

## IV. CONCLUSION

For the above reasons, SDC's Motion should be denied. To the extent the Court grants the motion, however, Pictiva respectfully requests the following additional modifications:

- **Printing**: eliminate the 50 consecutive page printing limit, remove the presumption that 1,000 pages is a "reasonable" number of collective print-outs, and require expedited production of print-outs within two business days.
- **Cost-Shifting**: order SDC to pay for Pictiva's costs associated with retaining an in-person translator for source code review, and with travel to Korea for deposition.
- **Redactions**: require SDC to produce redacted versions of documents on the source code computer that contain information produced as AEO in other documents.
- **Translation**: require SDC to obtain and provide certified English translations of all documents that contain foreign text on the source code computer (which will not count separately toward any printing limits).

Dated: January 8, 2025

Respectfully submitted,

*/s/ Rebecca Carson*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Rebecca Carson (*pro hac vice*)
rcarson@irell.com
Annita Zhong, PhD (*pro hac vice*)
hzhong@irell.com
Jie Gao (*pro hac vice*)
jgao@irell.com
Jeffrey Linxwiler (*pro hac vice*)
jlinxwiler@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited***

**CERTIFICATE OF SERVICE**

I hereby certify that, on January 8, 2025, a copy of the foregoing and the attachment thereto were served to all counsel of record via the Court's ECF system.

/s/ *Rebecca Carson*
Rebecca Carson

[redacted]

[redacted]

[redacted]
[redacted]