**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| **PICTIVA DISPLAYS INTERNATIONAL LTD., KEY PATENT INNOVATIONS LIMITED**<br><br>Plaintiffs,<br><br>v.<br><br>**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.**<br><br>Defendants. | Civil Action No. 2:23-cv-00495-JRG (LEAD CASE)<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |
| **PICTIVA DISPLAYS INTERNATIONAL LTD., KEY PATENT INNOVATIONS LIMITED**<br><br>Plaintiffs,<br><br>**v.**<br><br>**SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.**<br><br>Defendants. | Civil Action No. 2:23-cv-00532-JRG (MEMBER CASE)<br><br>JURY TRIAL DEMANDED<br><br>[redacted] |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF FAILURE TO MARK UNDER 35 U.S.C. § 287 AND NO PRE-NOTICE DAMAGES**

# TABLE OF CONTENTS

**Page**


I. BACKGROUND AND ADDITIONAL FACTS ....... 1

A. The Relationship Between SEC, SEA, and SDC ....... 1

B. Pictiva's September 2020 Notice Letter to SDC ....... 2

C. Pictiva's 2020 Discussions With SDC ....... 3

D. Pictiva's Claim Charts to SDC ....... 3

E. Pictiva's June 2021 Presentation to SDC ....... 4

F. Pictiva's August 2021 Notice Letter to SEC ....... 5

II. RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS ....... 6

III. LEGAL STANDARD ....... 9

IV. ARGUMENT ....... 10

A. Section 287(a) Does Not Apply to the '389 Patent's Asserted Claims ....... 10

B. Samsung Has Failed to Carry Its Burden of Production Under *Arctic Cat*. ....... 13

C. Material Factual Disputes Exist As to Plaintiff's Obligation to Mark. ....... 16

D. Material Factual Disputes Exist As to the Date of Actual Notice. ....... 19

1. A Reasonable Jury Could Find that Pictiva Provided Actual Notice to Samsung of Its Infringement of the '389, '164 and '223 Patents Before August 17, 2021. ....... 19

2. A Reasonable Jury Could Find that Pictiva Provided Actual Pre-Suit Notice to Samsung of Its Infringement of the '425 Patent Via The August 17, 2021 Notice Letter. ....... 24

V. CONCLUSION ....... 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ACQIS LLC v. Lenovo Grp. Ltd.*,
No. 6:20-CV-00967-ADA, 2022 WL 2705269 (W.D. Tex. July 12, 2022) ....21

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
694 F.3d 1312 (Fed. Cir. 2012)....9

*Alexsam, Inc. v. Pier 1 Imports, Inc.*,
No. 13-1003 (Fed. Cir. July 15, 2013), Dkt. 36....12

*Alexsam, Inc. v. Pier 1 Imports, Inc.*,
No. 2:08-CV-15 (E.D. Tex. Jan. 21, 2011), Dkt. 102 ....12

*Am. Med. Sys., Inc. v. Med. Eng'g Corp.*,
6 F.3d 1523 (Fed. Cir. 1993) .... 11, 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)....9

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
876 F.3d 1350 (Fed. Cir. 2017)....*passim*

*Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*,
950 F.3d 860 (Fed. Cir. 2020)....13

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
No. 2:15-CV-01047-RSP, 2016 WL 11750176 (E.D. Tex. Nov. 29, 2016)....9, 25

*Atlas Glob. Techs. LLC v. TP-Link Techs. Co., Ltd.*,
No. 2:21-cv-00430-JRG-RSP, 2023 WL 5346030 (E.D. Tex. Aug. 4, 2023) ....21

*Correct Transmission, LLC v. Nokia of Am. Corp.*,
No. 2:22-cv-0343-JRG-RSP, 2024 WL 2021739 (E.D. Tex. Mar. 21, 2024) ....9

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
559 F.3d 1308 (Fed. Cir. 2009)....9, 12

*CXT Sys., Inc. v. Academy, Ltd.*,
Nos. 2:18-cv-00171-RWS-RSP & 2:18-cv-00233-RWS-RSP, 2020 WL 9936135 (E.D. Tex. Jan. 28, 2020)....14

*Entropic Comm'ns, LLC v. Charter Comm'ns, Inc.*,
No. 2:22-cv-00125-JRG-RSP, 2023 WL 8534626 (E.D. Tex. Nov. 16, 2023).... 10, 11

*Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*,
No. 6:20-CV-00967-ADA, 2019 WL 3818049 (W.D. Tex. June 13, 2019)....................................21

*Freeny v. Fossil Grp., Inc.*,
No. 2:18-cv-00049-JRG, 2019 WL 8688587 (E.D. Tex. July 24, 2019)..............................13, 14, 15

*Gart v. Logitech, Inc.*,
254 F.3d 1334 (Fed. Cir. 2001)....................................................................................................9, 19

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983)........................................................................................................9

*Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*,
104 F. App'x 721 (Fed. Cir. 2004) ...................................................................................................21

*Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*,
No. 2:16-cv-00052-JRG-RSP, 2017 WL 4183103 (E.D. Tex. Sept. 4, 2017)..................................12

*Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*,
No. 2:20-cv-00050, 2020 WL 6832827 (E.D Tex. June 19, 2020)............................................ 20, 24

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
No. 2:17-CV-00662-JRG-RSP, 2019 WL 2959568 (E.D. Tex. Apr. 18, 2019)...........................9, 12

*K-Tec, Inc. v. Vita-Mix Corp.*,
696 F.3d 1364 (Fed. Cir. 2012).........................................................................................................25

*Kaist IP US LLC v. Samsung Elecs. Co., Ltd.*,
2:16-CV-01314-JRG-RSP, 2018 WL 10498197 (E.D. Tex. May 22, 2018).............................. 22, 23

*Longhorn HD LLC v. NetScout Sys., Inc.*,
No. 2:20-cv-00349-JRG-RSP, 2022 WL 1165508 (E.D. Tex. Mar. 27, 2022) ................................19

*Lubby Holdings LLC v. Chung*,
11 F.4th 1355(Fed. Cir. 2021) ................................................................................................ 14, 25

*Netlist, Inc. v. Micron Tech., Inc.*,
No. 2:22-cv-203-JRG-RSP, 2024 WL 402182 (E.D. Tex. Jan. 11, 2024) ...........................20, 24, 25

*Optis Wireless Tech., LLC v. Huawei Techs. Co., Ltd.*,
2:17-cv-00123-JRG-RSP, 2018 WL 3375192 (E.D. Tex. July 11, 2018).............................12, 20, 24

*Osteotech, Inc. v. Regeneration Techs., Inc.*,
2008 WL 4449564 (D.N.J. Sept. 25, 2008)........................................................................................24

*Pardalis Tech. Licensing, LLC v. Int'l Bus. Machines Corp.*,
2024 WL 4329015 (E.D. Tex. Aug. 6, 2024)........................................................................................17

*Pavo Sols. LLC v. Kingston Tech. Co., Inc.*,
2019 WL 4390573 (C.D. Cal. June 26, 2019) ........ 15

*Pipp Mobile Storage Sys. V. Innovative Growers Equip., Inc.*,
2022 WL 157491 (N.D. Ill. 2022) ........ 25

*Realtime Data LLC v. EchoStar Corp.*,
2018 WL 11364376 (E.D. Tex. Oct. 16, 2018) ........ 16

*Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*,
No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873 (E.D. Tex. May 30, 2022) ........ 16

*SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*,
127 F.3d 1462 (Fed. Cir. 1997) ........ 19, 20, 21

*Town & Country Linen Corp. v. Ingenious Designs LLC*,
556 F. Supp. 3d 222 (S.D.N.Y. 2021) ........ 13

*Tulip Computers Intern. B.V. v. Dell Computer Corp.*,
262 F. Supp. 2d 358 (D. Del. May 1, 2003) ........ 16

*Ziilabs Inc. v. Samsung Electronics Co., LTD*,
No. 2:14-cv-203-JRG-RSP, 2015 WL 8293585 (E.D. Tex. Dec. 8, 2015) ........ 23

**Statutes**

35 U.S.C. § 271(a) ........ 6

35 U.S.C. § 287 ........ *passim*

35 U.S.C. § 287(a) ........ *passim*

**Rules**

Fed. R. Civ. P. 56(a) ........ 9

Samsung's motion regarding pre-suit damages ("Mot." (Dkt. 242)) should be denied. Section 287(a) does not apply to U.S. Patent No. 6,949,389 (the "'389 patent") as a matter of law because the asserted claims are all method or process claims. As to the remaining patents, Samsung has not met its initial burden to articulate ***specific*** unmarked products sold or offered for sale ***in the United States*** that practice the patents. Therefore, Plaintiffs' damages in connection with U.S. Patent Nos. 8,558,223 (the "'223 patent"), 8,723,164 (the "'164 patent"), 8,314,547 (the "'547 patent"), and 11,828,425 (the "'425 patent") are not limited by § 287, either. Even if Samsung had met its burden of production, summary judgement would be inappropriate as material factual disputes exist regarding whether any allegedly unmarked products were sold in the United States by any authorized licensee, as well as when Plaintiffs provided actual notice to Samsung.

# I. BACKGROUND AND ADDITIONAL FACTS

## A. The Relationship Between SEC, SEA, and SDC

Defendant Samsung Electronics Co., Ltd. ("SEC") has been the majority owner of Samsung Display Co., Ltd. ("SDC") since at least 2017, [redacted] Ex. 1-8 (Samsung Electronics Co., Ltd. Business Reports from 2017-2024). Defendant Samsung Electronics America, Inc. ("SEA") is a [redacted] subsidiary of SEC. *Id.* [redacted] Ex. 6-8. Samsung's expert, Dr. Perryman, admits [redacted] Ex. 9 (Perryman Rpt.) at 143; *see also id.* at 16 [redacted].

SEC and SDC entered into a [redacted] Ex. 10 (certified translation of excerpts of

PICTSAMSUNGEDTX209393); *see also* Ex. 11 (PICTSAMSUNGEDTX209393); Ex. 12 (PICTSAMSUNGEDTX209429); Ex. 13 (machine translation of PICTSAMSUNGEDTX209393); Ex. 14 (machine translation of PICTSAMSUNGEDTX209429). Under that agreement, SEC and SDC [redacted] Ex. 10 at PICTSAMSUNGEDTX209408; Ex. 15 (2025-03-11 Kim Dep. Tr.) at 118:19-119:1[redacted].

B. **<u>Pictiva's September 2020 Notice Letter to SDC</u>**

On September 25, 2020, Plaintiff Pictiva Displays International Ltd. ("Pictiva") sent a notice letter to SDC, in which Pictiva disclosed that it [redacted] Dkt. 242-17 (PICTIVA00005784) at PICTIVA00005784. The letter also stated that [redacted] as the infringing products. *Id.*; Ex. 16 (Quinlan Dep. Ex. 1) at 7 [redacted]. [redacted]. Dkt. 248-4 (Kennedy Report Ex. 23). Pictiva further stated in the letter, [redacted] Dkt. 242-17 at PICTIVA00005785.

Pictiva and SDC subsequently entered into a non-disclosure agreement ("SDC NDA") on

October 7, 2020, and began a series of negotiations. Ex. 17 (PICTIVA00005780). The SDC NDA [redacted]. *See id.* [redacted]

### C. Pictiva's 2020 Discussions With SDC

Pictiva and SDC had two [redacted] in 2020, one in October, and the other in December. Ex. 18 (October 2020 presentation); Ex. 19 (2020-10-15 Pictiva email sending presentation); Ex. 20 (December 2020 presentation); Ex. 21 (2025-03-05 Quinlan Dep. Tr.) at 276:7-277:9. Pictiva [redacted] during both discussions. Ex. 18; Ex. 20.

### D. Pictiva's Claim Charts to SDC

Pictiva also sent claim charts for several of the asserted patents to SDC. On December 16, 2020, Pictiva provided SDC with a claim chart for the '389 patent. Ex. 16 (Quinlan Dep. Ex. 1) at 7; Ex. 21 (2025-03-05 Quinlan Dep. Tr.) at 265:17-24; Ex. 22 (2020-12-16 Pictiva email sending claim charts (PICTIVA10004002)); Ex. 23 (2020-12-16 SDC email confirming receipt of claim charts (PICTIVA10004227)); Ex. 24 (the '389 claim chart). This chart mapped the limitations [redacted], which is sold by SEC and SEA. Ex. 24. Then on December 17, 2020, Pictiva sent a claim chart for a parent patent to the '425 patent, U.S. Patent No. 9,797,567

(the "'567 patent"),[1] which provided a limitation-by-limitation analysis of how [redacted]. Ex. 25 (2020-12-17 Pictiva email); Ex. 26 ('567 claim chart (PICTIVA10004498)); Ex. 27 (the '567 patent). On February 17, 2021, Pictiva sent SDC claim charts for the '223 and '164 patents, which illustrated [redacted]. Ex. 16 (Quinlan Dep. Ex. 1) at 7; Ex. 28 (2021-02-17 Pictiva email sending claim charts (PICTIVA10004564)); Ex. 29 ('223 claim chart (PICTIVA10004601)); Ex. 30 ('164 claim chart (PICTIVA10004640)).

**E. <u>Pictiva's June 2021 Presentation to SDC</u>**

In June 2021, Pictiva sent a PowerPoint presentation to SDC to continue the parties' [redacted] Ex. 31 (PICTIVA00006675); Ex. 21 (2025-03-05 Quinlan Dep. Tr.) at 277:20-278:11. In this presentation, Pictiva [redacted] Ex. 31 at PICTIVA00006677. Pictiva specifically identified the '389, '223, '164 and '567 patents. *Id.* Pictiva also [redacted] *Id.* at PICTIVA00006682-84. Pictiva then presented a license offer for a [redacted] and three royalty payment options in an attempt to resolve all infringement claims. *Id.* at PICTIVA00006689.

---

[1] The application of the '425 patent is a continuation of the application issued as the '567 patent. *See* Dkt. 17-6 at (63). The '425 and '567 patents have the same figures and share substantially the same specification.

[redacted]

**F. <u>Pictiva's August 2021 Notice Letter to SEC</u>**

On August 17, 2021, Pictiva sent a letter to SEC, notifying SEC of its infringement of Pictiva's OLED patents. Ex. 32 (PICTIVA00005789). The letter specifically charged that [redacted] infringed the '389, '223, and '164 patents, as well as the '567 patent, which is a parent to the '425 patent. *Id.* at PICTIVA00005789–90. In the letter, Pictiva also expressed its wish [redacted]

[redacted] *Id.* at PICTIVA00005791.

SEC, however, [redacted] Ex. 21 (2025-03-05 Quinlan Dep. Tr.) at 92:13-15, 309:1-2; Ex. 33 (2024-12-24 Samsung's 3rd Supplemental Responses and Objections to Pictiva's 1st Set of Interrogatories) at 76 [redacted]; Ex. 15 at 130:21-131:3. Samsung admits that this letter put it on actual notice of its infringement of several of the asserted patents. Mot. at 17, 19.

## II. RESPONSE TO DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS

¶¶ 1-2, 8. Undisputed

¶ 3-7. Plaintiffs do not dispute that they asserted "infringement under at least 35 U.S.C. § 271(a) of claims 1-5, 8-14 of the '547 patent; claims 1, 2, 4, 9-12, 17 of the '425 patent; claims 1, [3]-6, 8-12, 16 of the '164 patent; claims 1-3, 8-14 of the '223 patent" and "claims 34, 35, 41, 43-46 of the '389 patent." As to the '389 Patent, Plaintiffs dispute that its allegations were limited to infringement under 35 U.S.C. § 271(a). In the original Complaint, Pictiva asserted infringement "under 35 U.S.C. §§ 271(a) and/or 271(g) of the '389 Patent." Dkt. 1 at 10. The only apparatus claims of the '389 patent are claims 52-53, which Plaintiff have never asserted against Samsung or SDC. Plaintiffs also dispute that all of the asserted claims of the '223 patent "are apparatus claims, none are method claims." Plaintiffs have asserted claims 10-14 of the '223 patent, which are method claims.[2]

[2] For example, independent claim 10 of the '223 patent recites:

A method for manufacturing an organic electronic component, comprising the method steps of:

A) providing a substrate,

B) applying a first electrode,

C) depositing an electron-conducting layer on the substrate,

D) applying a second electrode,

wherein the electron-conducting layer is deposited by means of simultaneous vaporization of a metal complex and an organic compound, wherein the organic compound comprises a heteroaromatic compound which is conjugated with an aromatic compound via a C—C bond.

¶¶ 9-11. Plaintiffs do not dispute that Pictiva sent letters dated March 26, 2020 and May 19, 2021 [redacted] and August 20, 2021 [redacted], but dispute Samsung's characterization of those letters.

¶ 12. Plaintiffs do not dispute that Pictiva entered into a license agreement [redacted] on August 4, 2023. Plaintiffs note, however, that the licensed products are limited to products that infringe one or more claims of Pictiva's patents. Pictiva never asserted that [redacted] infringed the '547 or '425 patent.

¶¶ 13-15. Plaintiffs do not dispute that Pictiva provided claim charts to [redacted] for the '164 and '223 patents on products that had been discontinued as of August 4, 2023, and that it provided an initial presentation to [redacted] that identified several other patents. Plaintiffs dispute Samsung's characterizations of the May 12, 2021 presentation.

¶ 16. Disputed. Plaintiffs' contentions identify "smartphones, computers, tablets, wearables, TVs, laptops, monitors and other electronic products with OLED display panels that are manufactured using the claimed processes" identified in the claim charts provided by Plaintiffs with the contentions. Samsung's [redacted] were included in the exemplary list of accused products because Samsung identified its televisions as [redacted] in its marketing materials. When Plaintiffs learned through discovery that [redacted] Plaintiffs dropped the infringement contentions as to those products.

¶ 17. Disputed, at least because Dr. Schanze specifically opined that [redacted] Ex. 34 (Schanze Op. Rpt., Ex. D) ¶ 143.

¶ 18. Disputed, at least on the grounds that Samsung's alleged *Arctic Cat* notice does not actually identify any specific products sold in the United States that were allegedly unmarked. *See infra*

Section IV.B.

¶¶ 19, 21. Plaintiffs do not dispute that the [redacted]. Plaintiffs dispute that any [redacted] are relevant to Samsung's marking defense as Samsung did not identify any specific [redacted] sold in the United States that were allegedly unmarked.

¶ 20. Disputed on the grounds that the cited evidence does not identify which specific sales were allegedly made to [redacted]. Nor does it identify any [redacted].

¶¶ 22-26. Disputed, on the grounds that Samsung omits various additional evidence of notice for each of the asserted patents that was identified by Plaintiffs in its complaint and/or interrogatory responses and produced during discovery. *See, e.g.*, Dkt. 1; Dkt. 124; Ex. 35 (2025-03-02 Plaintiffs' 1st Supplemental Responses to Samsung's Amended 1st Set of Interrogatories) at 31-36.

¶ 27. Undisputed.

¶¶ 28-29, 33. Plaintiffs do not dispute that [redacted] entered into an NDA with SEC, but Plaintiffs do dispute Samsung's legal interpretation of the agreement and its attempt to bar all evidence regarding the Samsung/[redacted] interactions in 2018 and 2019. Many of the communications between the parties did not involve the exchange of "Confidential Information" as defined in the agreement, and the "No Notice" provision applies only to information shared between the parties, not to information that one party identifies based on its own investigation.

¶ 30. Disputed, at least on the grounds that SEC's own business reports and financial statements identify [redacted] Exs. 6-8 (SEC Business Reports from 2022-2024); Dkt. 52-2. *See supra* Section I.A.

¶¶ 31-32. Plaintiffs do not dispute that Pictiva sent a notice letter to SDC on September 25, 2020, and that it entered into an NDA with SDC on October 7, 2020, but Plaintiffs do dispute the

remainder of Samsung's assertions in these paragraphs at least because Samsung's interpretation and summary of the obligations contained in the SDC NDA is inaccurate.

## III. LEGAL STANDARD

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and any evidence must be viewed in the light most favorable to the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A dispute about a material fact is 'genuine' when the evidence is 'such that a reasonable jury could return a verdict for the [nonmovant].'" *Correct Transmission, LLC v. Nokia of Am. Corp.*, No. 2:22-cv-0343-JRG-RSP, 2024 WL 2021739, at *2 (E.D. Tex. Mar. 21, 2024) (citing *Anderson*, 477 U.S. at 248).

The marking requirement of § 287(a) does not apply "where the patent is directed to a process or method." *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012). Section 287(a) also does not apply where "the patentee only assert[s] the method claims of a patent which include[s] both method and apparatus claims." *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009) (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1082–83 (Fed. Cir. 1983)); *see also Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, No. 2:17-CV-00662-JRG-RSP, 2019 WL 2959568, at *2 (E.D. Tex. Apr. 18, 2019) ("In both *Hanson* and *Crown Packaging*, the Federal Circuit has made clear that the marking statute does not apply where a patentee has only asserted method claims, even when the patent also contains apparatus claims.").

"Compliance with the marking statute is an issue of fact." *Arthrex, Inc. v. Smith & Nephew, Inc.*, No. 2:15-CV-01047-RSP, 2016 WL 11750176, at *3 (E.D. Tex. Nov. 29, 2016) (citing *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001)). The marking issue may be decided on summary judgment only "when no reasonable jury could find that the patentee either has or has not provided actual notice to the particular defendants by informing them of his patent and of their infringement of it." *Gart*, 254 F.3d at 1339 (citation and internal quotation marks omitted).

## IV. ARGUMENT

### A. <u>Section 287(a) Does Not Apply to the '389 Patent's Asserted Claims.</u>

As to the '389 patent, Samsung's motion should be denied because it has not established that any marking requirement under § 287 applies. Plaintiffs have only asserted method claims from the '389 patent in this action. Dkt. 248-2 (2024-03-11 Pictiva's Preliminary Infringement Contentions) at 2; Dkt. 17-1. Therefore, under the Federal Circuit and this Court's precedent, § 287(a) does not provide any basis for barring pre-suit damages for the '389 patent. In an effort to create a marking obligation where none exists, Samsung argues that Plaintiffs "did not limit their assertion of the '389 patent to method claims in the complaints." Mot. at 11 (citing SUMF ¶¶ 6-7). Samsung's argument is both factually and legally misplaced.

The only specific claim that Plaintiffs mention in the Complaint is Claim 34. Specifically, Plaintiffs assert that "[b]y way of example, Samsung's manufacturing of the [redacted] smartphone included all recited steps of claim 34, including 'fabricating a plurality of devices on a substrate,' with the plurality of devices being, e.g., OLED devices as in an example shown below[.]" Dkt. 1 at 10; Dkt. 124 at 14. The Complaint does not identify either of the apparatus claims of the '389 Patent (i.e., claims 52 and 53; nor does the Complaint contain any allegations related to the unique limitations of those claims (i.e., "a plurality of active areas disposed upon said substrate," "a plurality of planarization layers disposed on said substrate whereby said planarization layer cover substantially only said active areas," "a plurality of barrier layers disposed on said substrate whereby said barrier layers cover substantially only said planarization layers"). *See, e.g.*, Dkt. 1 at 10-12; Dkt. 124 at 14-15.

Despite that the Complaint does not actually identify any apparatus claims, Samsung hinges its argument on the form allegation that "the '389 Accused Products have infringed at least one claim of the '389 Patent." Mot. at 11 (citing SUMF ¶¶ 6-7). Samsung's contention that this form language amounts to an assertion of the apparatus claims was rejected by this Court in *Entropic Comm'ns, LLC*

*v. Charter Comm'ns, Inc.,* No. 2:22-cv-00125-JRG-RSP, 2023 WL 8534626 (E.D. Tex. Nov. 16, 2023). In *Entropic*, Charter similarly argued that Entropic's use of form-letter language such as infringement by "'using, importing, selling, and/or offering for sale' the Accused Products" in the complaints suggested that Entropic had asserted apparatus claims. *Id.* at *2. The Court disagreed, reasoning that where the same language is used for method claims, "the use of the form-letter language is not indicative of which claims are asserted." *Id.* Here, the language Samsung points to is the same type of form-letter language used in *Entropic*, and the surrounding context makes clear that Plaintiffs were using this language to refer to method claim 34.[3] Dkt. 1 at 10 ("On information and belief, the '389 Accused Products have infringed at least one claim of the '389 Patent. By way of example, Samsung's manufacturing of the [redacted] smartphone included all recited steps of claim 34 . . . ."); Dkt. 124 at 14. Consistent with this, Plaintiffs also described the '389 patent as being "generally directed to novel ***methods*** for encapsulating a plurality of devices fabricated upon a substrate[.]" Dkt. 1 at 4 (emphasis added); Dkt. 124 at 4. Therefore, as the Court ruled in *Entropic*, Plaintiffs' alleged use of form-letter language asserting infringement of the '389 patent by no means suggests an assertion of apparatus claims. *Entropic*, 2023 WL 8534626, at *2.

Moreover, just like in *Entropic*, Plaintiffs' "infringement contentions settle the issue." *Id.* at *3. Plaintiffs timely served the Preliminary Infringement Contentions on March 11, 2024 in accordance with the Court's Scheduling Order (Dkt. 11), which only alleged infringement of certain method claims of the '389 patent. Dkt. 248-2 (2024-03-11 Pictiva's Preliminary Infringement Contentions) at 2 (asserting claims 34, 35, 41, and 43-46 of the '389 patent); *Entropic*, 2023 WL 8534626, at *3 ("[E]ven

[3] Claim 34 of the 389 patent recites:
A method of encapsulating a plurality of devices fabricated upon a substrate, the steps of said method comprising:
fabricating a plurality of devices on a substrate;
selectively depositing at least one planarization layer upon said devices; and
selectively depositing at least one barrier layer over said planarization layer.

where a complaint asserted both apparatus and method claims but the apparatus claims are quickly withdrawn, marking is not required" (citation omitted)).

None of the cases cited by Samsung support its assertion that a marking requirement applies to the '389 patent. For example, in *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, the court determined there was a marking requirement where "both apparatus and method claims of the '765 patent were asserted." 6 F.3d 1523, 1539 (Fed. Cir. 1993). In doing so, the *Am. Med. Sys.* court drew a distinction between "cases 'in which only method claims are asserted to have been infringed' and cases where a patentee alleges infringement of both the apparatus and method claims of the same patent,'" explaining that "where the patent claims are directed to only a method or process there is nothing to mark." *Id.* at 1538. The *Huawei* and *Alexsam* cases are similarly inapposite, as they also involved situations where the plaintiff asserted both method and apparatus claims. *Huawei Techs. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-00052-JRG-RSP, 2017 WL 4183103, at *2 (E.D. Tex. Sept. 4, 2017) ("[T]he '339 patent includes both device and method claims, and Huawei is asserting both types of claims."); Ex. 36 (Second Amended Complaint, *Alexsam, Inc. v. Pier 1 Imports, Inc.*, No. 2:08-CV-15 (E.D. Tex. Jan. 21, 2011), Dkt. 102), ¶¶ 13 ("Defendant is further liable for direct infringement of systems and methods covered by the '608 patent[.]"), 20 ("Defendant is further liable for direct infringement of systems and methods covered by the '787 patent[.]")); Ex. 37 (Alexsam, Inc.'s Reply Brief and Response to Cross-Appeal, *Alexsam, Inc. v. Pier 1 Imports, Inc.*, No. 13-1003 (Fed. Cir. July 15, 2013), Dkt. 36), at 49 (acknowledging that the claims at issue were a "type of system claims").

This Court has also squarely rejected similar attempts to extend dicta from the *Huawei* case to cases where—as here—the plaintiff has only asserted method claims of a patent containing both method and apparatus claims. *Intellectual Ventures II LLC*, 2019 WL 2959568, at *2 ("The cases cited by Defendants do not alter the Court's conclusion, because they all address factually distinguishable situations where the patentee had asserted both method and apparatus claims." (citing *Huawei*, 2017

WL 4183103, at *2)). Indeed, in *Intellectual Ventures*, the Court clarified that, to the extent there was any "tension between certain dicta in *American Medical Systems* and the holding in *Crown Packaging*, the decision in *Crown Packaging* itself eliminates any ambiguity about the state of the law," and made clear that "the marking statute does not apply where a patentee has only asserted method claims, even when the patent also contains apparatus claims." *Id.* Here, Plaintiffs have only asserted method claims of the '389 patent, and the marking requirement thus does not apply.

### B. Samsung Has Failed to Carry Its Burden of Production Under *Arctic Cat.*

As the alleged infringer, Samsung "bears an initial burden of production to articulate the products it believes are unmarked 'patented articles' subject to § 287." *Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 876 F.3d 1350, 1368 (Fed. Cir. 2017). This burden requires Samsung to put Plaintiffs "on notice that [it] or [its] authorized licensees sold ***specific*** unmarked products which [Samsung] believes practice the patent." *Id.* (emphasis added). Despite being a "low bar," "it is a burden that nonetheless must be met." *Freeny v. Fossil Grp., Inc.*, No. 2:18-cv-00049-JRG, 2019 WL 8688587, at *3 (E.D. Tex. July 24, 2019). Samsung has failed to do so.

Samsung relies on its *Arctic Cat* Notice dated February 21, 2025, as allegedly providing the requisite notice. However, the only specific products that Samsung identified in that notice as allegedly unmarked products in that notice are the OLED displays identified in ams-OSRAM0000212. Dkt. 248-15. It is undisputed that [redacted]. Dkt. 248 at 10-11; Dkt. 248-17. Moreover, it is undisputed that the '223, '164, '547 and '425 patents did not issue until well after 2008. *See* Dkt. 248 at 11. Because these patents did not issue until [redacted], there was no obligation to mark them and § 287(a) is not applicable. *See Arctic Cat Inc. v. Bombardier Recreational Prods. Inc.*, 950 F.3d 860, 864 (Fed. Cir. 2020) (obligation to mark does not arise "when a patentee never makes or sells a patented article"); *see also Town & Country Linen Corp. v.*

*Ingenious Designs LLC*, 556 F. Supp. 3d 222, 252 (S.D.N.Y. 2021) ("Under the plain language of the statute and prevailing Federal Circuit precedent, the 'notice provisions of § 287' arise only after a patent has issued . . . ." (citations omitted)); 6A Chisum on Patents § 20.03 ("Section 287 literally applies only to a patent owner's sale or authorization to sell products after issuance of the patent. Only after issuance does the person become a 'patent' owner and the article a 'patented' one . . . .").

As to the allegedly unmarked [redacted], Samsung has done nothing more than reference the definition of [redacted] and then vaguely point to [redacted] Dkt. 248-15. This is insufficient to meet Samsung's burden of production for at least two reasons.

***First***, unlike the defendant in *Lubby Holdings LLC v. Chung* that "specifically pointed to the J-Pen Starter Kit product as listed on Lubby's website," 11 F.4th 1355, 1360 (Fed. Cir. 2021), here, Samsung failed to identify any ***specific*** [redacted] products or product models that it believes practice the asserted patents. Nor did it identify any alleged third-party products that contain [redacted] products that it believes practice the asserted patents. This Court has previously held that simply referring to a license agreement without identifying any specific products is insufficient to meet the "admittedly low" burden of production outlined by the Federal Circuit in *Arctic Cat*. *See, e.g.*, *CXT Sys., Inc. v. Academy, Ltd.*, Nos. 2:18-cv-00171-RWS-RSP & 2:18-cv-00233-RWS-RSP, 2020 WL 9936135, at *3–4 (E.D. Tex. Jan. 28, 2020) ("JCP's burden of production envisioned under *Arctic Cat* needed to be enough to put CXT on notice that authorized licensees to the Asserted Patents sold specific unmarked products which JCP believed practiced the Asserted Patents. JCP's [reference to an agreement] did not meet *Arctic Cat*'s (admittedly low) burden as it did not put CXT on notice of any unmarked products, let alone which products JCP claimed practiced the Asserted Patents."); *Freeny*, 2019 WL

8688587, at *2–3 (finding that Fossil's mention of "the licensed products that the Freenys accused as infringing the '443 Patent in prior litigation" in the answer "did not timely put the Freenys 'on notice that [their] authorized licensees sold specific unmarked products which [Fossil] believes practice the ['443 P]atent.'" (alterations in original)).

***Second***, Samsung has not produced or identified any admissible evidence that [redacted] was "making, offering for sale, or selling ***within the United States***" any of the products [redacted]. 35 U.S.C. § 287(a) (emphasis added). Rather, [redacted]. *See* Dkt. 248-22 at 1 [redacted]

Moreover, the [redacted] describes the sales data it produced as [redacted] without specifying the volume of United States sales (if any), which companies purchased those products, or into which products the display panels were ultimately incorporated. Dkt. 248-18 at 1.

The Central District of California considered a nearly identical set of facts in *Pavo Sols. LLC v. Kingston Tech. Co., Inc.*, 2019 WL 4390573 (C.D. Cal. June 26, 2019). In *Pavo*, the alleged infringer Kingston had identified products licensed under an agreement between a prior owner of the patent-in-suit and Staples as being unmarked. *Id.* at *3. "The Licensing Agreement allowed Staples to sell licensed products 'in the United States of America, Japan, Canada, Germany, France and UK.'" *Id.* The *Pavo* court held that the "burden of production" under *Arctic Cat* includes a requirement to "produce evidence that the identified products were sold or offered for sale in the United States" because "such sales are the only ones that matter for the marking statute." *Id.* at *2. Because "a 'burden of production' necessarily means a burden to come forward with *some amount* of admissible evidence," the *Pavo* court found that the "low bar" of *Arctic Cat* was not met where Kingston "failed to produce *any* admissible evidence that identifies specific products that it believes should have been marked and were sold or offered for sale in the United States." *Id.* at *3.

Samsung now argues, for the first time, that Pictiva failed to mark the products identified in [redacted]. Samsung's attempt to backfill its burden of production by identifying additional products for the first time on motion for summary judgment is improper and should be rejected. *Freeny*, 2019 WL 8688587, at *3 ("Had Fossil put the Freenys on notice of its marking contentions, the Freenys could have developed the factual evidence and expert opinion needed to carry its burden of proof at trial. The rules do not countenance trial by ambush. Accordingly, the Court finds that Fossil has not satisfied its burden of production."). But even if these products are considered, Samsung still has not met its burden of production to come forward with evidence that those specific products were sold in the United States after [redacted]. *See infra* Section IV.C.

Because Samsung has proffered no evidence that any allegedly unmarked products were sold or offered for sale in the United States after [redacted], it has not met its burden of production, and Samsung's motion for summary judgement should be denied. *Solas OLED Ltd. v. Samsung Elecs. Co., Ltd.*, No. 2:21-CV-105-JRG-RSP, 2022 WL 1912873, at *2–3 (E.D. Tex. May 30, 2022) (denying Samsung's summary judgment because it failed to meet its *Arctic Cat* burden and precluding Samsung from "raising a marking defense at trial").

**C. <u>Material Factual Disputes Exist As to Plaintiff's Obligation to Mark</u>.**

Even if the Court finds that Samsung has met its burden of production, Samsung has not established that it is entitled to summary judgment that § 287 limits damages, as material factual disputes exist.

First, Samsung's claim that none of [redacted] "[s]ince 2017" were marked (Mot. at 13) is irrelevant. As Samsung acknowledges, "the notice requirement attaches" only after "a third-party who becomes a licensee begins making or selling a patented article." Mot. at 10; *see also, e.g.*, *Realtime Data LLC v. EchoStar Corp.*, 2018 WL 11364376 (E.D. Tex. Oct. 16,

2018) ("If no licensed products were ever made or sold, then Section 287's marking requirement does not apply at all . . . ."); *Tulip Computers Intern. B.V. v. Dell Computer Corp.*, 262 F. Supp. 2d 358, 362 (D. Del. May 1, 2003) ("[A]n infringer's failure to mark does not implicate Section 287(a)."). In other words, any products incorporating [redacted] that were made, offered for sale, or sold before [redacted] are not subject to the marking requirement of Section 287(a) as a matter of law. Here, it is undisputed that the [redacted]. Mot. at 4 (SUMF ¶ 12); Dkt. 248-22 [redacted] Dkt. 248-18 [redacted] Therefore, any products sold before August 4, 2023 are irrelevant to the Section 287(a) analysis.

The only specific [redacted] that Samsung identifies in its Motion are those that Pictiva identified [redacted] in 2020 and 2021, specifically [redacted]. Mot. at 4-5 (SUMF ¶¶ 10-11, 13). Samsung did not produce any evidence during fact discovery that these products were sold in the United States after [redacted]; nor did it produce such evidence in support of its Motion. Samsung's corporate representative designated on the marking defense was also unable to identify a single [redacted] that Samsung believes practices any of the asserted patents. Ex. 15 (2025-03-11 Kim Dep. Tr.) at 58:18-23 [redacted] This is not surprising, given that all of these products had been discontinued in the United States before August 4, 2023, [redacted] [redacted] [redacted] [redacted] [redacted]. *See, e.g.*, Ex. 38 [redacted]; Ex. 39 [redacted]; Ex. 40 [redacted]

[redacted]; Ex. 41 (2025-01-17 Noh Dep. Tr.) at 140:8-14 [redacted]; Ex. 42 [redacted]. Given this lack of evidence, a reasonable jury could find that no unmarked products were sold in the United States [redacted]. *Pardalis Tech. Licensing, LLC v. Int'l Bus. Machines Corp.*, 2024 WL 4329015, at *3 (E.D. Tex. Aug. 6, 2024) ("Here it is unclear to the Court, and thus an open fact question, what tangible items exist to be marked. Pardalis denies that it made, sold, or offered for sale the server in question and IBM has not shown there is no question that Pardalis did so.").

Second, there are also material factual disputes regarding whether any [redacted] practice the '547 patent, such that a marking requirement would exist for that patent. Contrary to Samsung's suggestion, Dr. Schanze's opinion is not the "only evidence." Instead, the evidence also includes:

- Pictiva never asserted that any [redacted] infringed the '547 patent during the parties' negotiations. Mot. at 4-5 (SUMF ¶¶ 10-11, 13-15).
- Plaintiffs have only alleged that [redacted] infringe the '547 patent. Ex. 47 (2024-03-11 Pictiva's Preliminary Infringement Contentions Exhibit B) at 3 n.1; Ex. 34 (Schanze Opening Rpt., Ex. D), ¶ 21; Dkt. 248-4 (Kennedy Rpt. Ex. 23).
- Dr. Schanze opined that [redacted]" at least because [redacted] to satisfy the claim limitation that "first regions each include a wavelength conversion layer configured to convert" light. Ex. 34 (Schanze Op. Rpt., Ex. D), ¶ 142.

- Dr. Schanze further opined that he was [redacted] *Id.*, ¶ 143. Samsung's expert, Dr. Katona, did not dispute this testimony. *See* Ex. 43 (Katona Rebut. Rpt.), ¶ 378.[4]
- Samsung and its experts have identified [redacted], as non-infringing alternatives to the '547 patent, which is an admission that [redacted] does not practice the '547 patent. Ex. 44 (2025-03-10 Samsung's Corrected 5th Supplemental Responses and Objections to Pictiva's 1st Set of Interrogatories) at 135 [redacted] Ex. 45 (Katona Op. Rpt.) ¶ 1577 (same).

At a minimum, these facts create a genuine dispute as to whether Pictiva has satisfied its burden. This Court has previously concluded that a genuine dispute existed where the plaintiff's expert had "provided an opinion based on his review of documents on Fortinet's website" regarding "why each of those [Fortinet] products do not practice the asserted claims," even though the defendant viewed the expert's "analysis as superficial and disagree[d] with [his] conclusion." *Longhorn HD LLC v. NetScout Sys., Inc.*, No. 2:20-cv-00349-JRG-RSP, 2022 WL 1165508, at *2 (E.D. Tex. Mar. 27, 2022). The Court's reasoning in *Longhorn* applies here, and Samsung's motion should be denied.

### D. Material Factual Disputes Exist As to the Date of Actual Notice.

Samsung's request for summary judgement on the date of actual notice for each of the asserted patents should also be denied because there are disputed factual issues.

#### 1. *A Reasonable Jury Could Find that Pictiva Provided Actual Notice to*

---

[4] Samsung seems to assert that Plaintiffs accused Samsung products [redacted] of infringing the '547 Patent. Dkt. 242 at 14. But this is not true. The only products that Samsung identified as having [redacted]. Dkt. 242-11 (Ex. 1 to Samsung's Fourth Supplemental Responses to Pictiva's First Set of Interrogatories). Those televisions have [redacted]. *See, e.g.*, Ex. 46 (PICTIVASAMSUNGEDTX367955).

***Samsung of Its Infringement of the '389, '164 and '223 Patents Before August 17, 2021.***

The Federal Circuit has held that "the actual notice requirement of § 287(a) is satisfied when the recipient is informed of the identity of the patent and the activity that is believed to be an infringement, accompanied by a proposal to abate the infringement, whether by license or otherwise." *SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, at 1470 (Fed. Cir. 1997). "As long as the communication from the patentee provides sufficient specificity regarding its belief that the recipient may be an infringer, the statutory requirement of actual notice is met." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1346 (Fed. Cir. 2001).

Here, Samsung does not dispute that the August 17, 2021 letter that Pictiva sent to Samsung provided actual notice for the '389, '164 and '223 patents. Mot. at 17, 19. Pictiva sent a similar notice letter and a claim chart to SDC on September 25, 2020 and December 16, 2020, respectively, which mapped the claims of the '389 patent to the Samsung [redacted], which is sold by SEC and SEA. *See* Mot. at 19 (citing SUMF ¶¶ 25-26); *id.* at SUMP ¶ 23. Pictiva also sent claim charts on the '164 and '223 patents to SDC on February 17, 2021.

These communications satisfied the *SRI* requirements for actual notice:

- Identity of the patent: The claim charts each specifically identify the patent number on the cover page. Ex. 24 ('389 claim chart); Ex. 29 ('223 claim chart); Ex. 30 ('164 claim chart).
- Activity believed to be an Infringement: The September 2020 letter contains a specific charge of infringement, and the claim charts specifically provide a limitation-by-limitation analysis of the [redacted].
- A proposal to abate the infringement, whether by license or otherwise: The September 2020 letter specifically states that Pictiva [redacted]

> [redacted] and proposes to [redacted] Dkt. 242-17.

This Court has repeatedly held that communications like the above at least raise a genuine issue of material fact as to whether they satisfy the actual notice requirements. *See, e.g.*, *Netlist, Inc. v. Micron Tech., Inc.*, No. 2:22-cv-203-JRG-RSP, 2024 WL 402182, at *4 (E.D. Tex. Jan. 11, 2024) ("a reasonable jury could find that" Netlist's notice letter "provid[ing] activity believed to be an infringement and a proposal to abate infringement" and "identif[ying] members of the patent family" constituted actual notice); *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00050, 2020 WL 6832827, at *4-5 (E.D Tex. June 19, 2020) (finding that a notice letter containing an offer to license patents including the asserted patent "provide[d] sufficient specificity to raise a genuine issue of material fact as to IPT's notice to Samsung that it may be an infringer"); *Optis Wireless Tech., LLC v. Huawei Techs. Co., Ltd.*, 2:17-cv-00123-JRG-RSP, 2018 WL 3375192, at *6-7 (E.D. Tex. July 11, 2018) (PanOptis' 2014 letter informing its acquisition of patents on "mobile telecommunications and infrastructure technologies" and subsequent 2015 spreadsheet listing the asserted patents and correlating "the patents to a cellular standard" could qualify as actual notice).

Notably, Samsung does not argue that these communications fail to satisfy the actual notice requirements identified in *SRI*. It instead contends that "[t]hese communications do not provide actual notice under § 287 because they were to a non-party, not to Defendants, and because Pictiva had contracted away its right to assert such post-NDA communications as actual notice." Mot. at 19. Neither of Samsung's arguments are correct.

*First*, courts have consistently found that notice can be imputed to a related party and that this is a fact issue for trial. *See, e.g.*, *Hockerson-Halberstadt, Inc. v. JSP Footwear, Inc.*, 104 F. App'x 721, 725

(Fed. Cir. 2004) (stating that notice could be imputed from "the apparent infringer" to "the alleged infringer" with "a close association"); *Atlas Glob. Techs. LLC v. TP-Link Techs. Co., Ltd.*, No. 2:21-cv-00430-JRG-RSP, 2023 WL 5346030, at *4 (E.D. Tex. Aug. 4, 2023) (based on the "ownership connection between Defendants and TP-Link USA," "[a] jury could easily draw the reasonable inference that notice to TP-Link USA qualifies as notice to the Defendants"); *ACQIS LLC v. Lenovo Grp. Ltd.*, No. 6:20-CV-00967-ADA, 2022 WL 2705269, at *6-7 (W.D. Tex. July 12, 2022) (letter to Lenovo Group's Chairman and CEO could be imputed to Lenovo Group and its subsidiaries); *Frac Shack Inc. v. AFD Petroleum (Texas) Inc.*, No. 6:20-CV-00967-ADA, 2019 WL 3818049, at *4 (W.D. Tex. June 13, 2019) (AFD Alaska's knowledge of an asserted patent through the Original Complaint could be "imputed to all the other Defendants through the common ownership and governance of each company"). Here, SDC and defendants SEC and SEA have "a close association." As discussed above, SEC was the majority owner of SDC throughout the entire damages period for the asserted patents, [redacted] Exs. 1-8 (SEC's 2017-2024 Business Reports). [redacted] Exs. 6-8; Dkt. 52-2. Samsung's damages expert, Dr. Perryman, also acknowledges how closely SEC and SDC are related. *See, e.g.*, Ex. 9 (Perryman Rpt.) at 16 [redacted] 143 [redacted] Given the parties' "close association," a reasonable jury could conclude that the notice to SDC should be imputed to SEC and SEA.

Moreover, the contractual relationship between SEC and SDC provides an independent basis for imputing notice from SDC to SEC. *Kaist IP US LLC v. Samsung Elecs. Co., Ltd.*, 2:16-CV-01314-JRG-RSP, 2018 WL 10498197, at *4 (E.D. Tex. May 22, 2018). In *Kaist IP*, Plaintiff presented

evidence on Qualcomm's "extensive relationship with Samsung stemming from the Master Foundry Supply Agreement," its collaboration "with Samsung in defining the process by which the accused chips were manufactured," and Samsung's agreement to indemnify Qualcomm. *Id.* This Court concluded that based on the evidence, "a reasonable jury could infer a close enough relationship such that Plaintiff's communications satisfied the actual-notice requirement as to" Qualcomm. *Id.*

Here, SEC and SDC entered into a [redacted] Ex. 10 (Certified translation of excerpts of PICTSAMSUNGEDTX209393)); Exs. 11-14. Under the agreement between SDC and SEC, [redacted] Ex. 10 at PICTSAMSUNGEDTX209408; Ex. 15 (2025-03-## Kim Dep. Tr.) at 132:22-133:2 (acknowledging that [redacted]). Additionally, like the defendants in *KAIST IP*, the [redacted] requires that SEC and SDC collaborate [redacted] to [redacted]). SDC also needs to [redacted]. Ex. 10 at PICTSAMSUNGEDTX209407 [redacted] and

SEC has [redacted] from SDC in this action. Ex. 33 (2024-12-24 Samsung's Third Supplemental Responses to Pictiva's 1st Set of Interrogatories) at 76. Therefore, as in *Kaist IP*, "a reasonable jury could infer a close enough relationship" from these facts such that Pictiva's earlier notice to SDC is imputed to SEC.

*Second*, Samsung's contract-away argument is based on an incorrect interpretation of the SDC NDA, which only prohibits [redacted]. 242-20 (NDA) at PICTIVA00005780. The agreement does not place any restriction on the Disclosing Party's use of its ***own*** confidential information disclosed during the negotiations. Here, the evidence of actual notice (i.e., the letter, claim charts and presentation) is "Information" that Pictiva disclosed to SDC. As such, the NDA does not prevent Pictiva from using this evidence to establish actual notice. *See, e.g.*; *Ziilabs Inc. v. Samsung Electronics Co., LTD*, No. 2:14-cv-203-JRG-RSP, 2015 WL 8293585, at *2 (E.D. Tex. Dec. 8, 2015) (holding that information provided to Samsung under a similar NDA with a different patentee could be used for purposes of establishing willfulness because "the 2011 NDA does not impose restrictions on a party's use of its own 'Proprietary/Confidential Information'").[5]

**2. *A Reasonable Jury Could Find that Pictiva Provided Actual Pre-Suit Notice to Samsung of Its Infringement of the '425 Patent Via The August 17, 2021 Notice Letter.***

As discussed above, Pictiva sent a letter to SDC on September 25, 2020, alleging that SDC [redacted]

[5] The out-of-circuit case Samsung cites—*Osteotech, Inc. v. Regeneration Techs., Inc.*, 2008 WL 4449564 (D.N.J. Sept. 25, 2008)—is factually distinguishable. In that case, the NDA prohibited disclosure or use of the content of any "past, current, and future discussions and communications between the Parties . . . for any purpose other than settlement of Osteotech's claim or to enforce or claim breach of this Agreement." *Id.* at *1. There is no such provision here.

which [redacted] related to the OLED technology. Dkt. 242-17. Pictiva subsequently sent a claim chart for the '567 patent on December 17, 2020, providing a limitation-by-limitation analysis of how Samsung's [redacted] infringed claims 4-5 of the '567 patent. Ex. 25 (2020-12-17 Pictiva email); Ex. 26 ('567 claim chart).

For the reasons discussed above, a jury could find that this claim chart, along with Pictiva's September 2020 notice letter to SDC, provided actual notice to SEC of its infringement of the '567 patent. *See supra* Section IV.D.1.

Furthermore, in Pictiva's August 17, 2021 notice letter to SEC, Pictiva similarly charged infringement of the '567 patent by [redacted] which are all accused in this case of infringing the '425 patent. Ex. 32 at PICTIVA00005790; Dkt. 248-4 (Kennedy Report Ex. 23). This notice letter alone also provided actual notice to SEC of its infringement of the '567 patent. *See, e.g.*, *Netlist*, 2024 WL 402182, at *4-5; *Image Processing Techs., LLC v. Samsung Elecs. Co., Ltd.*, No. 2:20-cv-00050, 2020 WL 6832827, at *4-5 (E.D Tex. June 19, 2020); *Optis Wireless Tech., LLC v. Huawei Techs. Co., Ltd.*, 2:17-cv-00123-JRG-RSP, 2018 WL 3375192, at *6-7 (E.D. Tex. July 11, 2018).

Under the Federal Circuit and this Court's precedent, the provision of notice regarding a parent patent can constitute actual notice of a continuation patent, where the continuation patent has not issued. *See, e.g.*, *K-Tec, Inc. v. Vita-Mix Corp.*, 696 F.3d 1364, 1378-79 (Fed. Cir. 2012); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 2016 WL 11750176 (E.D. Tex. Nov. 29, 2016). In *K-Tec*, the patent owner "provided notice that the MP container infringed various claims of the [asserted] patent's parent patent in March 2005," when the asserted patent had not yet issued. 696 F.3d at 1378-79. The Federal Circuit found that this notice and other communications "resulted in Vita-Mix having actual notice of the [asserted] patent . . . when the patent issued," and affirmed the district court's denial of summary judgment. *Id.* at 1379. Likewise, in *Arthrex*, the parties entered into a Standstill Agreement covering

the parent patents before the continuation patent issued, and this Court found that "[a] reasonable juror could conclude that the scope of notice provided by the Standstill Agreement expanded to include notice of infringement of the [continuation] patent after the [continuation] patent issued" at least partly because the "Standstill Agreement covers products accused under the [parent patents] that are now accused of infringing the [continuation] patent." 2016 WL 11750176, at *3. Here, Pictiva's 2020 and 2021 communications with SDC/SEC notified them that the [redacted] the same product that Pictiva has alleged infringes the '425 patent, infringed the '567 patent. Just like the Standstill Agreement in *Arthrex*, these communications cover the products accused under the '567 patent that are now accused of infringing the '425 patent, and they thus at least "raise[] a triable issue concerning actual notice." *Id.; see also Netlist*, 2024 WL 402182, at *4 (finding that Netlist's letter identifying "members of the patent family" "provide[d] notice regarding continuation patents").[6]

## V. CONCLUSION

For the foregoing reasons, Pictiva respectfully requests that the Court grant summary judgment in its favor.

[6] Samsung attempts to rely on *Pipp Mobile Storage Sys. V. Innovative Growers Equip., Inc.*, 2022 WL 157491 (N.D. Ill. 2022) and *Lubby Holdings LLC v. Chung*, 11 F.4th 1355, 1360–61(Fed. Cir. 2021), but these cases only addressed notice of a patent application, not (as here) notice of a parent patent.

Dated: May 23, 2025

Respectfully submitted,

*/s/ Rebecca Carson*

Samuel F. Baxter
Texas State Bar No. 01938000
sbaxter@mckoolsmith.com
Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice*)
jsheasby@irell.com
Annita Zhong, Ph.D. (*pro hac vice*)
hzhong@irell.com
Rebecca Carson (*pro hac vice*)
rcarson@irell.com
Jie Gao (*pro hac vice*)
jgao@irell.com
Jeffrey Linxwiler (*pro hac vice*)
jlinxwiler@irell.com
Michael W. Tezyan (*pro hac vice*)
mtezyan@irell.com

**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

***Attorneys for Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Ltd.***

[redacted]

[redacted]

## CERTIFICATE OF SERVICE

I hereby certify that, on May 23, 2025, a copy of the foregoing was served to all counsel of record via Email as agreed by the parties.

*/s/ Rebecca Carson*
Rebecca Carson