## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED, | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CASE NO. 2:23-CV-00495-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| *Defendants*. | § § | |

## **MEMORANDUM ORDER**

Before the Court is the Motion to Strike and Exclude the Testimony and Opinions of Plaintiff's Technical Expert Kirk S. Schanze (the "Motion") filed by Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung"). (Dkt. No. 250.) In the Motion, Samsung seeks to strike certain portions of Mr. Schanze's Opening Report. (*Id*. at 15.) Having considered the Motion and its related briefing, and for the reasons stated herein, the Court finds that it should **GRANTED IN PART** and otherwise **DENIED**.

### I.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a

trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.  ANALYSIS

Samsung argues that the Court should exclude Mr. Schanze's opinions for several reasons. The Court addresses each in turn.

### (a) Quantified technical benefits opinions

Samsung first moves to exclude Dr. Schanze's opinions on the technical benefits of three patents: U.S. Patent No. 8,558,223 (the "'223 Patent"); U.S. Patent No. 11,828,425 (the "'425 Patent"); and U.S. Patent No. 8,314,547 (the "'547 Patent"). The Court addresses each in turn.

#### *(1) The '223 Patent*

##### *(A) <u>17% increase in power efficiency opinions</u>*

Dr. Schanze opines that practicing the asserted claims of the '223 Patent causes a 17% increase in power efficiency. (Dkt. No. 279-6 ¶ 22.) To arrive at that increase, Dr. Schanze compares a triazine-based electron transport layer ("ETL") OLED device that has been doped with Liq ("TRZ-*m*-Phen:Liq") described in Jin to an OLED device described in Klenkler that

has not been doped with Liq. (*Id*. ¶¶ 3, 19–22.) The parties, however, disagree as to whether Dr. Schanze's comparison reliably provides support for his opinions.

Samsung argues that Dr. Schanze's power efficiency opinions should be excluded for two reasons. (Dkt. No. 250 at 1.) First, Samsung argues that Dr. Schanze's analysis lacks "a sufficient evidentiary basis" for these opinions. (*Id*.) As support, Samsung contends that, while Dr. Schanze has identified Liq as the only difference between the Jin and Klenkler devices, the '223 Patent "did not invent the use of Liq in OLEDs." (*Id*. at 2.) Second, Samsung asserts that Dr. Schanze has failed to "correctly apportion the benefits" of the '223 Patent. (*Id*. at 1.) Specifically, Samsung insists that Dr. Schanze has not accounted for other differences between the Jin and Klenkler devices that contribute to the power efficiency increase. (*Id*. at 3.)

Plaintiffs respond that Dr. Schanze properly estimated the value of the benefit of the '223 Patent. (Dkt. No. 279 at 1.) Plaintiffs argue that Dr. Schanze has compared an infringing product (Jin) with a non-infringing alternative ("NIA") identified by Samsung (Klenkler). (*Id*. at 2.) Additionally, Plaintiffs contend that Samsung "makes no sense." (*Id*. at 5.) For example, Plaintiffs defend Dr. Schanze's usage of data regarding Liq because "Liq is the 'metal complex' used by the Samsung products accused of infringing the '223 [P]atent." (*Id*.) In another example, Plaintiffs point to passages in Dr. Schanze's report that describe the structures of the Jin and Klenkler devices. (*Id*. at 7 (citing Dkt. No. 279-6 ¶¶ 3, 20).)

The Court agrees with Plaintiffs. "[A] party may . . . estimate the value of the benefit provided by [] infringed features by [] comparing the accused product to non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). Here, Dr.

4

Schanze provides that the asserted claims of the '223 Patent "enable the use of mixed ETLs comprising Liq and an organic compound . . . such as the triazine compounds used in the Samsung accused products." (Dkt. No. 279-6 ¶ 19.) Then, Dr. Schanze compared a product which practices the asserted claims (Jin) to a non-infringing alternative proposed by Samsung (Klenkler). (*Id*.) Thus, Dr. Schanze has not improperly estimated the technical benefit of the '223 Patent.

Additionally, the Court cannot say that this analysis is "untethered to the facts of this case." *Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 973 (Fed. Cir. 2022). Indeed, Dr. Schanze identified the structures of both the Jin and Klenkler devices in his analysis. (Dkt. No. 279-6 ¶¶ 3, 20.) Moreover, Jin "largely" attributes the improved performance of the device described therein to "the better electron transport of the doped TRZ-*m*-Phen:Liq ETL." (Dkt. No. 250-4 at 499.) Samsung's arguments therefore go to the weight of Dr. Schanze's testimony, not its admissibility.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### (B) *26% lifespan improvement opinions*

Dr. Schanze also opines that practicing the asserted claims of the '223 Patent causes a 26% lifespan improvement. (279-6 at 23–25.) To arrive at the improvement, Dr. Schanze compares two OLED devices described in Jin: one which uses TRZ-*m*-Phen and another which uses Phen-NaDPO. (*Id*.) However, both devices use Liq. (*Id*. at ¶ 23.) Dr. Schanze supports his analysis by citing to the Choi paper, which purportedly shows that the use of Liq results in "an improvement to 'half lifetimes' or T$_{50}$ of 54%." (*Id*. ¶ 25.)

5

Samsung argues that Dr. Schanze's opinions on improved lifespan should be excluded for two reasons. (Dkt. No. 250 at 3–4.) First, Samsung asserts that Dr. Schanze's comparison of the Jin devices is unreliable because he has not shown that one device practices the '223 Patent or that the other does not. (*Id*.) Second, Samsung insists that Dr. Schanze's citation to Choi is "equally unavailing" because Dr. Schanze has not shown that any of the devices discussed in that paper practice the asserted claims. (*Id*. at 4.)

Plaintiffs respond that Samsung merely disputes Dr. Schanze's interpretation of the data. (Dkt. No. 279 at 9.) According to Plaintiffs, Jin, as supported by Choi, shows that Liq drives the improved lifespan, not TRZ-*m*-Phen. (*Id*. at 9–10.)

The parties' dispute amounts to a fact question (whether Liq drives the improved lifespan in Jin). However, "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003). Instead, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are more appropriate means for attacking these opinions. *Daubert*, 509 U.S. at 596.

Accordingly, the Court finds that this Portion of the Motion should be **DENIED**.

### (2) The '425 Patent

Dr. Schanze opines that the "use of Liq-doped ETLs in iridium containing PHOLEDs as claimed by, for example, claims 2 and 17" of the '425 Patent "enables increases in power efficiency and device lifetime." (Dkt. No. 279-6 ¶ 3.) As above, Dr. Schanze bases his opinions on the Jin paper, which provides that TRZ-*m*-Phen:Liq OLEDs achieve a 54% increase in power efficiency as compared to Phen-NaDPO:Liq OLEDs. (*Id*. ¶¶ 3–4.)

Samsung advances two reasons to strike these opinions. (Dkt. No. 250 at 4–6.) First, Samsung asserts that Dr. Schanze "fails to determine the benefits of adding Liq to the ETL of an OLED." (Dkt. No. 250 at 5.) Specifically, Samsung asserts that Jin has no bearing on the benefits of the addition of Liq to an ETL as the ETL's Jin compared both contain Liq. (*Id*.) Second, Samsung argues that Dr. Schanze has provided no analysis for asserted claims 4, 9, and 10–12 of the '425 Patent. (*Id*. at 4.) Samsung notes that those claims do not require an ETL with Liq but Dr. Schanze has not provided any analysis beyond the benefits of having an ETL with Liq. (*Id*.)

Plaintiffs maintain that Jin supports Dr. Schanze's opinions in response. (Dkt. No. 279 at 8.) Plaintiffs note that Dr. Schanze opines that devices "ETLs **n-doped** with Liq practice claims 2 and 17 of the '425 Patent." (*Id*. at 9 (emphasis added).) Plaintiffs then assert that Jin compares an OLED ETL that practices the '425 Patent (TRZ-*m*-Phen **doped** with Liq) with a non-infringing alternative (Phen-NaDPO: Liq **blend**). (*Id*.)

The Court agrees with Plaintiffs. As explained above, "a party may . . . estimate the value of the benefit provided by [] infringed features by [] comparing the accused product to non-infringing alternatives." *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014). Here, Dr. Schanze purports to compare an infringing feature (doped ETL) to a non-infringing alternative (blended ETL). Thus, the Court cannot say that Dr. Schanze improperly evaluated the benefit of the '425 Patent.

Samsung's arguments have not persuaded the Court otherwise. As an initial matter, Samsung takes issue with whether an ETL blended with Liq is an ETL doped with Liq, but this is a fact issue best reserved for the jury. *See Micro Chem*, 317 F.3d at 1391-92.

7

Additionally, Samsung's argument that Dr. Schanze has not analyzed claims 4, 9, and 10–12 of the '425 Patent is moot. Plaintiffs now only assert claim 2 of the '425 Patent. (Dkt. No. 480.)

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### *(3) The '547 Patent*

Samsung argues that Dr. Schanze's opinions on the technical benefits of the '547 Patent should be excluded because he impermissibly overstates the claimed invention's footprint in the marketplace. (Dkt. No. 250 at 6–7.) As support, Samsung asserts that, while the expert "alleges that the '547 [P]atent improves color gamut" (range of colors a device can produce), the patent relates to only color impression (color perception). (*Id.*; Dkt. No. 308 at 1.) Samsung further argues that, even if the '547 Patent is directed to color gamut, Dr. Schanze has not excluded unclaimed features of the accused QD-OLEDs that also improve color gamut, such as pixel structure and quantum dots. (Dkt. No. 250 at 7–9.)

Plaintiffs argue in response that Dr. Schanze's analysis is properly tied to the facts for three reasons. (Dkt. No. 279 at 2.) First, Plaintiffs contend that Dr. Schanze has compared an accused product (QD-OLED) to a NIA proposed by Samsung (W-OLED). (*Id.* at 2–3.) Second, Plaintiffs dispute whether the '547 Patent's teachings are limited to color impression. (*Id.* at 3.) Plaintiffs point to disclosures in the specification that touch on color gamut as evidence. (*Id.* (citing Dkt. No. 279-9 at 4:21–27).) Plaintiffs further cite to Dr. Schanze's opinions that the patent's teachings "of a second filter layer in the color conversion region and downstream of thin-film encapsulation ("TFE") would lead to improved color gamut." (*Id.*) Finally, Plaintiffs dispute whether the purported technical benefits are due to unclaimed

8

features, such as quantum dots. (*Id*.) As support, Plaintiffs cite evidence that the claimed TFE alone results in a 91% color gamut, which is similar to that observed for the accused QD-OLED TVs and monitors. (*Id*.)

The Court finds that Dr. Schanze's analysis is sufficiently reliable for admission. As above, Dr. Schanze compares the accused products (QD-OLED) to a NIA identified by Samsung (WOLED). (Dkt. No. 279-6 ¶¶ 57, 68.) Moreover, and as noted by Plaintiffs, Dr. Schanze has introduced evidence that improved color gamut is due to the claimed features of the '547 Patent, not unclaimed ones. (*Id*. ¶¶ 47–48.) Samsung's arguments therefore go to the weight of Dr. Schanze's testimony, not its admissibility.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

**(b) Undisclosed infringement theories**

Samsung next moves to exclude two (2) of Dr. Schanze's infringement theories as being untimely: (1) an infringement theory under the Doctrine of Equivalents ("DOE") for the '223 and '547 Patents and (2) a literal infringement theory for the '223 Patent. The Court addresses each in turn.

*(1) Infringement theories under the DOE*

Samsung argues that Dr. Schanze's infringement theories under the DOE for the '223 and '547 Patents should be excluded because Plaintiffs have not timely disclosed them. (Dkt. No. 250 at 9–10.) Although Samsung notes that Plaintiffs included "[b]oilerplate DOE language" in their infringement contentions, Samsung insists that such language "fails to provide the requisite notice" because it never specified a "particular function, way, or result" analysis. (*Id*. at 10.)

9

Plaintiffs respond that its infringement contentions provided sufficient notice to Samsung that it was advancing an infringement theory under the DOE for the '223 and '547 Patents. (Dkt. No. 279 at 11–12.) According to Plaintiff, "Samsung cites no authority to support its view." (*Id.*)

The Court agrees with Plaintiff. Indeed, sufficient detail of literal infringement, "along with a statement that specific elements are met under the [DOE], is sufficient to provide notice that the accused functionality may be insubstantially different from or function in the same way to provide the same result as the relevant claim language." *Biscotti Inc. v. Microsoft Corp*, 2017 WL 2267283, at *4 (E.D. Tex. May 24, 2017). Here, the facts are identical to those of *Biscotti*. Plaintiff has "included an additional statement—for each relevant claim element—that if the element is not literally satisfied, it is satisfied under the [DOE]." *Id*. Thus, as in *Biscotti*, Plaintiff's infringement contentions provided sufficient notice to Samsung of Plaintiff's infringement theories under the DOE.

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

### *(2) Literal infringement theories*

Samsung argues that Dr. Schanze's literal infringement theory that an emission layer ("EML") in the accused displays is an "electron-conducting layer" as claimed by the '223 Patent. (Dkt. No. 250 at 11.) Samsung asserts that Plaintiffs only have identified an EML in their supplemental infringement contentions with respect to a different claim limitation. (*Id.*)

Plaintiffs respond that their supplemental infringement contentions have provided adequate notice of their theory that the OLED emission layer is an "electron-conducting layer." (Dkt. No. 250 at 10.) Specifically, Plaintiffs point out that the supplement explains

that an EML is "formed by joint evaporation" of a metal complex.  (*Id*. (citing Dkt. No. 250-12 at 29).)

The Court again agrees with Plaintiffs.  Claim 1 of the '223 Patent requires the "electron-conducting layer" to be "obtained by joint evaporation of a metal complex."  (Dkt. No. 17-3 at 19:18–19.)  The October 24, 2024 infringement contentions therefore provide sufficient notice that Plaintiffs allege that an emission layer—which is purportedly formed by joint evaporation with a metal complex—is an "electron-conducting layer."

Accordingly, the Court finds that this portion of the Motion should be **DENIED**.

**(c) Willfulness Opinions**

Finally, Samsung argues that Dr. Schanze's opinions on willfulness should be excluded for four reasons.  (Dkt. No. 250 at 13–14.)  First, Samsung asserts Dr. Schanze improperly "opines about the state of mind or intent [of Samsung] to conclude willful infringement."  (*Id*. at 13.)  Second, Samsung asserts that Dr. Schanze relies on two categories of pre-suit communications that are excluded under non-disclosure agreements ("NDAs"): communications between (a) Samsung Electronics Co., Ltd. ("SEC") and OSRAM gmbH (Plaintiffs' predecessor-in-interest) ("OSRAM") (the "SEC-OSRAM NDA"), and (b) Samsung Display Co. Ltd. ("SDC") and Pictiva (the "SDC-Pictiva NDA").  (*Id*. at 13–14.)  Third, Samsung asserts that the rest of Dr. Schanze's opinions on pre-suit willfulness are based on an Information Disclosure Statement ("IDS") that cited the '547 Patent during prosecution of an unrelated patent.  (*Id*.)  According to Samsung, such evidence "is not sufficient to support willfulness."  (*Id*.)

11

Plaintiffs respond that Dr. Schanze properly opined on willfulness. (Dkt. No. 279 at 13.) First, Plaintiffs contend that the expert properly identified certain facts from the record (e.g., communications) that support an inference of a particular intent. (*Id*.) Plaintiffs further argue that Dr. Schanze draws upon his technical expertise in forming his opinions by referencing claim charts that Plaintiffs had sent to Samsung. (*Id*. at 13–14.) Plaintiffs also dispute whether the NDAs preclude Dr. Schanze's testimony. (*Id*. at 14.)

The Court notes that it has previously construed both the SDC-Pictiva and SEC-OSRAM NDAs. The Court previously found that "Plaintiffs are free to disclose their own information to third parties" under the SDC-Pictiva NDA. (Dkt. No. 506 at 12.) However, Dr. Schanze's opinions are based on information provided by Plaintiffs to SDC and information provided by SDC to Plaintiffs. (Dkt. No. 250-15 ¶¶ 11–13.) Thus, the Court finds that the Motion should be **GRANTED** to the extent that Dr. Schanze's opinions rely on information provided by SDC to Plaintiffs.

Additionally, the Court finds that the SEC-OSRAM NDA "applies to more than just 'confidential' information," but "only applies to notice, and that information falling within its purview can be used to show subjective intent." (Dkt. No. 506 at 9.) Thus, the Court finds that the Motion should be **GRANTED** to the extent that Dr. Schanze's opinions use information protected by the SEC-OSRAM NDA relating to notice for willful infringement.

As to the remaining disputes, however, the Court agrees with Plaintiffs. As an initial matter, evidence of willfulness exists other than the identification of the '547 Patent in an IDS. (*See* Dkt. No. 250-15 ¶ 11.) Moreover, "[e]xperts can opine . . . on the underlying facts that may show a party's state of mind." *Gree, Inc. v. Supercell Oy*, 2020 WL 4288350, at *3

(E.D. Tex. Jul. 27, 2020); *see also Wireless Alliance, LLC v. AT&T Mobility LLC*, 2024 WL 4573256 at *2 (E.D. Tex. Oct. 24, 2024). Here, Dr. Schanze does exactly that. For example, Dr. Schanze opines that Mr. Paul Seaman (Plaintiffs' Director) sent SDC claim charts detailing Samsung's infringement. (Dkt. No. 250-15 ¶ 11.)

Accordingly, the Court finds that this portion of the Motion should be **GRANTED** as described in this section but **DENIED** in all other aspects.

### III. CONCLUSION

For the reasons stated herein, the Court finds that the Motion should be and hereby is **GRANTED** to the extent that (a) Dr. Schanze's opinions rely on information provided by SDC to Plaintiffs and (b) Dr. Schanze's opinions utilize information protected by the SEC-OSRAM NDA that bear on notice for willful infringement purposes. The Motion is otherwise **DENIED** in all other respects.

**SIGNED this 19th day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE