IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED,<br><br>    *Plaintiffs*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>    *Defendants*. | § § § § § § § § § § § § § § § CASE NO. 2:23-CV-00495-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike Certain Opinions of Samsung's Expert Dr. Thomas Katona filed by Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited. **Dkt. No. 240**. In the Motion, Plaintiffs move to strike certain portions of Dr. Katona's opening and rebuttal reports. *Id*. at 1. Having considered the Motion and its related briefing, and for the reasons set forth herein, the Court finds that the Motion should be **GRANTED** only **IN PART**.

### I.    LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained, "Vigorous cross-examination, presentation of contrary evidence, and careful

2

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. ANALYSIS

Plaintiffs move to exclude certain portions of Dr. Katona's opinions on eight different grounds. The Court addresses each in turn.

### (a) Inequitable conduct opinions

Plaintiffs argue that the Court should exclude Dr. Katona's inequitable conduct opinions for U.S. Patent No. 11,828,425 (the "'425 Patent") on both procedural and substantive grounds. (Dkt. No. 240 at 1.) As to procedure, Plaintiffs assert that inequitable conduct "has no place before the jury" because it is an equitable defense. (*Id*.) For support, Plaintiffs cite Standing MIL No. 5, reasoning that the MIL prohibits evidence, testimony, or argument concerning inequitable conduct. (*Id*.) Plaintiffs further raise two substantive challenges to Dr. Katona's opinions. (*Id*.) First, Plaintiffs maintain that Dr. Katona impermissibly speculates as to Plaintiffs' intent. (*Id*. (citing Dkt. No. 240-2 at ¶¶ 1608–1612).) Second, Plaintiffs contend that, by opining that the '425 Patent applicants "knew or should have known" of Diekmann's materiality, Dr. Katona applies the incorrect legal standard for inequitable conduct. (*Id*.)

Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc. ("Samsung") argue in response that "Dr. Katona's opinions regarding the underlying facts of inequitable conduct should [not] be stricken." (Dkt. No. 283 at 1.) Samsung first disputes whether Standing MIL No. 5 applies. (*Id*.) Samsung notes that Standing MIL No. 5 precludes testimony

3

that "relates only to equitable defenses," but Dr. Katona's opinions also relate to inventorship. (*Id*. (citing Dkt. No. 250-2 ¶¶ 1599–1601.)  Samsung then asserts that Dr. Katona applied the correct legal standard (intent and materiality) under *Therasense*.  (Dkt. No. 283 at 1 (citing Dkt. No. 250-2 ¶¶ 65–68.)  Finally, Samsung argues that Dr. Katona bases his opinions on evidence, not speculation.  (*Id*. at 1–2.)

The Court disagrees with Plaintiffs' procedural arguments.  These arguments have no bearing on the reliability of Dr. Katona's opinions.  Rather, these arguments "are more properly the subject of a motion *in limine*."  *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366, 2019 WL 6896648, at *4 (E.D. Tex. Dec. 18, 2019).  The Court therefore declines to strike Dr. Katona's opinions for this reason.

However, the Court does agree that Dr. Katona applies the wrong legal standard in forming his inequitable conduct opinions.  For inequitable conduct, "[p]roving that the applicant knew of a reference, should have known of its materiality, and decided not to submit it to the PTO does not prove specific intent to deceive."  *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  Despite this guidance, Dr. Katona opines that "[t]he '425 patent individuals knew or should have known the materiality of Diekmann in view of the '425 patent."  (Dkt. No. 240-2 ¶ 1608.)  The Motion is therefore **GRANTED** to the extent that Dr. Katona opines that the '425 Patent's applicants "should have known" of Diekmann's materiality.

Additionally, the Court finds that Dr. Katona speculates as to Plaintiffs' intent.  This Court has held that, while "an expert may point to and even testify about evidence relevant to intent, he may not speculate about a party's intent."  *Network-1 Technologies, Inc. v. Alcatel-Lucent USA, Inc.*, No. 6:11-cv-492, 2017 WL 4173468, at *5 (E.D. Tex. Sep. 21, 2017).  Here, Dr. Katona impermissibly speculates about Plaintiffs' intent, stating, their "failure to disclose this material

4

information to the USPTO shows an intent to deceive the USPTO." (Dkt. No. 250-2 ¶ 1612.) The Motion is therefore **GRANTED** to the extent that Dr. Katona speculates about Plaintiffs' intent to deceive the USPTO.

**(b) References to *inter partes* review**

Plaintiffs then argue that Dr. Katona's references to the *inter partes* reviews ("IPRs") of Plaintiffs' patents should be excluded under Court Standing MIL Nos. 6 and 13. (Dkt. No. 240 at 1–2.)

The Court disagrees. Plaintiffs' arguments have no bearing on whether Dr. Katona's opinions are sufficiently reliable. Rather, these arguments "are more properly the subject of a motion *in limine*." *United Servs. Auto. Ass'n*, 2019 WL 6896648, at *4. Accordingly, the Court finds that this portion of the Motion should be **DENIED**. However, this does not relieve counsel from complying with the Court's Standing MILs (particularly No. 6).

**(c) Clix2 opinions**

Next, Plaintiffs raise three separate challenges to Dr. Katona's invalidity opinions that are based on the Clix2 device. The Court addresses each in turn.

*(1) Exceeding the scope of Samsung's invalidity contentions*

First, Plaintiffs move to exclude Dr. Katona's opinions regarding Clix2 for allegedly exceeding the scope of Samsung's invalidity contentions for the '425 Patent. (Dkt. No. 240 at 2–3.) Plaintiffs argue that, while the contentions provide only that "iRiver Clix2 discloses [each limitation of the '425 Patent]," Dr. Katona opines that specific features of Clix2 (e.g., LiQ and LG201) satisfy certain claim limitations of the patent. (*Id.*; Dkt. No. 321 at 1.)

The Court disagrees. Plaintiffs have not identified any inconsistency between Dr. Katona's opinions and Samsung's invalidity contentions. (Dkt. No. 240 at 2.) Instead, Plaintiffs concede

that both provide that Clix2 meets certain claim limitations of the '425 Patent. (*Id.*) Moreover, Plaintiffs rely on inapposite caselaw. For example, in *Firtiva Corporation v. Funimation Global Group, LLC*, the defendant "failed to identify the [cited prior art reference] in its contentions." No. 2:21-cv-00111, 2022 WL 1792785, at *2 (E.D. Tex. Jun. 1, 2022). By contrast, here Samsung timely disclosed Clix2 as a theory. Exclusion on this ground is therefore inappropriate. Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### (2) *Untimely documents*

Next, Plaintiffs move to exclude Dr. Katona's opinions regarding Clix2 under P.R. 3-4 for failure to "produce or make available for inspection and copying." (Dkt. No. 240 at 3; Dkt. No. 321 at 2.) However, the Court has already addressed these arguments in its Order regarding Plaintiffs' Motion to Strike Untimely Clix2 Evidence (Dkt. No. 251). Accordingly, and for the same reasons in that Order, the Court finds that this portion of the Motion is **DENIED**.

### (3) *Conversations with Samsung Display Co., Ltd. employees*

Finally, Plaintiffs move to exclude Dr. Katona's opinions that rely on conversations he purportedly had with Non-Party Samsung Display Co., Ltd. ("SDC") witnesses: Mr. Kwangjin Yun, Mr. Yonghun Jo, and Mr. Hansung Bae. (Dkt. No. 240 at 5.) First, Plaintiffs assert that these conversations directly conflict with the sworn deposition testimony of the witnesses. (*Id.* at 5–6.) Second, Plaintiffs assert that these statements are inadmissible hearsay. (*Id.* at 6.) According to Plaintiffs, the admission of these opinions would allow Dr. Katona to "be a conduit for hearsay statements." (*Id.*)

The Court disagrees. As an initial matter, Plaintiffs overstate the contradictions between Dr. Katona's report and the witnesses' deposition testimony. For example, Plaintiffs cite a discrepancy between (a) Mr. Yun's answer to a question asked during his deposition "about his

6

work generally" and (b) Mr. Yun's answer to a question asked by Dr. Katona about "the difference between [] two models." (Dkt. No. 240 at 6.) These are unrelated questions.

Additionally, Plaintiffs' hearsay arguments are unpersuasive. Federal Rule of Evidence 703 allows experts to rely on hearsay in forming their opinions, and experts routinely do so. Here, a motion *in limine* is again a more proper form of relief than a motion to strike. Accordingly, the Court finds that this portion of the Motion should be **DENIED**, reserving to trial the issue whether the witness attempts to put hearsay before the jury.

### (d) Reliance on references subject to *Sotera* stipulations

Plaintiffs argue that portions of Dr. Katona's invalidity opinions rely on references that are subject to *Sotera* stipulations and should therefore be excluded. (Dkt. No. 240 at 7.) Specifically, Plaintiffs assert that, by opining that the Diekmann and Suzuki references both anticipate claim 1 of the '425, Dr. Katona asserts invalidity based on grounds that were raised or reasonably could have been raised in the IPR. (*Id*. (citing Dkt. No. 240-12).)

Samsung responds that Dr. Katona's invalidity opinions have not violated any *Sotera* stipulations. (Dkt. No. 283 at 5.) Samsung notes that its stipulation provides that it "will not pursue an invalidity defense in this case that the patent claims subject to the instituted IPR are invalid based on those grounds that were raised in the IPR." (Dkt. No. 240-12.) Samsung further points out that, while Dr. Katona asserts that certain dependent claims of the '425 Patent are obvious, Samsung only asserted that independent claim 1 of the '425 Patent is anticipated by either Diekmann or Suzuki during the IPR. (Dkt. No. 283 at 5–6.)

The Court agrees with Samsung. Plaintiffs have misinterpreted Samsung's stipulation, which is not implicated here. (*See* Dkt. No. 240 at 7 (citing Dkt. No. 240-12).) Accordingly, the Court finds that this portion of the Motion is **DENIED**.

7

**(e) Pagano provisional application**

In its June 10, 2024, invalidity contentions for U.S. Patent No. 6,949,389 (the "'389 Patent"), Samsung argued that certain claims of the '389 Patent were invalid over U.S. Patent No. 8,808,457 (the "Pagano Patent"). (Dkt. No. 240-14 at 1.) Samsung also provided that the Pagano Patent "claims priority to Provisional application No. 60/372,559, filed on April 15, 2002" (the "Pagano Provisional"). (*Id*.) Samsung made no other mention of the Pagano Provisional in the invalidity contentions. (*See id*.) Now, however, Dr. Katona relies on the Pagano Provisional to support his opinions that the '389 Patent's claims are obvious. (*See* Dkt. No. 240-2 ¶¶ 221, 834, 839–344.)

Plaintiffs move to exclude Dr. Katona's opinions regarding the Pagano Provisional under P.R. 3-3 and 3-4. (Dkt. No. 240 at 7.) Plaintiffs argue that the Pagano Patent cannot satisfy Samsung's obligation to disclose and produce the Pagano Provisional "as the patent and its provisional have distinct disclosures." (Dkt. No. 321 at 2, n. 1.) According to Plaintiffs, "this uncited and unproduced reference should be stricken." (Dkt. No. 240 at 8.)

Samsung argues that it satisfied its obligation to disclose and produce the Pagano Provisional. (Dkt. No. 283 at 6.) Samsung further maintains that the portions of the Pagano Patent it utilized in its invalidity contentions "are supported by the provisional application." (*Id*.)

The Court agrees with Samsung. The Pagano Provisional is, by Plaintiffs' own admission, explicitly identified in Samsung's June 10 invalidity contentions. (Dkt. No. 240-14 at 1.) Plaintiffs therefore had sufficient notice that Samsung would assert that the '389 Patent's claims are invalid over the provisional application.

**(f) Orthogonal Agreement**

Plaintiffs move to exclude Dr. Katona's opinions regarding the "Orthogonal Agreement" on both (1) procedural and (2) substantive grounds. (Dkt. No. 240 at 8-11.) The Court addresses each in turn.

*(1) Procedural grounds*

As to procedure, Plaintiffs first assert that Samsung never identified the Orthogonal Agreement as comparable during fact discovery, noting that Samsung failed to identify the agreement in response to an interrogatory seeking information regarding comparable licenses. (*Id*. at 8.) Plaintiffs further assert that Dr. Katona improperly identifies for the first time the Orthogonal License as a comparable one in his rebuttal report. (*Id*. at 8–9.) According to Plaintiffs, "Courts in this district routinely strike expert opinions . . . based on theories that are not timely disclosed and are identified for the first time in rebuttal reports." (*Id*. at 8 (citations omitted).)

The Court disagrees. As an initial matter, Samsung timely disclosed the Orthogonal Agreement. Plaintiffs themselves admit that Samsung "produce[d] it on the last day of fact discovery." (Dkt. No. 240 at 8.) Plaintiffs cite no case stating that this, in and of itself, constitutes untimely disclosure. Consequentially, Plaintiffs' citation to caselaw also fails. Indeed, in *Entropic Communications, LLC v. Charter Communications, Inc.*, the agreement at issue was not produced "until after fact discovery had closed." No. 2:22-cv-00125, 2023 WL 8260866, at *3 (E.D. Tex. Nov. 28, 2023). Thus, Plaintiffs' procedural arguments fail.

*(2) Substantive grounds*

As to substance, Plaintiffs argue that Dr. Katona has "failed to perform a legally adequate technical comparability analysis." (Dkt. No. 240 at 9.) Specifically, Plaintiffs assert that Dr. Katona has merely opined that the Orthogonal Agreement includes patents that are "in the same

9

field of technology" as the asserted patents. (*Id*. at 9–10 (citations omitted).) According to Plaintiffs, this analysis falls far short of the "require[d]" comparison of the functionality enabled by both the asserted patents and the patents covered by the agreement. (*Id*. at 10.)

Samsung argues in response that Dr. Katona provided sufficient analysis to foreclose exclusion. (Dkt. No. 283 at 7–8.) As support, Samsung points to the four (4) reasons that Dr. Katona provides informed his opinion that the Orthogonal Agreement is a comparable license: (1) the patents are directed to OLEDs; (2) the patents cover methods of manufacturing OLEDs; (3) the patents are directed to methods like photolithography for OLEDs; and (4) the patents are directed to the color and emissions and spectrums for OLEDs. (Dkt. No. 283 at 7 (citing Dkt. No. 240-3 ¶ 399).) Samsung further asserts that Dr. Katona has opined on the technical benefits of the Asserted Patents at length throughout his reports and considered those benefits in his analysis. (*Id*. at 8.)

The Court finds that Plaintiffs' arguments go to the weight of Dr. Katona's opinions, not their admissibility. The record precludes the Court from saying that the assigned patents have "no meaningful ties to the patented technology." *See LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 81 (Fed. Cir. 2012). Indeed, Dr. Katona opines that the Orthogonal Agreement assigned patents that, like the asserted patents, "cover" the manufacture of OLEDs. (Dkt. No. 240-3 ¶ 399). Although a reasonable jury could conclude otherwise, that is not for the Court to decide. Accordingly, the Court finds that Plaintiffs' Motion is **DENIED** as to the Orthogonal Agreement.

**(g) Technical damages opinions**

Plaintiffs raise three grounds to strike certain portions of Dr. Katona's technical damages opinions. The Court addresses each in turn.

### *(1) Quantification of technical benefits*

Plaintiffs first move to strike Dr. Katona's opinions that the '389, '547, and '425 Patents provide a technical benefit of "zero percent or at most 0.2%." (Dkt. No. 240 at 11 (citing Dkt. No. 240-3 ¶ 342).) Specifically, Plaintiffs assert that these opinions are unreliable because Dr. Katona has not identified any scientific methodology that he employed in reaching the 0.2% figure. (*Id.*; Dkt. No. 321 at 3.) According to Plaintiffs, Dr. Katona has "plucked [the figures] out of thin air." (Dkt. No. 240 at 11 (citing *Laser Dynamics, Inc. v. Quanta Computer USA, Inc.*, 694 F.3d 51 (Fed. Cir. 2012).)

Samsung responds that Dr. Katona has provided "the reasons behind his quantified alleged benefits." (Dkt. No. 283 at 9.) As support, Samsung points to Dr. Katona's opinions that, "in real life applications, other unaccused technologies would have nullified the alleged benefits of" the patents. (*Id.* (citing Dkt. No. 240-3 ¶¶ 335–339, 353–357, 368–373).)

The Court agrees with Samsung. Dr. Katona's opinions are unlike those of the expert in *Laser Dynamics*. Specifically, and in contrast to the *Laser Dynamics* expert, Dr. Katona considered many factors in his analysis (e.g., the patents' disclosures, the needs of the accused products, unpatented features that contribute to the technical benefits of the patents) whereas the *Laser Dynamics* expert had a "complete lack of economic analysis to quantitatively support" his analysis. (*Id.* at 69; Dkt. No. 240-3 ¶¶ 340–342, 359.) The Court therefore cannot say that Dr. Katona's opinions are sufficiently unreliable to warrant exclusion. Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### *(2) Commercial acceptability analysis*

Second, Plaintiffs move to exclude Dr. Katona's commercial acceptability analysis of his proposed non-infringing alternatives ("NIAs") on the ground that these opinions are

11

"impermissible *ipse dixit*." (Dkt. No. 240 at 11–12.) As support, Plaintiffs point to Dr. Katona's assertion that Samsung is concerned with product performance, not the method of manufacture. (*Id*.) According to Plaintiff, this opinion is conclusory because Dr. Katona has not explained what these performance requirements are or why his proposed NIAs satisfy them. (*Id*.)

Samsung responds by arguing that Dr. Katona has supported his commercial acceptability analysis with sufficient facts. (Dkt. No. 283 at 10.) As evidence, Samsung notes that Dr. Katona bases his analysis on deposition testimony of non-party SDC's corporate designees and RFQs that list the performance requirements. (*Id*. (citing Dkt. No. 240-3 ¶¶ 335–339, 357, 373).) Samsung also notes that Dr. Katona rebuts Plaintiffs' experts' opinions on the acceptability of the NIAs. (*Id*.)

The Court agrees with Samsung. Dr. Katona's opinions are based on cited documents and testimony that provide sufficient facts to support his conclusions. (*See* Dkt. No. 240-3 ¶ 373.) Plaintiffs' arguments therefore go to the weight of Dr. Katona's opinions, not their admissibility. *See Stetson Petroleum Corp. v. Trident Steel Corporation*, No. 4:14-cv-00043-ALM, 2015 WL 6745958, at *6 (E.D. Tex. Nov. 4, 2015). Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### (3) Opinions on SDC innovations and patents

Finally, Plaintiffs move to exclude Dr. Katona's opinions that thirty-one SDC patents have similar technical benefits to the asserted patents. (Dkt. No. 240 at 12.) Specifically, Plaintiffs assert that Dr. Katona has not shown that the SDC patents cover any portion of the accused products, rendering them irrelevant to apportionment. (Dkt. No. 321 at 4.) As evidence, Plaintiffs insist that "Samsung disclaimed any knowledge about whether the accused products practice these inventions." (*Id*.)

In response, Samsung maintains that Dr. Katona has analyzed why each of SDC's unaccused technologies provides the same technical benefits as the asserted patents. (Dkt. No. 283 at 10.) According to Samsung, "expert opinions on alternatives and benefits 'is simply a matter for cross-examination as it goes to the correctness of his methodology, not reliability.'" (*Id*. at 11 (citation omitted)).

The Court agrees with Samsung. As Samsung points out, Dr. Katona has analyzed unaccused, patented features of the accused products that also further the same technical benefits as the asserted patents. (*See* Dkt. No. 240-3 ¶ 64.) He then concludes that these features limit the incremental benefits of the asserted patents. (*Id*.) Dr. Katona's analysis is therefore relevant to technical benefits. Plaintiffs' citation to case law having different facts has not persuaded the Court otherwise. Acccordingly, the Court finds that this portion of the Motion is **DENIED**.

**(h) Claim constructions**

Finally, Plaintiffs move to strike four categories of Dr. Katona's opinions on the grounds that they rely on impermissible claim construction arguments. The Court addresses each in turn.

### *(1) "Organic layer sequence"*

Plaintiffs first move to exclude Dr. Katona's opinions on an "organic layer sequence" as recited by claim 1 of the '547 Patent. (Dkt. No. 240 at 13.) Plaintiffs argue that, by opining that the sequence is "all [of] the layers in a device between an anode and a cathode," Dr. Katona improperly relies on Samsung's withdrawn construction for the claim term ("an organic layer sequence comprising an active layer and electrode"). (*Id*. (citing Dkt. No. 110-1 at 9; Dkt. No. 321 at 4.)

In response, Samsung argues that Dr. Katona's opinions are not based on withdrawn constructions. (Dkt. No. 283 at 11–12.) Instead, Samsung asserts that Dr. Katona's opinions are

13

based on the agreed construction for the entire claim term ("an organic layer sequence which emits an electromagnetic radiation having a first wavelength spectrum during operation"). (*Id*.)

The Court agrees with Samsung. Dr. Katona has not relied upon the withdrawn construction. That construction requires an organic layer sequence to comprise an electrode, but Dr. Katona identifies electrodes as distinct structures from the sequence. Indeed, and as noted by Plaintiffs, Dr. Katona opines that "the accused products include a cathode and an anode [(electrodes)] that . . . sandwich the organic layer sequence." (Dkt. No. 240 at 13 (citing Dkt. No. 240-3 ¶ 230).) Plaintiffs' dispute is therefore merely a factual one. *See Personal Audio, LLC v. Togi Entm't, Inc.*, No. 2:13-cv-00013, 2014 WL 12616161, at *3 (E.D. Tex. Sep. 8, 2014). Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### *(2) Characterization of what the '547 Patent is directed to*

Second, Plaintiffs move to exclude Dr. Katona's opinions on what the '547 Patent is directed to, arguing that these opinions "redefine the claim scope in the guise of discussing technical benefits." (Dkt. No. 321 at 5.) As support, Plaintiffs insist that Dr. Katona attempts to limit the scope of an "optoelectronic device" by stating that "the '547 patent is directed to a flashbulb on a camera." (Dkt. No. 240 at 14 (citing Dkt. No. 240-3 ¶ 238).) Plaintiffs further allege that Dr. Katona impermissibly narrows the claim scope to a lighting device by opining that "the '547 patent is directed to using phosphor materials for wavelength conversion in a lighting device." (*Id*. (citing Dkt. No. 240-2 ¶ 115).)

Samsung responds by arguing that Dr. Katona's statements go to technical benefits, not claim scope. (Dkt. No. 283 at 13.) Samsung notes that Dr. Katona has not opined that the accused products infringe the '547 Patent's claims because of the specification's disclosure. (*Id*.) Instead,

14

Samsung asserts that these opinions rebut the testimony of Plaintiffs' technical expert, Dr. Schanze, on what the patent is directed towards.  (*Id.* (citing Dkt. No. 240-3 ¶ 238).)

Again, the Court agrees with Samsung.  The sections of Dr. Katona's report that Plaintiffs have identified go towards the technical benefits.  For example, ¶ 347 of Dr. Katona's rebuttal report criticizes Dr. Scahnze's opinion that the '547 Patent is directed to improving color gamut.  In another example, ¶ 238 of the same report disputes whether QD-OLEDs have a need "to provide a non-yellow color impression."  Plaintiffs therefore object to what is merely a "classic battle of the experts."  *Daingean Technologies Ltd. v. T-Mobile USA, Inc.*, No. 2:23-cv-00347, 2025 WL 1873060, at *6 (E.D. Tex. May 14, 2025).  Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### *(3)  Comparison of Accused Products to preferred embodiments*

Next, Plaintiffs argues that Dr. Katona's opinions that the "electron-transport layers in the accused products are doped with Liq but are not n-doped" should be stricken.  (Dkt. No. 240 at 14–15.)  Plaintiffs assert that these opinions impermissibly compare the accused products to preferred embodiments in the specification, rather than the claims.  (*Id.*)

Samsung responds that Dr. Katona properly compared the accused products to the claims. (Dkt. No. 283 at 13–14.)  As support, Samsung notes that claim 1 of the '425 Patent requires "the organic layer sequence comprises an electron transport layer that is n-doped."  (*Id.*)  Samsung asserts that Dr. Katona uses certain disclosures in the '425 Patent's specification merely to show that "Liq is not necessarily an n-dopant."  (*Id.*)

The Court agrees with Samsung.  As an initial matter, the Court notes that the parties never disputed the meaning of "an electron-transport layer that is n-doped" during *Markman* proceedings.  (*See* Dkt. No. 397 at 10.)  Accordingly, "n-doped" is given its plain and ordinary

15

meaning, and that meaning is informed by the specification. *Atlas IP, LLC v. Medtronic, Inc.*, 809 F.3d 599, 605 (Fed. Cir. 2015) (citations omitted). Consistent with this, Dr. Katona relies on the specification's failure to list Liq as an "n-dopant" to support his understanding that "Liq-doped does not mean that Liq is [necessarily] an n-dopant." (Dkt. No. 240-3 ¶ 293.) Under these facts, the Court cannot say that Dr. Katona impermissibly compares the accused products to preferred embodiments. Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### (4) "Planarization layer"

Finally, Plaintiffs move to exclude ¶ 311 of Dr. Katona's Rebuttal Report on the grounds that it deviates from the parties' agreement in principle that "a planarization layer" means "a layer of material that planarizes." (Dkt. No. 240 at 15.) Specifically, Plaintiffs assert that, by opining that "a planarization layer" is a "single layer with the same composition throughout" that is made with the same manufacturing process, Dr. Katona has "inject[ed] additional limitation[s]" that the parties have not agreed to. (*Id.*)

Samsung argues that it is Plaintiffs who have deviated from their agreement, not Samsung. (Dkt. No. 283 at 14; Dkt. No. 345 at 5.) Samsung notes that Plaintiffs' technical expert, Dr. Humphrey, first opined that a "planarization layer" is a "composite layer." (Dkt. No. 283 at 14.) According to Samsung, these opinions merely rebut the "new theory" advanced by Plaintiffs' expert. (*Id.*)

The Court agrees with Samsung. Had Plaintiffs wished to confine Dr. Katona to opining on the agreed definition of a "planarization layer, Dr. Humphrey should not have opined that "the CPL, the 1st CVD and the monomer layer can be a 'composite' planarization layer." (Dkt. No. 239-4 ¶ 117.) Plaintiffs cannot raise the issue and prevent Defendants from rebutting. Accordingly, the Court finds that this portion of the Motion is **DENIED**.

I.   CONCLUSION

For the reasons stated above, the Court finds that the Motion is **GRANTED** to the extent that Dr. Katona opines that the '425 Patent's applicants "should have known" of Diekmann's materiality.  The Court further finds that the Motion is **GRANTED** to the extent that Dr. Katona speculates about Pictiva's intent to deceive the USPTO.  The Motion is **DENIED** in all other aspects.

**SIGNED this 19th day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE