**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CASE NO. 2:23-CV-00495-JRG-RSP |

**REPORT AND RECOMMENDATION**

Before the Court is the Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited's Motion to Strike Untimely Clix2 Evidence and Motion for Summary Judgment Regarding Clix2 Invalidity Grounds. **Dkt. No. 251**. The Motion is fully briefed. *See* Dkt. Nos. 292, 314, 357. Plaintiffs first argue that Clix2 documents that Samsung did not timely produce or identify as relevant to its invalidity defense should be excluded. Dkt. No. 251 at 7–14. Plaintiffs next argue that, if the Clix2 evidence is omitted, summary judgment is appropriate because no reasonable jury could find that Clix2 invalidates the '164, '223, or '425 Patents. *Id.* at 14–23. For the following reasons, the Motion to Strike should denied and the Motion for Summary Judgment should likewise be denied.

## I. LEGAL STANDARD

### A. Motion Strike Evidence Under the Local Rules

The Federal Rules of Civil Procedure set the boundaries for relief that may be granted on a motion to strike. "The court may strike from a pleading an insufficient defense or any redundant,

immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are often premised upon a failure to comply with the Local Rules.

The purpose of the Local Rules is to "further the goal of full, timely discovery and provide all parties with adequate notice and information to litigate their cases, not to create loopholes through which parties may practice litigation by ambush." *Cummins–Allison Corp. v. SBM Co.*, No. 9:07-CV-196, 2009 WL 763926, at *1 (E.D. Tex. Mar. 19, 2009); *Finisar Corp. v. DirecTV Grp.,* 424 F. Supp. 2d 896, 901 (E.D. Tex. 2006) (citation omitted) (noting that the goals include providing adequate notice and information to all parties and ensuring full, timely discovery).

Local Patent Rule 3-3 deals with initial disclosure of invalidity contentions. Rule 3-3(a) requires the disclosure of "[t]he identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious." Rule 3-3(b) recites that a party asserting invalidity must, in its contentions, disclose "[w]hether each item of prior art anticipates each asserted claim or renders it obvious. If a combination of items of prior art makes a claim obvious, each such combination, and the motivation to combine such items, must be identified." Rule 3-3(c) requires a "chart identifying where specifically in each alleged item of prior art each element of each asserted claim is found . . . ."

Local Patent Rule 3-4 deals with document production that must accompany invalidity contentions. The party asserting invalidity "must produce or make available for inspecting . . . (a) source code, specifications, schematics, flow charts, artworks, formulas, or other documentation . . . ; and (b) [a] copy of each item of prior art identified pursuant to [Rule] 3-3(a) which does not appear in the file history of the patent(s) at issue."

Expert reports may not introduce new theories not set forth in the contentions, but the scope of expert reports and contentions are not coextensive. *See Fenner Invs., Ltd. v. Hewlett-Packard*

*Co.*, No. 6:08-CV-273, 2010 WL 786606 (E.D. Tex. Feb. 26, 2010). Contentions need not disclose specific evidence or prove the case; they just need to provide fair notice of the scope of each theory. *Id.* (citations omitted). Expert reports, however, must include a complete statement of the expert's opinions, the basis and reasons for them, and any data or other information considered when forming them. Fed. R. Civ. P. 26(a)(2)(B). The question for the court in a challenge to exclude evidence that was allegedly included in an expert report but not included in the contentions, thus becomes whether the expert has permissibly specified the application of a disclosed theory or impermissibly substituted a new theory altogether. *See Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-CV-1455, 2017 WL 11807449, at *4 (E.D. Tex. Aug. 3, 2017) (Bryson, J.).

In determining whether to exclude evidence based on a party's failure to comply, courts in this district consider (1) the danger of unfair prejudice to the nonmovant, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, (4) the importance of the particular matter, including the adequacy of lesser sanctions, and (5) whether the offending party was diligent in seeking an extension of time, or in supplementing when required. *See Tyco Healthcare Grp. v. Applied Med. Res. Corp.*, No. 9:06-CV-151, 2009 WL 5842062, at *3 (E.D. Tex. Mar. 30, 2009). Consistent with the Fifth Circuit, courts also routinely consider the prejudice to the movant of not excluding. *See Culberson v. Clay Cnty.*, 98 F.4th 281, 285 (5th Cir. 2024); *e.g.*, *Estech Sys. IP, LLC v. Carvana LLC*, No. 2:21-CV-482, 2023 WL 2245116, at *2 (E.D. Tex. Feb. 27, 2023).

Under Local Rule 3-6(b), leave to amend or supplement may be granted upon a showing of "good cause." To show good cause, the defendant must act with "diligence in discovering the additional products and in seeking to amend." *See Keranos, LLC v. Silicon Storage Tech., Inc.*, 797 F.3d 1025, 1035 (Fed. Cir. 2015). In determining whether good cause exists, courts consider

(1) the party's explanation for its failure to include information in its original contentions, (2) the importance of the information, (3) the potential prejudice in allowing the amendment, and (4) the availability of a continuance to cure such prejudice. *See Estech*, 2023 WL 2245116, at *2.

**B. Motion to Strike Evidence Under Federal Rule of Civil Procedure 37.**

Rule 26(a)(1)(A)(ii) requires that a party "must, without awaiting a discovery request, provide to the other parties a copy of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control, and may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Initial disclosures under Rule 26(a) are due early in the case, *see* Fed. R. Civ. P. 26(a)(1)(C), so later-uncovered information would otherwise be exempt. However, Rule 26(e)(1)(A) requires a "party who has made a disclosure under Rule 26(a) [to] supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Under Rule 37(c)(1), "If a party fails to provide information . . . as required by Rule 26(a) . . . the party is not allowed to use that information . . . to supply evidence . . . at a trial, *unless* the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1) (emphasis added). "When confronted with a violation of Rule 26, Rule 37 grants district courts the authority to exclude untimely information." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019). Four factors guide a court's discretion in evaluating whether to exclude evidence under Rule 37. *See CQ, Inc. v. TXU Mining Co.*, 565 F.3d 268, 280 (5th Cir. 2009). Those factors are: "(1) [the proffering party]'s explanation for its failure to disclose

evidence, (2) the importance of the evidence, (3) the potential prejudice to [the opposing party] in allowing the evidence, and (4) the availability of a continuance." *Id.*

**C. Summary Judgment.**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). This standard has two components: "material fact[s]" and "genuine dispute[s]." *See Celotex*, 477 U.S. at 322.

A fact is "material" when, under the substantive law, it can affect the outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over facts that are irrelevant or unnecessary will not defeat summary judgment. *See id.* A dispute is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the [nonmovant]." *See id.* "[T]he mere existence of some alleged factual dispute between the parties will not defeat . . . summary judgment; the requirement is that there be no genuine [dispute] of material fact." *See id.* at 247.

The movant must identify the basis for summary judgment. *Celotex*, 477 U.S. at 323. "If the [movant] does not have the ultimate burden of persuasion at trial, the [movant] 'must either produce evidence negating an essential element of the [nonmovant]'s claim or defense or show that the [nonmovant] does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (citation omitted). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson*, 477 U.S. at 255.

## II. ANALYSIS

Plaintiffs' Motion seeks two distinct remedies: exclusion of evidence and summary judgment. *See* Dkt. No. 251. The Court addresses each remedy separately.

### A. Motion to Strike Clix2 Evidence

Plaintiffs seek exclusion of "[a]ll of the documents that Samsung is now attempting to rely on for its Clix2 defense." *Id.* at 8. Plaintiffs first argue for the exclusion of all such evidence based on an alleged failure to comply with the Local Patent Rules and then make individual arguments for exclusion of grouped sets of documents on varied grounds. *Id.* at 9–14. The Court addresses each argument in turn.

#### i. Blanket Exclusion of All Clix2 Evidence.

Plaintiffs begin by arguing that Samsung failed to meet the requirements of Local Patent Rules 3-3 and 3-4 because it did not produce any documents about Clix2 in its invalidity contentions and, despite being in possession when it served its December 19, 2024, contentions, it has not made a Clix2 device available for inspection. *Id.* at 7–8. Plaintiffs complain that Samsung "is now attempting to use its expert reports to launder new invalidity theories." *Id.* at 8. Plaintiffs also complain that Samsung's actions "amount" to an "attempt to amend its invalidity contentions, which should be rejected." *Id.* Plaintiffs finally argue that Samsung has no excuse for its failure to meet the requirements of the local rules because "[a]ll of the documents . . . were either publicly available or are SDC documents that Samsung could have easily obtained." *Id.*

Samsung begins its response by arguing that it first served its amended contentions naming Clix2 on June 10, 2024. *Id.* at 11. Samsung continues that, because Plaintiffs never objected apart from one email about specific HOMO/LUMO documents, it is "too late to object" to their sufficiency. *Id.* at 3, 11–12. Samsung argues that delaying objections to the eve of trial, and then

seeking total exclusion is improper. *Id.* at 12–13 (citing *Ziilabs Inc., Ltd. v. Samsung Elecs. Co.*, No. 2:14-CV-203, 2015 WL 7303352, at *1–2 (E.D. Tex. Aug. 15, 2015)) (citation omitted). Samsung also argues that Clix2 evidence is relevant to non-invalidity issues, including non-infringement, willfulness, and damages. *Id.* at 13. Samsung continues that the Clix2 "was manufactured . . . similarly to . . . the accused products," and thus, even if Samsung failed to comply, not all Clix2 evidence should be excluded. *Id.* at 13. Samsung also argues that, if it violated the Rules, the five factors balance in favor of not excluding, and if they do not, it should be allowed to amend. *Id.* at 13–23.

In reply, Plaintiffs argue that they had no way to know Samsung's experts would introduce these theories and therefore could not have moved to strike earlier. Dkt. No. 314 at 2–3. Plaintiffs also argue that the importance of Clix2 is overstated because (1) Samsung asserts over thirty anticipation and obviousness grounds for the '425 Patent, and (2) Samsung retains several invalidity theories under § 112 against the '164 and '223 Patents and, with respect to '425, it made the strategic decision by *Sotera* stipulation to pursue its other invalidity theories against those two patents in an instituted *Inter Partes* Review, limiting the prior art it could assert at trial. *Id.* at 3–4.

In sur-reply, Samsung argues that its experts do not rely on Clix2 to assert any new invalidity theory; rather, they merely explain the theories raised in the contentions. Dkt. No. 357 at 2–3 (citing *Elbit Sys. Land & C41 Ltd. v. Hughes Network Sys., LLC*, No. 2:15-CV-37, 2016 WL 9307563, at *3 (E.D. Tex. Sept. 27, 2016)). Samsung also re-urges many of the same arguments raised in its previous response. *Id.* at 2–7. In relevant part, Samsung reiterates that Clix2 "is the basis for all prior art invalidity arguments remaining" against the '164 and '223 Patents. *Id.* at 3.

Here, beginning with the contentions served on June 10, 2024, Dkt. No. 251-14, the term "Clix2" appears 163 times. It is specifically referenced in obviousness combinations for several

patents, including the ‘164, ‘223, and ‘425 Patents. *See, e.g.*, *id.* at 150; *id.* at 172; *id.* at 230. It is also referenced as an on-sale theory. *Id.* at 20–21. Samsung cites to an exemplar, Exhibit C-19 to its contentions, where it mapped the Clix2 device to the limitations of the ‘223 Patent. *See* Dkt. No. 292-2. Exhibit C-19 also provides screenshots of images and websites upon which Samsung's Clix2 theories rely. *See* Dkt. No. 292-2. Samsung states that this was all the information it had knowledge of at the time. Dkt. No. 292 ¶ 1 (citing Dkt. No. 292-2).

To the extent that Plaintiffs' argument is directed at a failure to disclose more information that was produced after Samsung's December 19 contentions, the deadline for complying with Rules 3-3 and 3-4 was December 19. Dkt. No. 251 ¶ 2. After that date, Samsung would have to seek leave to supplement. Moreover, supplementation is not required unless the evidence discloses a new theory. *See Allergan*, 2017 WL 11807449, at *4. Here, the evidence relates to the same two theories that Samsung asserts in its contentions; Plaintiffs have not persuaded the Court otherwise.

Additionally, the instant motion seeking the exclusion of all Clix2 evidence was filed on May 9, 2025, nearly five months after Samsung's last amended contentions. Plaintiffs' reason for the delay is that they had no reason to know that Samsung would introduce new theories. The later disclosed evidence by Samsung did not assert a new theory, so this argument is unavailing. As Samsung argued, excluding all Clix2 evidence now would be highly prejudicial to their ability to present invalidity arguments to the ‘223 and ‘165 Patents. And to Plaintiffs' argument that the *Sotera* stipulations were a strategic decision, so, too, was Plaintiffs' decision to wait. Further, Plaintiffs' invocation of Samsung's strategy does not in any way reduce the prejudice to Samsung now of excluding all Clix2 evidence on the eve of trial. Accordingly, Plaintiffs' Motion to Strike should be **DENIED** to the extent it seeks a blanket exclusion of Clix2.

To the extent that Plaintiffs argued here for exclusion of all evidence for reasons relating to their categorized disputes, those arguments will be addressed with respect to the individual groups to which they pertain.

ii. A1 M1B EV Recipe & Target Spec and Other SDC Documents Produced on December 31, 2024.

Plaintiffs argue that documents SDC produced on December 31, 2024, should be excluded on several grounds. Dkt. No. 251 at 9. First, Plaintiffs take issue with Samsung's failure to amend its contentions to identify them. *Id.* Next, Plaintiffs argue that Samsung's failure to identify that these documents were related to Clix2 until March 10, 2025, means they should be excluded. *Id.* Finally, Plaintiffs argue that, because they only discovered that A1_M1B-EV Recipe & Target Spec document related to Clix2 during the deposition of a SDC witness on March 12, 2025, it should be excluded. *Id.* Plaintiffs continue that Samsung's failure to identify that these documents relate to Clix2 caused them significant prejudice because they were unable to verify them. *Id.* at 9–10. Specifically, Plaintiffs contend that there is an important, highly relevant authenticity issue because Samsung is using these documents as prior art, Samsung's witness testified that the Clix2 was on sale before the priority date of the asserted patents, but the metadata of the documents themselves post-dates the priority date of the asserted patents. *Id.* at 10.

In response, Samsung argues that it took time to correlate the Clix2 devices sold in the United States during the relevant time with the correct manufacturing and specification documents, explaining its delay. Dkt. No. 292 at 15. Samsung contends that the timing discrepancy Plaintiffs cite as an authenticity issue further complicated their investigation. *Id.* Samsung finally argues that an SDC witness testified that the documents reflect the actual manufacturing process for displays used in the Clix2 prior art product during the relevant time, so it should be able to present the relevant manufacturing and specification documents. *Id.* at 15–16.

Here, the Court has already addressed Samsung's failure to amend its invalidity contentions to identify supplemental evidence and rejected that argument. Plaintiffs' next argument, about Samsung's failure to identify these documents as related to Clix2, is also unpersuasive. Looking at the documents, *see* Dkt. Nos. 251-27, -29, -30, -31, -32, -34, given that most of the text within them is Korean, and they focus on various materials and specifications for OLED displays, it may be difficult to correlate them with Clix2 without context. However, though Plaintiffs' Interrogatory No. 9, *see* Dkt. No. 251-13, sought evidence of and documentation on Samsung's invalidity defenses, Plaintiffs had time to determine what these documents related to when they were produced on December 31. These documents were produced months before fact discovery closed.

Plaintiffs' final argument goes to authentication. To authenticate an item of evidence, Federal Rule of Evidence 901(a) requires that the party seeking its introduction "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 901(b)(1) provides that "testimony that an item is what it is claimed to be" may satisfy this requirement. Fed. R. Evid. 901(b)(1). Even if Plaintiffs had the opportunity to verify and potentially contest the documents, Samsung would still be able to introduce the documents via the testimony of the SDC witness at trial. Plaintiffs' actual complaint here, if they have one, is that they were unable to verify that Clix2 post-dated the priority of the asserted patents. However, as discussed above, Plaintiffs had proper notice of Samsung's Clix2 theories, and had time to verify. Accordingly, Plaintiffs' Motion should be **DENIED** to the extent it seeks to strike the A1_M1B-EV Recipe & Target Spec and other documents SDC produced on December 31, 2024.

iii. Purported Clix2 Purchase by Samsung Counsel and Related Documents, Including Testing of the Device.

Plaintiffs take issue here with Samsung's failure (1) to timely disclose that it purchased a Clix2 device in December of 2024, (2) to timely disclose purchase information, and (3) to provide

Plaintiffs an opportunity to inspect the device. Dkt. No. 251 at 11. Plaintiffs point to three specific documents related to the physical Clix2 device. Dkt. No. 251-6 (receipts, website information, shipping tracking information, and device images), -22 (receipts, websites, email correspondence, and device images), -26 (Eurofins Report). Plaintiffs argue that they did not discover that Samsung purchased a Clix2 device until March 10. *Id.* Plaintiffs also state that Samsung had already sent the device at that time to Eurofins to tear down and inspect it. *Id.* Consequently, Plaintiffs argue they were severely prejudiced for two reasons. *Id.* First, Plaintiffs never got to inspect the Clix2 device. *Id.* Second, Plaintiffs had no chance to depose the original purchaser or Eurofins to explain "discrepancies in the evidence." *Id.* Specifically, to the discrepancies, Plaintiffs point to an email showing a Clix2 device was purchased on October 3, 2007. *Id.* (citing Dkt. No. 251-6). Plaintiffs then point to the inconsistency of the date on the display panel of the Clix2 device that Eurofins inspected—January 9, 2008. *Id.* at 11–12 (citing Dkt. No. 251-22). Plaintiffs argue that this evidence should therefore be excluded. *Id.* at 12–13 (citing *Convolve, Inc. v. Dell, Inc.*, No. 2:08-CV-244, 2011 U.S. Dist. LEXIS 159292, at *8–9 (E.D. Tex. June 29, 2011)).

Samsung first states that the Clix2 device was purchased in "mid-December" and argues that any delay in getting the device was beyond its control. Dkt. No. 292 at 16. Samsung then states that it sent the device to Eurofins to tear down and inspect. *Id.* Samsung argues, essentially, that it did not initially disclose the device because it was awaiting confirmation of relevance: that the device purchased contained the at-issue, original SDC-manufactured display. *Id.* Samsung states that, after that was confirmed, the receipt and initial photos were produced. *Id.* Samsung argues that this disclosure "reflects a reasonable progression of investigation." *Id.* Samsung states that the Eurofins report was disclosed with its expert disclosures on March 24, 2025. *Id.* Samsung argues that its time of disclose was sufficient because, in essence, Plaintiffs did the same with their testing

reports for accused products. Samsung distinguishes from *Convolve*, arguing that the hard drives there were commercially available, and testing there was able to be performed by both parties jointly at the same time. *Id.* at 16–17. Samsung finally offers to allow Plaintiffs to inspect and test the torn-down Clix2 device. *Id.* at 17.

Here, although there was some delay in producing the Clix2 purchase information and device images under Local Patent Rule 3-4, the bigger issue relates to the rules that govern discovery. In analyzing whether Samsung complied with Federal Rule of Civil Procedure 26(a)(1)(A)(ii), it is important to note that fact discovery in this case closed on March 17, 2025, Dkt. No. 40 at 3; Samsung did not disclose anything related to its purchase of a Clix2 device until March 10, 2025, Dkt. No. 251 at 11; despite having purchased the device in "mid-December," Dkt. No. 292 at 16.

Samsung's excuse for not disclosing sooner, that it was waiting to confirm that the device contained the original SDC-manufactured display, is a mitigating consideration. It is true that, at the point of disclosure, Plaintiffs would have had to seek leave and likely amend the operative Docket Control Order, to obtain discovery from Eurofins and the original purchaser. However, even this course is no longer available given the delay in raising this issue. Plaintiffs are thus not blameless because they could have sought such relief instead of waiting and filing this motion to exclude after it was too late. Due to Plaintiffs' failure to seek Court intervention sooner, it is a closer call on whether to exclude such Clix2 evidence. The Court now turns to the exclusion factors under Rule 37.

As to the first factor, the explanation for late disclosure, the Court has already addressed Samsung's explanations for its failure to disclose and found them mitigating.

For the second factor, the Court must consider Samsung's use of the physical device and Eurofins report and how critical that use is to Samsung's overall theories of invalidity. Samsung argues that the Clix2 evidence generally is a "cornerstone" of its invalidity defense. Dkt. No. 292 at 19. It is the only prior-art-based invalidity defense Samsung asserts against two of the five asserted patents: the '223 and '165 Patents; and one of several theories against the '425 Patent.

The Court turns to the specific use of the Clix2 device evidence and the Eurofins report in Samsung's expert's reports and within its exhibits. Nothing from the physical Clix2 device, nor the Eurofins report, made it into Samsung's Trial Exhibit List. Dkt. No. 392-9. However, several Samsung experts relied on Clix2: Dr. Katona, Dr. Kymissis, Dr. Antonaidis, and Dr. Miller. Beginning with Dr. Antonaidis' report, he does not appear to make use of the physical Clix2 device evidence. But Dr. Katona relies on the physical Clix2 device extensively. *See* Dkt. No. 241-2 ¶¶ 192, 196, 200–02, 1274–78, 1281–86, 1289–90, 1294–03, 1307–09, 1313–16, 1319–20, 1334–26, 1329–30. However, if the physical device evidence were excluded, he would still have substantial evidence upon which to make his Clix2 arguments. *See, e.g.*, *id.* ¶¶ 190–94, 1271–1331. Dr. Miller relies on the evidence less. *See* Dkt. No. 249-2 ¶¶ 105–07, 109. But he too has substantial other evidence to rely on in his testimony. *See id.* ¶¶ 113–31. Like Dr. Katona, Dr. Kymissis makes substantial use of the physical Clix2 device evidence. *See, e.g.*, Dkt. No. 243-2 ¶¶ 106, 112 n.42, 114 n.45, 220–23, 278–92, 294–97, 300–09, 313–17, 336–38. There is more reference to physical Clix2 evidence in his report that the Court considered but will not now list. A large portion of his report is dedicated to invalidity using the Clix2 evidence—there are 731 references to it in his report, and there is little outside Clix2 evidence that he relies on. *See id.* Because the exclusion of this evidence will understandably and significantly hinder Samsung's ability to assert its invalidity theories with respect to several of the Asserted Patents, this factor weighs strongly against striking.

The third factor weighs somewhat in favor of striking. The Court has already discussed how Plaintiffs were prejudiced by Samsung's failure to earlier disclose or make the physical Clix2 device available. However, although it may have slightly drawn out the litigation, Plaintiffs also had options for earlier relief that would have been far less prejudicial to Samsung if the physical Clix2 device evidence is as significant as it now contends.

As to the fourth factor, a continuance is not available to reduce prejudice, considering this case is now on the eve of trial. The Court has specially set trial for the week of October 27, 2025. So, this factor weighs against striking.

On balance, the factors weigh against striking under Rule 37. Although Samsung could have disclosed sooner as Plaintiffs argue, the fact that the physical Clix2 device was acquired so late in fact discovery generally, combined with the prejudice to Samsung of excluding the device and Plaintiffs' fault in not asking for less prejudicial relief sooner, outweighs the prejudice to Plaintiffs from use of this physical evidence. The Court finds exclusion of the physical Clix2 evidence is not warranted. Accordingly, Plaintiffs' Motion to Strike is **DENIED** to the extent that it seeks to prohibit Samsung from using evidence related to the physical Clix2 device.

iv. <u>SDC Supplier Documents.</u>

Plaintiffs take issue with three documents they contend "purport" to be from SDC's chemical suppliers that Samsung asserts are simulations related to elements of the '164 Patent. Dkt. No. 521 at 13 (citing Dkt. Nos. 252-17, -18, -19). Plaintiffs state that these documents were created within a few weeks of the end of, and were not produced until the last day of, fact discovery. *Id.* Plaintiffs argue they were prejudiced because they had already deposed all SDC witnesses. *Id.* Moreover, Plaintiffs assert that the documents "appear to have been created for the purposes of litigation," and they never received native files that would show the author.

In response, Samsung argues that the documents were supplied by SDC vendors and identified "as containing information relevant to the materials used in the displays." Dkt. No. 292 at 17. Samsung argues that its own expert can properly rely on these documents, even if they are hearsay. *Id.* at 17. Samsung finally responds that "Plaintiffs' expert Mr. Humphrey relies on the same types of documents." *Id.* at 18 (citing Dkt. No. 292-5 ¶¶ 260, 265).

Here, Plaintiffs appear to be arguing for the exclusion of these documents on the basis that they are hearsay. The documents themselves, presentation slides containing technical data about Clix2, may be hearsay. *See* Fed. R. Evid. 801(c). This objection may be sufficient for not pre-admitting the documents. However, on an exclusionary motion, if the Court strikes such evidence, it will preclude Samsung's expert from relying on such information. And Samsung is correct in arguing that hearsay is not a sufficient reason to do that—experts routinely rely on hearsay in forming their opinions, and it is allowed by the Federal Rules. *See* Fed. R. Evid. 703. Accordingly, Plaintiffs' Motion is **DENIED** to the extent it seeks to strike the three documents from SDC chemical suppliers relating to Clix2 simulations.

v. <u>Internet Archive Documents Produced After Fact Discovery Cut-Off.</u>

Plaintiffs argue that Samsung should be precluded from using documents including archived webpages and higher quality versions of the physical Clix2 device photographs. Dkt. No. 251 at 13 (citing Dkt. No. 251-22). Specifically, Plaintiffs take issue with the fact that these documents were not produced until after the close of fact discovery. *Id.* Plaintiffs argue that these documents were available, and Samsung had no reason to delay in producing them. *Id.* Plaintiffs also argue that this evidence forms the basis of new theories concerning undisclosed Clix2 materials, layers, and structures. *Id.* at 13–14 (citations omitted). Plaintiffs finally argue that Samsung cannot show good cause to now amend. *Id.* at 14 (citation omitted).

In response, Samsung states that many of the website documents were identical to the ones they identified earlier by web address in interrogatory responses. Dkt. No. 292 at 18 (citing Dkt. No. 251-13 at 102–06). Samsung also states that these documents were produced in its expert reports and were otherwise publicly available. *Id.* To the images, Samsung argues that they were just "higher-quality versions" of previous ones disclosed before the end of fact discovery. *Id.* Samsung concludes by arguing that these documents do not constitute new theories. *Id.*

Reviewing the evidence Plaintiffs cite, which overlaps in part with the physical Clix2 device evidence the Court already considered, it contains a receipt, some email correspondence, an eBay listing, other websites, and several images of the Clix2 device. *See* Dkt. Nos. 251-22. Plaintiffs' argument for exclusion seemingly implicates the eBay listing website, other websites, and photographs of the Clix2 device. The Court has already addressed the argument that additional Clix2 evidence forms the basis of a new theory—it does not. Upon review, these documents are no different in that respect from the other evidence the already Court considered, and Plaintiffs have pointed to no evidence and articulated no justification persuading the Court otherwise. Additionally, Samsung produced many of the websites found in these documents via URL in its Fifth Supplemental and Amended Responses to Plaintiffs' First Set of Interrogatories (Nos. 1, 9, 11). *See* Dkt. No. 251-13 at 102–06. Plaintiffs' other arguments likewise do not justify exclusion. Accordingly, the Court should **DENY** Plaintiff's Motion to Strike to the extent it seeks to exclude internet archive documents and higher-resolution images of the physical Clix2 device.

**B. Motion for Summary Judgment on Clix2 Evidence**

In their Motion for Summary Judgment, Plaintiffs seek summary judgment that no reasonable jury could find that the Clix2 device invalidates their '164, '223, and '425 Patents. *See* Dkt. No. 241 at 14–23. The Court addresses each in turn.

i. No Reasonable Jury Could Find that Clix2 Invalidates the '164 Patent.

Claim 1 of the '164 Patent recites:

> [1pre] An electronic device, comprising: [1a] a substrate; [1b] a first electrode; [1c] at least one organic functional layer; and [1d] a second electrode, [1e] wherein the at least one organic functional layer is located between the first electrode and the second electrode, [1f] and wherein the at least one organic functional layer has at least a first matrix material and a second matrix material, and a third matrix material, and [1g] the third matrix material has a Lowest Unoccupied Molecular Orbital (LUMO), which is energetically lower than the LUMO of the second matric material and the LUMO of the first matrix material, and [1h] wherein the second matrix material has a Highest Occupied Molecular Orbital (HOMO), which is energetically higher than the HOMO of the first matrix material and the HOMO of the third matrix material, [1i] wherein the organic functional layer is an emission layer and is doped with at least one emitter material.

Dkt. No. 251 at 16. First, Plaintiffs argue for summary judgment on the 1[g] and 1[h] limitations. *Id.* at 16–18. Specifically, Plaintiffs argue that Dr. Kymissis relies on late-disclosed SDC evidence, Dkt. Nos. 252-17, -18, -19, so if the Court grants its Motion to Strike, Samsung will have no evidence to rely on for these limitations. *Id.* at 16–17. Plaintiffs state that SDC witnesses testified "they did not know the HOMO and LUMO levels" in the Clix2. *Id.* at 16 (citing Dkt. No. 251-16 at 65:5–8). Plaintiffs also point out that "Dr. Kymissis did not provide any testimony in his report as to why a POSITA would modify the Clix2 to meet the" limitations. *Id.* Second, Plaintiffs argue that, because independent Claims 15 and 16 contain similar LUMO/HOMO limitations, summary judgment is proper as to those claims for the same reasons. *Id.*

Third, Plaintiffs argue for summary judgment on the 1[f] and 1[i] limitations. Plaintiffs state that Dr. Kymissis "identifies the [first], [second], and [third] matrix materials as [] EL301, LHT01, and GGH01[,]" respectively, of the Clix2 device. *Id.* at 18 (citing Dkt. 251-20 ¶¶ 529, 531, 533). Plaintiffs point out that, in the Clix2 device, these matrix materials are arranged in different sub-layers ("functional layers") within the larger G' layer, LHT01 away from GGH01, which is in a different sub-layer. *Id.* (citing Dkt. No. 251-20 ¶ 539) (citation omitted). Plaintiffs

essentially argue that their understanding of the claim language limits these three matrix materials to being in the same functional layer. *Id.* Plaintiffs also argue here that "[t]here is no evidence that light is at all emitted in any part of LHT01 or emitter material is dispersed at all in it." *Id.* at 19. Plaintiffs finally argue that there is no explanation for why a "POSITA would have included materials not shown to be involved in light emission as part of the emissions layer." *Id.* at 19. Fourth, Plaintiffs argue for summary judgment as to Claims 15[f] and 16[f] because they contain similar limitations, for the same reasons. *Id.*

In response, Samsung argues that, even if the SDC supplier documents are excluded, because Plaintiffs' expert, Dr. Humphrey, hypothesizes about HUMO/LUMO levels for various materials, Dr. Kymissis could do the same. Dkt. No. 292 at 23–24. Samsung further argues that "Dr. Kymissis will testify how a POSITA would understand these layers or combine them, consistent with his report." Dkt. No. 292 at 24. Samsung also argues that the light-emitting infringement theory was not disclosed before Dr. Humphrey's report, and they have sought to strike it. *Id.* (citing Dkt. No. 239 at 10–11). Plaintiffs also respond that Dr. Kymissis is entitled to respond to that late-disclosed theory, which would create a factual issue. *Id.* (citing *Longhorn HD LLC v. NetScout Sys., Inc.*, No. 2:20-CV-349, 2022 WL 1792904, at *2 (E.D. Tex. Mar. 30, 2022).

Because the Court should deny Plaintiffs' Motion to Strike, Plaintiffs' first argument for summary judgment as to limitations 1[g], 1[h] and Claims 15 and 16 is moot. As to Plaintiffs' argument that Dr. Kymissis did not provide analysis as to how a POSITA would modify Clix2 to meet these limitations, Plaintiffs do not explain in the first place why a POSITA would need to do so to obviate or anticipate these limitations, so this argument fails. As to Plaintiffs' first argument for summary judgment on the 1[f], 1[i], 15[f], and 16[f] limitations, without construing the claim, the claim language does not appear to unequivocally limit the three matrix materials to being in

the same functional layer. Plaintiffs' other arguments are unpersuasive. Because there are genuine issues of material fact as to whether Clix2 anticipates or renders obvious the '164 Patent, it is recommended that the Court **DENY** Plaintiffs' Motion for Summary Judgment as to this ground.

ii. No Reasonable Jury Could Find that Clix2 Invalides the '223 Patent.

Claim 1 of the '223 Patent reads:

> [1pre] An organic electronic component, comprising: [1a] a substrate, [1b] a first electrode, [1c] a second electrode, [1d] an electron-conducting layer which is arranged in such a way that it is electrically conductive connected to at least one of the electrodes, [1e] wherein the electron-conducting layer is obtained by joint vaporization of a metal complex, which comprises a central metal atom, with an organic compound, [1f] wherein the organic compound comprises a heteroaromatic compound which is conjugated with an aromatic compound via a C---C bond.

Dkt. No. 251 at 19. Plaintiffs first argue that Dr. Kymissis concedes that "joint vaporization" is not used to make the Clix2, and Dr. Shanze does not disagree, so limitation 1[e] is unmet. *Id.* at 20 (first citing Dkt. No. 251-20 ¶ 298; and then citing Dkt. No. 251-28 ¶¶ 44–47). Plaintiffs then argue that if the Court excludes evidence that Dr. Kymissis relies on to otherwise meet this limitation, then summary judgment is proper. *Id.* (citing Dkt. Nos. 251-35, -29). Plaintiffs assert a similar argument with respect to the "metal complex" and "organic compound" limitations of 1[e] and Claim 10. *Id.* (citing Dkt. Nos. 251-26, -29, -30, -33).

Samsung responds that Plaintiffs mischaracterize Dr. Kymissis's report. Dkt. No. 292 at 24. Specifically, Samsung contends that the term "joint vaporization" is read broadly by Plaintiffs for infringement purposes to include things that are not traditionally considered joint vaporization. *Id.* at 24–25. So, Samsung continues, although Dr. Kymissis agrees that Clix2 is not fabricated using joint vaporization in the traditional sense, it is fabricated consistent with Plaintiffs' read of that term. *Id.* at 25 (citing *Solas OLED Ltd. v. Samsung Elecs. Co.*, 2:21-CV_105, 2022 WL 1800762, at *1 (E.D. Tex. May 30, 2022) (citing *01 Communique Lab'y, Inc. v. Citrix Sys., Inc.*,

889 F.3d 735, 742 (Fed. Cir. 2018))). Samsung also responds to Plaintiffs' arguments that summary judgment is proper if specific evidence is excluded. *Id.*

Here, Samsung is correct that they are entitled to argue that "if a claim term must be broadly interpreted to read on an accused device, this same broad construction will read on the prior art." *Solas*, 2022 WL 1800762, at *1 (quoting *01 Communique*, 889 F.3d at 742). And this is exactly how Dr. Kymissis explains that Clix2 meets the claim limitation, as Samsung argues. *See* Dkt. No. 251-20 ¶ 298 ("Thus, under Pictiva's view that accused products include . . . 'joint vaporization' the Clix2 would as well."). Dr. Kymissis' analysis is sufficient to create a genuine dispute of material fact as to whether the Clix2 is fabricated using joint vaporization. Plaintiffs' other arguments are moot as the Court is not excluding the subject evidence. Consequently, it is recommended that the Court **DENY** Plaintiffs' Motion for Summary Judgment as to this ground.

iii. No Reasonable Jury Could Find that Clix2 Invalides the '425 Patent.

Plaintiffs argue, as to Claims 2, 17, and 4 of the '425 Patent, that Dr. Katona relies on evidence subject to its Motion to Stike; and, if the Court does strike such evidence, then summary judgment is proper. Dkt. No. 251 at 22–23. The Court denies Plaintiffs' Motion to Strike, so it is recommended that the Court **DENY** Plaintiffs' Motion for Summary Judgment as to this ground.

## III. CONCLUSION

Accordingly, for the reasons and to the extent provided above, the Court finds that Plaintiffs' Motion should be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report **by not later than October 23, 2025** bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal

conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 19th day of October, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE