# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | §§§§§§§§§§§§§§§ CASE NO. 2:23-CV-00495-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike Certain Opinions of Samsung's Expert Seth Miller, Ph.D., filed by Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited. **Dkt. No. 249**. In the Motion, Plaintiffs move to strike certain portions of Dr. Miller's opening and rebuttal reports. *Id*. at 1. Having considered the Motion and its related briefing, and for the reasons set forth below, the Motion is denied.

**I.     LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained, "Vigorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "even if testimony is reliable, it may still be excluded if it relies on information that violates the rules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.   ANALYSIS

Plaintiffs move to exclude certain portions of Dr. Miller's opinions on six distinct grounds. The Court addresses each in turn.

### (a) References to *inter partes* review proceedings

First, Plaintiffs move to exclude paragraphs 84 and 88 of Dr. Miller's Opening Report on the grounds that these paragraphs improperly reference the IPR of the asserted patents. (Dkt. No. 249 at 1; Dkt. No. 313 at 1.)  Plaintiffs insist that the IPR references plainly violate the Court's Standing MIL Nos. 6 and 13. (Dkt. No. 249 at 1.)

Exclusion is not warranted on this basis.  Plaintiffs' arguments have no bearing on whether Dr. Miller's opinions are sufficiently reliable.  Rather, these arguments "are more properly the subject of a motion *in limine*." *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-cv-00366, 2019 WL 6896648, at *4 (E.D. Tex. Dec. 18, 2019).  Accordingly, the Court finds that this portion of the Motion should be **DENIED**.  However, Plaintiffs will be required to conform to the standing MILs.

### (b) Clix2 theories

Second, Plaintiffs move to exclude paragraphs 113 through 31 of Dr. Miller's Opening Report on the grounds that these paragraphs "rely on new invalidity theories" regarding the Clix2. (Dkt. No. 249 at 1.)  Plaintiffs cite Samsung's invalidity contentions as support, noting that the

3

contentions provide only that Clix2 *generally* meets each claim limitation of U.S. Patent No. 8,558,223 (the "'223 Patent"). (*Id.* at 1–2.) According to Plaintiffs, Dr. Miller exceeds the scope of the contentions by opining that ***specific*** features of Clix2 meet specific claim limitations of the '223 Patent. (*Id.*; *see also* Dkt. No. 313 at 1.)

The Court disagrees. Plaintiffs have not identified any inconsistency or undisclosed different theories between Dr. Miller's opinions and Samsung's invalidity contentions. (Dkt. No. 249 at 1.) Instead, Plaintiffs concede that both provide that Clix2 meets certain claim limitations of the '223 Patent. (*Id.*) Moreover, Plaintiffs rely on inapposite caselaw. For example, in *Firtiva Corporation v. Funimation Global Group, LLC*, the defendant "failed to identify the [cited prior art reference] in its contentions." No. 2:21-cv-00111-JRG-RSP, 2022 WL 1792785, at *2 (E.D. Tex. Jun. 1, 2022). Here, by contrast, Samsung timely disclosed Clix2 in its contentions. (*See* Dkt. No. 249 at 1 ("On June 11, 2024, Samsung served its corrected initial invalidity contentions . . . which included charts for the 'iRiver Clix2' product").) Accordingly, the Court finds that this portion of the Motion is **DENIED**.

**(c) Untimely documents**

Third, Plaintiffs move to strike paragraphs 105 through 107, and 109, of Dr. Miller's Opening Report on the grounds that it relies on documents that Plaintiffs insist were never identified or produced under P.R. 3-3 and 3-4 (Clix2 and Non-Party Samsung Display Co., Ltd. documents). (Dkt. No. 249 at 2.) The Court notes that these arguments are practically identical to those Plaintiffs made in their Motion to Strike Untimely Clix2 Evidence and Motion for Summary Judgment Regarding Clix2 Invalidity Grounds (the "Clix2 Motion"). (Dkt. No. 251 at 9–10; *see also* Dkt. No. 313 at 1.) Accordingly, and for the same reasons the Court denied Plaintiffs'

4

arguments in the Clix2 Motion (Dkt. No. 251), the Court finds that this portion of the Motion is also **DENIED**.

### (d) Hearsay Conversations

Plaintiffs next move to strike paragraph 104 of Dr. Miller's Opening Report on the grounds that it relies on hearsay conversations that conflict with his sworn deposition testimony. (Dkt. No. 249 at 4; Dkt. No. 313 at 1.)

Again, the Court disagrees. As an initial matter, the fact that an expert relies on hearsay is not necessarily grounds for exclusion. Instead, this reliance is permissible under Rule 703. *See* Fed. R. Evid. 703. Moreover, Samsung overstates the "direct conflicts" between Dr. Miller's report and his sworn deposition testimony. (Dkt. No. 249 at 4.) In any event, these purported conflicts go to the weight of Dr. Miller's testimony, not their admissibility. Plaintiffs have not pointed to any caselaw suggesting otherwise. Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### (e) Claim construction opinions

Plaintiffs then argue that the Court should exclude Dr. Miller's improper claim construction opinions regarding two claim terms: (1) "coordination" and (2) "a chain like structure" / "network-like structure." (Dkt. No. 249 at 5–6.) The Court addresses each in turn.

#### (1) "coordination"

Plaintiffs first move to strike paragraphs 75 - 76 and 78 - 86 of Dr. Miller's Opening and Rebuttal Reports, respectively, on the grounds that these paragraphs "inject unwarranted limitations" into the term "coordination" as recited by claims 2 and 11 of the '223 Patent. (Dkt. No. 249 at 5–6.) Plaintiffs advance three arguments in support of their position. (*Id.*) Specifically, Plaintiffs assert that Dr. Miller improperly opines that: (1) "coordination" must occur "in the gas

5

phase to satisfy claim 2;" (2) coordination requires dative bonds; and (3) lithium-π interactions are non-coordinative. (*Id*. at 5–6; Dkt. No. 313 at 2.)

In response, Samsung argues that "Plaintiffs misread both Dr. Miller's report and the patent." (Dkt. No. 281 at 6.) Samsung notes that Dr. Miller opines that coordination must occur "in the gas phase" for at least claim 11 of the '223 Patent, not claim 2. (*Id*.) Samsung further argues that Dr. Miller applied Samsung's proposed construction of "coordinate" to opine on the "types of chemical interactions that would or would not constitute 'coordination' in the context of the '223 Patent." (*Id*. at 7.)

The Court agrees with Samsung. Regarding Plaintiffs' first argument, the Court is not persuaded that Dr. Miller requires "coordination" to occur in the gas phase to satisfy claim 2. Instead, and after noting that claim 11 requires "the organic compound [to] coordinate in the gas phase," Dr. Miller opines that "the '223 patent assumes that . . . coordination . . . *can* occur in the gas phase." (Dkt. No. 249-2 ¶ 75 (emphasis added).) This permissive interpretation of the patent is not required, let alone for claim 2. Plaintiffs first argument therefore fails.

Plaintiffs' second argument also fails. The Court has adopted Samsung's proposed construction for "coordinates" ("form[s] a chemical bond between two atoms in which a shared pair has been supplied by one of the two atoms"). (Dkt. No. 397 at 29–30.) In doing so, the Court noted that a "dative bond" is a "chemical bond in which two electrons are donated by one of the atoms." (*Id*. at 29.) Consistent with this, Dr. Miller opines that "organic molecule[s] must possess suitable functional groups that can donate electron pairs to form dative bonds." (Dkt. No. 349-2 ¶ 76.) The Court cannot say that Dr. Miller improperly injects additional limitations.

Similarly, the Court finds that Plaintiffs' third argument—that Dr. Miller improperly limits "coordinates" to exclude lithium-π interactions—is moot in view of the Court's Claim

6

Construction Order (Dkt. No. 397).  (Dkt. No. 249 at 6.)  Indeed, the Court has construed "coordinates" to require a "chemical bond." (Dkt. No. 397 at 30.)  Thus, Dr. Miller's report has not contradicted the Court's construction by opining that "coordination" cannot include electrostatic interactions because those interactions are not chemical bonds.  (*See* Dkt. No. 249-11 ¶ 78.)  Accordingly, the Court finds that this portion of the Motion is **DENIED**.

### (2) <u>"a chain like structure" / "network-like structure"</u>

Plaintiffs also take aim at Dr. Miller's opinions that "a chain like structure" and "a network-like structure," as recited by claims 8 and 12 of the '223 Patent, "require the . . . organic molecules to act as spokes between [metal complex] hubs," arguing that this requirement is nowhere in the parties' proposed constructions.  (Dkt. No. 249 at 6–7.)  Plaintiffs assert that this new "spoke-hub definition . . . [requires] far more than two organic compounds [to be] connected to a metal center." (*Id*. at 7.)  Plaintiffs further contend that this construction is waived as it was not raised during *Markman* proceedings.  (*Id*.)

Samsung responds that Plaintiffs "confuse expert explanation with claim construction." (Dkt. No. 281 at 8.)  Specifically, Samsung asserts that the "spoke-hub" language is merely "an *analogy or description* used to explain the structural implications of Plaintiff's infringement theory," not a new construction.  *Id*. (emphasis in original).

The Court agrees with Samsung.  The Court has construed "a chain like structure" to mean "a structure in which at least parts of organic compounds bridge exactly two metal complexes together." (Dkt. No. 397 at 31.)  The Court also construed "a network like structure" as "a structure in which at least parts of organic compounds bridge more than two metal complexes together." (*Id*.)  Dr. Miller's opinions, which are merely analogies ("require the . . . organic molecules to act ***as*** spokes"), are not inconsistent with the Court's construction and may assist the trier of fact in

7

understanding the claim language. (Dkt. No. 249-12 at 72 (emphasis added).) Thus, the Court finds that this portion of the Motion is **DENIED**.

### (f) "Goose-Gander" reasoning

Finally, Plaintiffs move to exclude paragraphs 114 - 116, 118, 121, and 125 - 31, of Dr. Miller's Opening Report on the grounds that these opinions utilize "Improper Goose-Gander Reasoning." (Dkt. No. 249 at 7.) Specifically, Plaintiffs challenge Dr. Miller's opinion that the asserted claims are invalid over Clix2 under the logic of Plaintiffs' experts, Dr. Schanze and Dr. Batich, asserting that Dr. Miller may not rely upon their analyses as he considers it to be incorrect methodology. (*Id*. at 7–8.) Plaintiffs further assert that Dr. Miller's "if infringed, then invalid" reasoning utilizes the wrong burden of proof for invalidity. (*Id*. at 8.)

Samsung responds that Plaintiff's argument "is fundamentally flawed." (Dkt. No. 281 at 9.) Samsung maintains that nothing precludes Dr. Miller from arguing that if a claim term is broadly interpreted for infringement, then that construction also reads upon the prior art for invalidity. (*Id*. at 10.) Samsung further asserts that Dr. Miller applied the correct burden of proof for his invalidity read, noting that he explicitly states that invalidity "must be shown by clear and convincing evidence." (*Id*. at 12 (citing Dkt. No. 249-2 ¶¶ 30, 46).)

The Court agrees with Samsung. As an initial matter, the Court finds that Dr. Miller applies the correct burden of proof to invalidity. Indeed, and as noted by Samsung, Dr. Miller explains that that he has "written this report with the understanding that obviousness [and anticipation] must be shown by clear and convincing evidence." (Dkt. No. 249-2 ¶¶ 30, 46.) Moreover, Samsung is not precluded "from arguing that if a claim term must be broadly interpreted to read on an accused device, then this same broad construction will read on the prior art." *See 01 Comminique Lab., Inc. v. Citrix Sys., Inc.*, 889 F.3d 725 (Fed. Cir. 2018); *Network-1 Tech., Inc. v. Hewlett-Packard*

*Co.*, 2021 WL 1941693, at *7 (E.D. Tex. May 7, 2021).  Indeed, patentees have routinely been warned to "beware of what [it] asks for."  *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1380 (Fed. Cir. 2007) ("The irony of this situation is that Liebel successfully pressed to have its claims include a jacketless system, but, having won that battle, it then had to show that such a claim was fully enabled, a challenge it could not meet").  Plaintiffs have not persuaded the Court otherwise.  Consequently, the Court finds that this portion of the Motion is also **DENIED**.

### III.   CONCLUSION

Accordingly, for the reasons and to the extent provided above, the Court finds that the Motion should be and hereby is **DENIED**.

**SIGNED this 20th day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE