IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED,<br><br>*Plaintiffs*,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC.,<br><br>*Defendants*. | CASE NO. 2:23-CV-00495-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Limited's Motion to Strike the Expert Report of Dr. Homer Antoniadis. **Dkt. No. 247**. The Motion is fully briefed. *See* Dkt. Nos. 291, 319-1, 352. In the Motion, Plaintiffs argue, *inter alia*, that the Court should exclude the opinions of Samsung's technical expert, Dr. Antoniadis, a former OSRAM employee, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) and its progeny. The Motion is **DENIED** for the following reasons.

### I.   LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert*, 509 U.S. at 592–93 (1993). Trial courts are given broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert's testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *See United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury to consider. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249–50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting an Advisory Committee Note to Fed. R. Evid. 702)). As the Supreme Court explained, "[v]igorous cross-examination, presentation of contrary evidence, and careful

instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the rules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.     ANALYSIS

Plaintiffs argue for wholesale exclusion of Dr. Antoniadis' Report, and, separately, for exclusion of the fact that Dr. Antoniadis was formerly employed at OSRAM. *See* Dkt. No. 247 (citing Dkt. No. 247-7 [hereinafter *Antoniadis Rep.*]). The Court addresses each in turn.

### A. Dr. Antoniadis's Report Does Not Provide Expert Testimony That Would Assist the Jury in Understanding the Issues in This Case

Plaintiffs point to several portions of Dr. Antoniadis's report: "Factors to SDC's Mass Production of OLED Displays," *id.* at 5–6 (citing *Antoniadis Rep.* ¶¶ 17–30), "Device Lifetime & Reliability: Manufacturing Generally," *id.* at 6 (citing *Antoniadis Rep.* ¶¶ 33–35), "Device Lifetime & Reliability: Thin Film Encapsulation Manufacturing," *id.* at 7 (citing *Antoniadis Rep.* ¶¶ 38–39, 42, 48, 50–51), "Power Consumption (Efficiency)," *id.* at 7–8 (citing *Antoniadis Rep.* ¶¶ 52–59), and "Color Gamut," *id.* at 8 (citing *Antoniadis Rep.* ¶¶ 60–65). Plaintiffs first argue that these portions mostly utilize SDC documents that were produced during the last two weeks of discovery. *Id.* at 2, 5. They next argue that Dr. Antoniadis "is simply passing along information provided by others and laying out the defendant's theory of the case." *Id.* at 5, 8–9 (quoting *Robroy Indus.-Tex., LLC v. Thomas & Betts Corp.*, No. 2:15-CV-512, 2017 WL 1319553, at *3 (E.D. Tex. Apr. 10, 2017) (Bryson, J.)) (first citing *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005); and then citing *United Servs. Auto. Ass'n v. Wells Fargo Bank, N.A.*, No. 2:18-CV-366, 2019 WL 6896674, at *2 (E.D. Tex. Dec. 18, 2019)). Specifically, Plaintiffs

3

complain that he is just a "mouthpiece" relaying information about "SDC's history of innovations and technologies that contribute to the value, success, and performance of SDC's displays," for which Samsung has two other fact witnesses, and which is not related to any issue in the case. *Id.* at 9–10; Dkt. No. 319-1 at 2–3. To bolster that argument, Plaintiffs states that his report does not respond to Plaintiffs' opening reports or support Samsung's damages model and is not relied on by Samsung's damages or other expert reports. *Id.* at 9.

Plaintiffs' arguments primarily focus on the first requirement of Rule 702, that "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see* Dkt. No. 247 at 4, 8–9; Dkt. No. 319-1 at 1. But Plaintiffs' cited cases on this requirement are plainly and materially distinguishable from the present case. For example, in *Robroy*, the statements upon which Plaintiffs rely—that "denominating a witness as an expert does not give that witness leave to simply read materials as exhibits and depositions in the case and then testify as to their contents," and that portions of defendant's causation expert's opinions that were "tendentious" and "simply passing along information provided by others and laying out the defendant's theory of the case" should be excluded—were predicated on the facts of that case. *See* 2017 WL 1319553, at *8–10. Namely, three facts: (1) the expert was an economist with no experience in the industry at issue, (2) her report cursorily concluded that plaintiff's evidence failed to prove an essential element, citing to a spreadsheet that amounted to attorney argument, when she lacked the experience to opine on that, and (3) the issue—whether "false advertising caused the" plaintiff to lose sales— was not a complex one that would benefit from specialized expertise to assist the jury. *See id.* at *8–9. Similarly, in *United Services Automobile Association*, this Court selectively excluded

4

paragraphs of that expert's report, explaining that the expert's recitation of the general history of the "check industry" was not "beyond a lay person's understanding."

Here, however, as Samsung argues in its response, "Plaintiffs do not dispute that Dr. Antoniadis is a qualified expert in OLED manufacturing with more than [fifteen] years of experience." *Id.* at 3. The "Basis for Opinion" portion of his report details that experience. *See Antoniadis Rep.* ¶¶ 3–12. Plaintiffs' claim also necessarily involves a complex technological space—semiconductor design and fabrication in the context of OLED displays, and the history and background thereof as it relates to the patents-in-suit—where a technical expert may "help the trier of fact to understand the evidence." *See* Fed. R. Evid. 702(a). In this context, where Plaintiffs do not dispute that Dr. Antoniadis is qualified, and his expertise could help the jury, it is much more difficult for Plaintiffs to contend that he is merely a "mouthpiece." *See* Dkt. No. 247 at 9. The Court has reviewed all the portions of Dr. Antoniadis's report cited as exemplary of the problems of which Plaintiffs complain, and found that he does not just recite information found in the documents to which he cites, but analyzes and explains, using his technical knowledge and expertise, issues relevant to the technology at issue and the patents-in-suit. *See Antoniadis Rep.* ¶¶ 17–65. Plaintiffs' other arguments are likewise unpersuasive. Accordingly, the Court finds that Plaintiffs' Motion to Strike Dr. Antoniadis's testimony in its entirety is **DENIED**.

### B. Dr. Antoniadis Should Be Precluded from Testifying That He Is a Former OSRAM Employee or Testifying to Any Personal Knowledge

Plaintiffs next argue that Dr. Antionidis's former employment at OSRAM should be excluded because Plaintiffs purchased the patents-in-suit from OSRAM. Dkt. No. 247 at 10. Specifically, Plaintiffs contend they would be highly prejudiced by this fact because, to the jury, it would appear as though Dr. Antoniadis is speaking on behalf of OSRAM. *Id.* Plaintiffs also argue he should be precluded from testifying to this fact because "Samsung refused to make [him]

available for deposition as a fact witness, which would have addressed any relevant aspect of his work at OSRAM." *Id.* (citing Fed. R. Civ. P. 37(c)(1)).

In response, Samsung first disputes that Dr. Antionidis's employment as OSRAM would be highly prejudicial to Plaintiffs under these circumstances. Dkt. No. 291 at 13–14 (citing *Den Norske Bank AS v. First Nat'l Bank of Bos.*, 75 F.3d 49, 58 (1st Cir. 1996)). To this point, Samsung also argues that (1) he "left OSRAM in 2005 and has worked at several companies since then," so he does not appear to be speaking on behalf of OSRAM, and (2) Plaintiffs designated deposition testimony from Dr. Dieter Boss, a current OSRAM employee. *Id.* at 14–15. Samsung then responds that this fact is tied to his ability to testify that he has "more than [fifteen] years [of experience] working in display technology, with significant focus on OLED development and manufacturing." *Id.* at 14. Finally, Samsung argues that, at his deposition, Plaintiffs could have asked Dr. Antoniadis about his work at OSRAM as part of the basis for his expert report and still have opportunity to explore this fact in cross. *Id.* at 14–15 (citing *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, No. 2:08-CV_16, 2013 WL 1655677, at *3 (E.D. Tex. Apr. 16, 2013)).

The Court agrees with Samsung that it would not appear to the jury as though Dr. Antoniadis is speaking on behalf of OSRAM, when his employment at OSRAM ended twenty years ago, especially considering Plaintiffs' plan to use deposition testimony from another, current OSRAM employee. Plaintiff's other argument going to exclusion under Rule 37 is unsubstantiated. Accordingly, Plaintiffs' Motion, to the extent it seeks to exclude Dr. Antoniadis's former employment at OSRAM, is also **DENIED**.

Accordingly, for the reasons provided above, the Plaintiffs' Motion is **DENIED**.

**SIGNED this 20th day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

6