# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| PICTIVA DISPLAYS INTERNATIONAL LTD. *and* KEY PATENT INNOVATIONS LIMITED, | § § § § | |
| *Plaintiffs*, | § § § | |
| v. | § § | CASE NO. 2:23-CV-00495-JRG-RSP |
| SAMSUNG ELECTRONICS CO., LTD. *and* SAMSUNG ELECTRONICS AMERICA, INC., | § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM ORDER

Before the Court is the Motion to Strike Certain Portions of the Expert Report of M. Ray Perryman, Ph.D. (the "Motion") filed by Plaintiffs Pictiva Displays International Ltd. and Key Patent Innovations Ltd. (Dkt. No. 244) (collectively "Pictiva"). In the Motion, Pictiva moves to strike certain portions of Dr. Perryman's report. (*Id*. at 1). Having considered the Motion and its related briefing, and for the reasons stated herein, the Court finds that it should be **GRANTED** only **IN PART**.

**I.    LEGAL STANDARD**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied regarding a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'The trial court's role as gatekeeper [under *Daubert*] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a

2

trial court must take care not to transform a *Daubert* hearing into a trial on the merits" (quoting Fed. R. Evid. 702 advisory committee note)). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II. ANALYSIS

Pictiva argues that the Court should exclude Dr. Perryman's opinions for multiple reasons. The Court addresses each in turn.

### (a) Opinions Regarding the Orthogonal Agreement

Pictiva first argues that the Court should exclude Dr. Perryman's opinions pertaining to a certain "Orthogonal Agreement." (Dkt. No. 244, at 1). First, Pictiva argues that such opinions should be excluded because the Orthogonal Agreement was not timely disclosed. (*Id.*). But in the same breath, Pictiva admits that the Agreement was "produce[d] . . . on the last day of fact discovery." (*Id.*). Absent evidence of unnecessary delay, that fact alone is not untimely disclosure.

Arguing in the alternative, Pictiva also urges that Dr. Perryman's reliance on the Orthogonal Agreement should be excluded for three substantive reasons.[1] (*Id.* at 2). First,

---

[1] Pictiva also argued that Dr. Perryman's Agreement-related testimony should be excluded because he "does not calculate a damages figure from" it. (Dkt. No. 244, at 4). But after Samsung pointed to an instance of using the "most informative" license to calculate a damages figure even after identifying multiple comparable licenses (Dkt. No. 282, at 5 (citing *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, 2016 WL 7670833, at *2

3

Pictiva asserts that it was improper for Dr. Perryman to analyze the Agreement under *Georgia-Pacific* Factor 2, which considers "[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit." (*Id.*; *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)). Second, Pictiva maintains that reliance on a lump-sum agreement in deriving a royalty rate "is improper where the 'lump-sum licenses provide no basis for comparison with [the defendant's] infringing sales.'" (*Id.* (alteration in original) (quoting *Wordtech Sys. Inc. v. Integrated Networks Sols., Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010))). And third, Pictiva complains that Dr. Perryman fails to account for the technological and economic differences between the Orthogonal Agreement and the facts of this case. (*Id.* at 3).

Samsung responds in kind. First, it argues that consideration of the Orthogonal Agreement under Factor 2 is permissible because "SDC is a subsidiary of Samsung," SDC "supplies the accused OLED displays," "most of Pictiva's licensing efforts and negotiations were with SDC," "SDC is indemnifying Samsung in this litigation," and most "notably, Plaintiffs' own damages expert analyzed multiple SDC licenses, including the Orthogonal [A]greement, as part of his Factor 2 analysis." (Dkt. No. 282, at 3). Next, Samsung asserts that *Wordtech* is inapposite because it involved the presentation of licenses without accompanying expert testimony. (*Id.* at 3-4). And last, Samsung points to Dr. Perryman's comparison of the "differences in the 'economic circumstances of the contracting parties,'" arguing that Pictiva's complaints therewith go to weight, not admissibility. (*Id.* at 4-5 (quoting *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1211 (Fed. Cir. 2010)).

---

(E.D. Tex. Sept. 21, 2016))), Pictiva appeared to abandon this argument by failing to address it in its reply brief (*see generally* Dkt. No. 317).

The Court agrees with Defendants on this issue. On the first point, neither party cites to a case addressing the analysis of licenses undertaken by a supplier/subsidiary/indemnifier. However, Pictiva's own expert relies on the Orthogonal Agreement in his Factor 2 analysis, so it cannot rightly object to Dr. Perryman's same move. Second, the Court agrees with *Samsung*'s characterization of the *Wordtech* decision. While it does stand for the proposition that some logical link must exist between the identified license and the hypothetical negotiation, Dr. Perryman's analysis provides the link that was missing in *Wordtech*. Last, the Court agrees that the parties' dispute about the sufficiency of Dr. Perryman's comparison goes to weight and not to admissibility. Pictiva may take issue with his analysis, but it may make that point on cross-examination.

### (b)  Opinions Regarding the LGD License

Next, Pictiva asks the Court to strike Dr. Perryman's opinions regarding an "LGD License." (Dkt. No. 244, at 5). Here, the parties' disagreements largely fall into two categories: (1) whether the LGD License (which was paid as a lump sum) can be used to support Dr. Perryman's reasonable royalty opinion and (2) whether Dr. Perryman's "patent citation analysis" was applied reliably. (*Id.* at 5-8; Dkt. No. 282, at 5-9).[2]

On the first point, Pictiva argues that the LGD License cannot be used to set a reasonable royalty rate because "the lump sum license provides no indication of how it was calculated." (Dkt. No. 244, at 5). Pictiva admits that there is evidence concerning how the

---

[2] Pictiva also asserts—without substantial elaboration—that Dr. Perryman improperly asserts that the LGD License "places a cap" on damages. (Dkt. No. 244, at 8). Samsung responds that Dr. Perryman "simply points out information the parties would have had at the hypothetical negotiation" which is "not an opinion about a per se, legal cap on damages." (Dkt. No. 282, at 9). Pictiva does not respond to this point in its reply brief, but the Court agrees that Dr. Perryman's characterization of these circumstances does not purport to place a legal cap on Pictiva's damages.

5

license's initial offer was calculated, but it maintains that there is no evidence to support Dr. Perryman's characterization of the final payment. (Dkt. No. 317, at 2). Dr. Perryman describes the LGD License as being "based on a percentage of LGD's worldwide sales," (Dkt. No. 342, at 2), but Pictiva paints this as contrary to the "uncontroverted evidence in the record that the LGD License was not calculated based on LGD sales." (Dkt. No. 244, at 5 (emphasis omitted)). Not only so, Pictiva takes issue with the purported fact that "Dr. Perryman ignores that not all of LGD's revenue falls within the scope of the LGD License," providing another reason to exclude this testimony. (Dkt. No. 244, at 6).

Samsung disagrees with Pictiva's characterizations all the way down. (Dkt. No. 282, at 6). First, it points out that Dr. Perryman uses the LGD License to calculate a lump sum, not a running royalty. And even then, Samsung provides several citations to evidence supporting Dr. Perryman's position that the parties to the LGD License did base their negotiation on LGD's revenues. (*Id.* at 6-7). Samsung also points out that "the LGD license is undisputedly a worldwide license covering LGD's worldwide revenues" in response to Pictiva's last point (*id.* at 7), a point to which Pictiva does not return in its reply brief (*see generally* Dkt. No. 317).

The Court agrees with Samsung that Dr. Perryman's testimony should not be excluded on this basis. While Samsung does seem to concede that only the initial offer was based on LGD revenue, Pictiva does not bring any caselaw demonstrating that this is insufficient. Instead, Pictiva points only to the *Wordtech* decision, which, as discussed above, is inapposite because it turned mostly on the lack of expert testimony to connect purportedly comparable licenses and the hypothetical negotiation. Pictiva can certainly cross-examine Dr. Perryman

6

about whether the end-result LGD License is sufficiently comparable for use here, but it has not shown that his reliance thereon is unreliable as a matter of law.

On the second point, Pictiva takes issue with Dr. Perryman's patent citation analysis as not "tether[ed] to the facts of this case." (Dkt. No. 244, at 6–8). In response, Samsung points to this Court's decision in *United Services Automobile Ass'n v. PNC Bank N.A.*, 2022 WL 1215242, at *5 (Apr. 24, 2022), which involved a patent citation analysis. In that case, the Court concluded that the expert's report was "sufficiently tied to the facts of the case" because it involved "a portfolio license and each of the Asserted Patents was part of the agreement." *Id.* The same is true here: Dr. Perryman explicitly notes (among the many comparisons and contrasts that he identifies) that the patents-in-suit were among the 373 U.S. Patents licensed in the LGD agreement. (Dkt. No. 244-3, at 60). Pictiva fails to distinguish the *USAA* opinion, and the Court adopts its same reasoning and declines to exclude Dr. Perryman's opinions on this basis.

    **(c)**    **Investor Projections**

Third, Pictiva critiques Dr. Perryman's use of "investor projections." (Dkt. No. 244, at 8–10). Pictiva argues that Dr. Perryman should not be allowed to rely on "a presentation that a 'consulting company' named 'JASPER IP' prepared for Centerbridge when it was considering whether to invest in Pictiva and Pictiva's potential partnership with OSRAM.'" (*Id.* at 8). Pictiva levies several objections to such use, but the most important is that Dr. Perryman does not "provide any explanation (or evidence) to explain why OSRAM or Samsung (the parties to the hypothetical negotiation) would rely on revenue projections created by a third party for an investor when attempting to come to a royalty rate." (*Id.* at 9).

7

Indeed, it points out that "Samsung cites no authority to support the idea that using royalty projections for a non-party (i.e., SDC), prepared by a third party (JASPAR) for someone other than the hypothetical licensee (i.e., Centerbridge) is a reliable method for calculating damages." (Dkt. No. 317, at 3).

Samsung attempts to rehabilitate the Investor Expectations by saying that it is relevant to Dr. Perryman's Factor 15 analysis. (Dkt. No. 282, at 10). Samsung asserts that Plaintiff's expert, Dr. Kennedy, "opined that there would be no difference if OSRAM or Plaintiffs were the party at the hypothetical negotiation" (Dkt. No. 342, at 3), but that is not exactly what Mr. Kennedy opines. Rather, he opines that "both OSRAM and Pictiva had significant negotiation experience" and "would have had similar negotiating leverage in a Hypothetical Negotiation with Samsung." (Dkt. No. 282-5, at 170). So even if Samsung is correct that Dr. Perryman's analysis of the Investor Expectations goes to Factor 15, Dr. Kennedy does not opine—and Samsung therefore provides no evidence to support—that OSRAM and Pictiva would have had the same expectations. Accordingly, the Court agrees with Pictiva that this portion (¶¶ 98- 100, 142-150, 332-338, 343, 358) of Dr. Perryman's report, and any other reliance on that evidence, is hereby **STRICKEN**.

    **(d)**     **Real Estate Appraisal Comparison**

Next, Pictiva briefly argues that Dr. Perryman should not be allowed to "inform the jury that patent damages should be determined via real estate appraisal techniques," criticizing Dr. Perryman's use of a "real estate hornbook titled 'The Appraisal of Real Estate.'" (Dkt. No. 244, at 10).

8

Samsung rejoins that Dr. Perryman does not attempt to "supersede[]" the reasonable royalty analysis with "real estate appraisal theory." (Dkt. No. 282, at 10–11). Rather, Samsung argues that "Dr. Perryman simply presents a typical real estate analogy to help introduce and explain the market approach to valuation." (*Id.*).

The Court agrees with Samsung. There is nothing in Dr. Perryman's report that indicates a desire to supersede patent-damages law. Rather, he simply attempts to make his opinions understandable in a typical and reasonable way. Pictiva's objections are overruled on this point.

### (e) Comparisons With Non-Comparable Licenses

Fifth, Pictiva complains of Dr. Perryman's comparisons between the hypothetical negotiation and four admittedly non-comparable licenses. Pictiva points out that it "is black-letter law that non-comparable agreements are 'unreliable under [Rule] 702.'" (Dkt. No. 244, at 11) (alteration in original) (quoting *LaserDynamics, Inc. v. Quanta Comput., Inc.*, 694 F.3d 51, 79 (Fed. Cir. 2012)). Samsung concedes that "Dr. Perryman does not intend to testify about these other licenses that he concluded were not comparable, unless needed to confirm the thoroughness of his analysis in response to cross." (Dkt. No. 282, at 11). The Court accepts this concession. Dr. Perryman may testify that he analyzed the non-comparable licenses and that he found them non-comparable if necessary on cross-examination, but he may not compare the terms of those licenses as set out in Exhibit 7 of his report.

### (f) Purported NIA Damages Cap

Sixth, the parties disagree about whether Dr. Perryman may testify that Samsung would be unwilling to pay more than the cost to implement non-infringing alternatives. In

the *USAA* case discussed above, the Court considered and rejected a similar argument: "that reasonable royalty damages may exceed the amount that the infringer could have paid to avoid infringement . . . does not preclude [an expert] from opining that during the hypothetical negotiation [the licensee] would be unwilling to pay more than" that cost. *USAA*, 2022 WL 1215242, at *2. The Court adopts the same reasoning here and will permit Dr. Perryman's NIA-related testimony.

    **(g)    OSRAM/SDC Citation Analysis**

Seventh, Pictiva objects to Dr. Perryman's "forward citation analysis" that compared "some of SDC's OLED patents" against "the OSRAM OLED portfolio." (Dkt. No. 244, at 12). Pictiva rests this argument primarily on the grounds that (1) Dr. Perryman does not show that "any of the SDC patents included in his analysis are practiced by the Accused Products" and (2) that "Pictiva only owns a portion of the OSRAM patent portfolio . . . so the citation analysis of the entirety of OSRAM's patent portfolio is irrelevant." (*Id.*). On this point, Pictiva identifies that of the 100 OSRAM patent families analyzed, "only one . . . contains one asserted patent . . . and 99 . . . do not contain any asserted patent and thus are irrelevant."

Samsung counters the first point by arguing that the 100 OSRAM Patent Families analyzed are "those with the highest forward citation scores, meaning [Dr. Perryman] gave the OSRAM portfolio, which includes the patents-in-suit, its maximum possible value." (Dkt. No. 342, at 4). Samsung also identifies that Dr. Perryman links the SDC patents to the relevant technology by citing the SDC website and its description of which patents practice it. (Dkt. No. 282, at 12).

The Court cannot conclude that Dr. Perryman's analysis here must be excluded as a matter of law.  From the OSRAM perspective, while it is true that Dr. Perryman's analysis does not capture well the Asserted Patents, he should not be penalized for making the seemingly more conservative estimate.  Too, he does put forward evidence linking the SDC patents to the OLED technology.  It is not strong evidence, but relevancy is a low bar, and Pictiva is welcome to cross examine Dr. Perryman on the basis of the opinion at issue here.

**(h)     SSPPU Opinions**

Eighth, Pictiva asks the Court to strike Dr. Perryman's opinion that the law surrounding the smallest saleable patent practicing unit limits the damages available.  (Dkt. No. 244, at 12–13).  This is for two reasons: (1) it is contrary to Federal Circuit law, which recognizes that apportionment "can be addressed in a variety of ways," and (2) Samsung failed to disclose an SSPPU theory in its answers to Pictiva's interrogatories.  (*Id.* at 13).

Samsung responds by asserting that Dr. Perryman will not "opine that every damages methodology must identify and incorporate an SSPPU" or that the entire market value rule is applicable here.  (Dkt. No. 282, at 13).

The precise scope of the parties' dispute here is unclear.  It seems that Samsung concedes that Pictiva is correct that apportionment can be addressed in a variety of ways and that it will not make SSPPU arguments at trial.  But at the same time, it is unclear exactly which aspects of Dr. Perryman's report might run contrary to this, as Pictiva cites several paragraphs that do not seem to relate to an SSPPU argument.  Accordingly, the Court will allow Dr. Perryman to testify about the need to apportion the infringing features of the Accused Products and his analysis about that apportionment, but it will not allow Dr.

Perryman to identify some need to identify an SSPPU or the purported legal consequences of failing to do so.

### (i) Reliance on Dr. Kymissis and Dr. Katona

The Court does not independently address the testimony of Dr. Kymissis or Dr. Katona here. To the extent that the Court has elsewhere allowed such testimony, it is proper for Dr. Perryman to rely thereon. But by the same token, Dr. Perryman may not rely on portions of that testimony that have been stricken.

### (j) Royalty Stacking & Profit Comparison

Tenth, Pictiva argues that Dr. Perryman should not be allowed to opine that damages would be limited by Samsung's royalty stack or its per-unit profit margin. (Dkt. No. 244, at 14–15). Pictiva argues that the former is insufficiently tethered to the facts of the case and that the latter is contrary to law because "an infringer's net profit margin is not the ceiling by which a reasonable royalty is capped." (*Id.* (quoting *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1238 (Fed. Cir. 2011))).

Samsung rejoins that Pictiva misunderstands Dr. Perryman's opinions on these points. Samsung points out that Pictiva's cases deal only with RAND/SEP contexts and are thus inapplicable. Nor, says Samsung, does Dr. Perryman say that the profit margin is a cap. Rather, he simply points out that Plaintiff's expert "fails to account for the fact that his royalty rates for five patents would consume a significant portion of profits" when the accused displays "are covered by over 200 patents." (Dkt. No. 282, at 13–14).

Given the sparse nature of Plaintiff's briefing on this issue, the Court finds no reason to exclude Dr. Perryman's testimony as a matter of law because Pictiva has not shown that it

is unreliable or contrary to law.  Pictiva cites no case requiring its exclusion, and though Dr. Perryman may not testify that Samsung's profit margin serves as a cap, it certainly is relevant to his and Mr. Kennedy's opinions.

### (k)     Third-Party Licensing History

On this eleventh point, Pictiva mostly reiterates its argument that SDC licenses are irrelevant to the hypothetical negotiation.  But as the Court noted above, Pictiva cannot simultaneously put forward SDC licenses and persuasively critique Dr. Perryman's use of the same, especially in responding to Mr. Kennedy's opinion.  Pictiva's motion is denied on this ground.

### (l)     Indemnification Agreements

Last, Pictiva devotes one short paragraph to arguing that it would be improper to allow Dr. Perryman to discuss "alleged indemnification agreements between SEC and its OLED display suppliers" because Samsung did not fully comply with its discovery obligations. (Dkt. No. 244, at 15).  Samsung responds by pointing out that "Plaintiffs are not entitled to discovery into privileged information and materials" and that, even still, "Samsung's witness answered many other questions related to indemnification and the parties involved, Samsung responded to Plaintiffs' interrogatory request seeking information regarding indemnification, and Samsung produced the indemnification agreements themselves."  (Dkt. No. 282, at 15). Pictiva does not dispute this.  (Dkt. No. 317, at 5).  Accordingly, the Court finds no reason to exclude Dr. Perryman's testimony on this basis.

## III.  CONCLUSION

For the reasons stated herein, the Court finds that the Motion should be and hereby is **GRANTED IN PART** and **DENIED IN PART**.  As identified above, Dr. Perryman may not (1) compare the terms of non-comparable licenses as set out in Exhibit 7 of his report, (2) testify regarding the expectations of investors as set out in ¶¶ 98–100, 142–150, 332–38, 343, and 358 of his report, (3) opine that an SSPPU is necessary or legally consequential in this case, or (4) testify that some profit margin serves as a cap on damages.  The Motion is otherwise **DENIED**.

**SIGNED this 20th day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE