IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

PICTIVA DISPLAYS INTERNATIONAL
LTD. *and* KEY PATENT INNOVATIONS
LIMITED,

§
§
§
§

    *Plaintiffs*,

§
§

v.

§
§

CASE NO. 2:23-CV-00495-JRG-RSP

§

SAMSUNG ELECTRONICS CO., LTD.
*and* SAMSUNG ELECTRONICS
AMERICA, INC.,

§
§
§
§

    *Defendants*.

§
§

## MEMORANDUM ORDER

Before the Court is the Motion to Strike and Exclude the Testimony and Opinions of

Plaintiff's Technical Expert Kurt D. Humphrey, filed by Defendants Samsung Electronics Co.,

Ltd. and Samsung Electronics America, Inc. **Dkt. No. 239**. For the reasons discussed below, the

Motion is **GRANTED** as to Mr. Humphrey's technical benefits opinions as to the '389 Patent and

otherwise **DENIED**.

## I.    APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical,

or other specialized knowledge will help the trier of fact to understand the evidence or to determine

a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product

of reliable principles and methods; and (d) the expert has reliably applied the principles and

methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as

to whether the requirements of the rule are satisfied with regard to a particular expert's proposed

testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate

means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461

(5th Cir. 2002).

## II.    ANALYSIS

### A.  Quantified Technical Benefits Opinions

In the Motion, Defendants argue that Mr. Humphrey misapplies the relevant evidentiary

basis, which allegedly results in a complete failure to apportion the benefits of the '389 Patent and

'164 Patent. Dkt. No. 239 at 1.

For the '389 Patent specifically, Defendants assert that "[t]he purported difference of the

asserted claims over the prior art methods is that asserted claims require 'selectively depositing'

the layers used in [a polymer multi-layer[1] thin film encapsulation[2]][3]" on an OLED[4] display, but

that Mr. Humphrey "fails to quantify the benefits attributable to claimed 'selective depositing'

method as compared to prior art and non-infringing methods." *Id.* at 2. In support of this,

Defendants argue that, while Mr. Humphrey opines that the '389 patent leads to a threefold

improvement to the lifetime of an OLED, he relies solely on a paper authored by Kwon (the "Kwon

Paper") which allegedly says nothing about the benefit of the '389 patent's selectively-deposited

TFE over prior art TFEs or non-infringing TFEs; Mr. Humphrey merely asserts conclusorily that

the Kwon Paper compares an infringing PML TFE structure to a non-infringing one. *Id.* at 3 (citing

Dkt. No. 239-2 ("Humphrey Report C") at ¶ 18). Defendants further argue that "Mr. Humphrey

[also] unreliably misuses data that does not align with the facts of the case to inflate the alleged

benefit of the asserted claims" because his opinions allegedly do not align with data that is shown

in the Kwon Paper. *Id.* at 3-4. While Mr. Humphrey's triple-the-lifetime opinion is valid when the

---

[1] "PML."
[2] "TFE."
[3] These encapsulations are designed to prevent environmental damage, such as moisture, to the OLED display.
[4] "Organic light-emitting diode": a type of display technology used in (inter alia) computer monitors.

tests in the Kown Paper were conducted at 60 °C, Defendants claim this is not so when the tests were conducted at 25 °C. *Id.* (citing Kwon Paper at Figure 7(c)). Thus, claim Defendants, "Mr. Humphrey's singular reliance on data taken at 60 °C . . . when [25 °C] data was also available, serves only one impermissible purpose: to artificially inflate the benefit of the asserted claims to an eye-popping threefold increase in display lifetime." *Id.* at 5.

As to the '164 Patent, Defendants argue that Mr. Humphrey's opinion that a two-host OLED system offers a 30% increase in efficiency over a one-host system is unreliable because, like with the '389 Patent, he does not show that the document he relies on—an "SDC document"— is comparing a system which practices the '164 Patent claims with prior art. Dkt. No. 239 at 5-6. Specifically, Defendants assert that "[n]one of the systems described in the 'two-host concept' contained *three* claimed 'matrix materials' in a single claimed 'organic functional layer' or 'emission layer'" as is required by the claims, and that Mr. Humphrey never explains how any of the systems described in the "two-host concept" could practice any asserted claims. *Id.* at 6 (emphasis in original) (citing Humphrey Report C at ¶¶ 37-39; Dkt. No. 239-7 ("Humphrey Report A") at ¶ 63). Defendants further argue that "the 'two-host concept' does not even relate to the advantages of a dual-host OLED system over a single-host OLED system. Instead, it compared two different two-host concepts." *Id.* (emphasis omitted) (citing Dkt. No. 239-9 at 428, 433). In support of this, Defendants point to the deposition of the SDC Document's author—Ms. Seo—in which Plaintiff asked her about the about the meaning of the 30% efficiency value. *Id.* Defendants contend that "Ms. Seo testified that 30% was determined by comparing two OLED systems that used different prime layer materials, not by comparing a dual-host OLED system over a single-host OLED system," and that the SDC Document "also states that depending on the prime material, efficiency is significantly different." *Id.* at 6-7 (citing Dkt. No. 239-12 at 104:14-104:16, 104:17-

105:5). "Mr. Humphrey," continue Defendants, "did not even attempt to address why he disagrees with the author's explanation" rendering his opinion unreliable. *Id.* at 7.

In response, Plaintiff argues that, with respect to the '389 Patent, "It is well established that 'a party may … estimate the value of the benefit provided by the infringed features by comparing the accused product to non-infringing alternatives,'" and that this is what Mr. Humphrey did. Dkt. No. 286 at 1 (quoting *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1315 (Fed. Cir. 2014); *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1240 (Fed. Cir. 2011)). Plaintiff asserts that Mr. Humphrey assessed the technical benefits attributable to the asserted patents by comparison to the benefits conferred by alternatives, such as those found in the Kwon Paper. *See id.* at 2-3. Regarding Defendants' criticisms, Plaintiff disputes that the Kwon paper allegedly does not compare an infringing structure to a non-infringing one. *Id.*  In support of this, Plaintiff points to (1) Mr. Humphrey's statement that Kwon "discusses [an] 'infringing PML TFE structure' consisting of the $Al_2O_3$-polymer-$Al_2O_3$ structure" (Dkt. No. 348 at 1 (quoting Humphrey Report C at ¶ 18)), and (2) Mr. Humphrey's deposition testimony in which he allegedly explains that the $Al_2O_3$-polymer-$Al_2O_3$ structure in the Kwon Paper is indeed infringing (Id. (citing Dkt. No. 348-2 ("Humphrey Depo") at 220:15-25, 289:12-18).

As to the '164 Patent, Plaintiff responds by arguing that Mr. Humphrey's report does in fact detail how the dual-host concepts described in the SDC document are infringing. Dkt. No. 286 at 5-6. This includes his discussion on "why the dual-host red EML[5] ("R-EML") and R' layer and/or the dual-host green EML ('G-EML') + G' are each a claimed 'emission layer.' Because light is emitted at the interface of G-EML+G' or R-EML+R', a POSITA would consider G-EML and G' or R-EML and R' each collectively form the claimed 'organic functional layer.'" *Id.* (citing

---

[5] "Emission layer." Dkt. No. 286 at 5.

Humphrey Report A at ¶¶ 31-33 (asserting that Mr. Humphrey was analyzing Samsung training documents showing light emission at the interface of prime and EML layers and Ms. Seo's testimony to conclude that "it is reasonable to regard at least the G-EML and the immediately adjacent HTL(G'), as well as R-EML and the immediately adjacent HTL(R'), as the light emitting layer because the two sublayers combination are where the light emits"), 28-49 (asserting that Section III.C explains how layers adjacent to the EML contribute to light emission)). Regarding Defendants' second argument, Plaintiff says that while "Samsung disagrees with Mr. Humphrey's interpretation of the Seo Presentation, claiming that the 30% current efficiency improvement does not represent the difference in performance of using a "single-host" system versus a "dual-host" system", this is "a classic battle of the experts, and is the proper subject for cross-examination." *Id.* at 6-7.

The Court finds that exclusion is necessary here. With respect to the arguments concerning the '389 Patent, in order for Mr. Humphrey's opinions to have any validity or relevance to the technical benefits of the asserted patents, it must first be established that the Kwon Paper is comparing an infringing embodiment of the patents to a non-infringing one. Here, the only argument supporting this is Mr. Humphrey's purely conclusory assertion that "Kwon et al compared the infringing PML TFE structure to a single TFE of Al2O3."[6] Humphrey Report C at ¶ 18 (cleaned up). This is mere *ipse dixit* argumentation and is insufficiently reliable. Plaintiff's other argument concerning Mr. Humphrey's deposition testimony is unpersuasive. A party may not remedy substantial shortcomings in its expert's report through after-the-fact deposition testimony, which would violate the rule that experts are held to the four corners of their reports. Accordingly,

---

[6] Mr. Humphrey includes a citation to https://www.ossila.com/pages/oled-testing-guide, but the webpage likewise offers no explanation of any kind on why the $Al_2O_3$-polymer-$Al_2O_3$ structure practices the asserted patents.

the Motion to Strike on this basis is **GRANTED** and paragraphs eighteen and nineteen of Mr. Humphrey's report are hereby **STRICKEN**.

Turning to the arguments concerning the '164 Patent, we find that Mr. Humphrey's report is sufficiently reliable. The Parties' dispute on the first issue amounts to a fact question. However, "it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony." *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003). Instead, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are more appropriate means for attacking these opinions. *Daubert*, 509 U.S. at 596. The same is true regarding the second issue, and while Mr. Humphrey does not directly explain why he disagrees with Ms. Seo, Plaintiff is correct that this does not merit exclusion. Defendants' concerns may be properly addressed on cross examination, and Mr. Humphrey will be held to the four corners of his report. Accordingly, the Motion to Strike on this basis is **DENIED**.

### B. Timeliness of Infringement Theories

Defendants next move to exclude two sets of Mr. Humphrey's infringement theories as untimely: (1) theories under the Doctrine of Equivalents ("DOE"); and (2) literal infringement theories. The Court addresses each in turn.

#### 1. Infringement Theories Under the DOE

Defendants argue that Mr. Humphrey's infringement theories under the DOE for the '389 and '164 Patents should be excluded because Plaintiffs have not timely disclosed them. Dkt. No. 239 at 8. Although Defendants note that Plaintiffs included "boilerplate DOE language" in their infringement contentions, Samsung insists that such language "fails to provide the requisite notice"

because it did not disclose the specific DOE theories that Mr. Humphrey ultimately forwarded. *Id.* at 9.

Plaintiff responds that its infringement contentions (including those in the now-dismissed 223-cv-532 member case) provided sufficient notice to Defendants. Dkt. No. 286 (citing Dkt. No. 286-11). Plaintiff further argues that Defendants have suffered no prejudice because "its experts had the opportunity to respond in their rebuttal reports, and Samsung had an opportunity to depose Mr. Humphrey on these theories." *Id.* (citing *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869331, at *2 (E.D. Tex. Apr. 27, 2017)).

The Court agrees with Plaintiff. Indeed, sufficient detail of literal infringement, "along with a statement that specific elements are met under the [DOE], is sufficient to provide notice that the accused functionality may be insubstantially different from or function in the same way to provide the same result as the relevant claim language." *Biscotti Inc. v. Microsoft Corp*, 2017 WL 2267283, at *4 (E.D. Tex. May 24, 2017). Here, the facts are identical to those of *Biscotti*. Plaintiff has "included an additional statement—for each relevant claim element—that if the element is not literally satisfied, it is satisfied under the [DOE]." *Id*. Thus, as in *Biscotti*, Plaintiff's infringement contentions provided sufficient notice to Samsung of Plaintiff's infringement theories under the DOE.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 2. Literal Infringement Theories

#### a. The '389 Patent

Defendants argue that one of Mr. Humphrey's literal infringement theories for the '389 Patent—that a "planarization layer" is met by a composite planarization layer made up of a CPL

layer, a 1st CVD layer, and a monomer layer—was not disclosed in Plaintiff's Infringement Contentions. Dkt. No. 239 at 9.

Plaintiff responds that its supplemental infringement contentions have provided adequate notice of its theory that a "planarization layer" comprises a composite layer made up of "the CPL layer, the 1st CVD layer, and the monitor layer." Dkt. No. 286 at 8. Specifically, Plaintiffs point out that the supplement provided multiple examples of selectively depositing a "planarization layer," including where (1) "a 1st CVD layer is deposited via a mask to cover certain areas and to cover the OLED devices and an organic material is then deposited by inkjetting onto the 1st CVD layer" and (2) "an organic CPL layer is deposited on the cathode via a mask," and (3) "the combination of the two can also be viewed as a planarization layer." *Id*. (citing Dkt. No. 239-17 at 15; Dkt. No. 239-14 at 15). Plaintiff further argues that "as early as March 24, 2024 and as [Defendants'] motion acknowledges, Pictiva stated expressly 'the planarization layer may include the organic encapsulation layer, and/or SiONx inorganic encapsulation 1 and/or an interface layer between the encapsulation layer 1 and the cathode.'" *Id.* (citing Dkt. No. 239-14 at 17). Although Plaintiff acknowledges that the contentions do not use the term "CPL" to describe the interface layer or label the first encapsulation layer as "1st CVD," it goes on to argue that this is because Defendants had not turned over relevant discovery which used such terminologies. *Id.*

Having reviewed both the October 24, 2024 infringement contentions and the relevant sections of Mr. Humphrey's report, the Court is satisfied that he is not introducing any untimely literal infringement theories here. The October 24, 2024 contentions provide sufficient notice that Plaintiffs allege that a planarization layer is comprised of a CPL layer, a 1st CVD layer, and a monitor layer.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### b.  The '164 Patent

Defendants also argue that one of Mr. Humphrey's literal infringement theories for the '164 Patent—that layers adjacent to emission layers ("EMLs") in the accused displays could be combined with the EMLs and treated as claimed "organic functional layer" or "emission layer"— was not disclosed in Plaintiff's Infringement Contentions. Dkt. No. 239 at 10. Defendants assert that "at most, Plaintiffs' amended contentions mention potential infringement by 'ETL/BHL and/or EBL/HTL at respectively the cathode-facing and anode-facing sides of the host material,' but that is a far cry from what Mr. Humphrey ultimately accused." *Id.* (citing Dkt. No. 239-18 at 51-52).

Plaintiff responds that its infringement contentions have provided adequate notice of their theory here. Dkt. No. 286 at 9. Specifically, Plaintiff points to its March 14, 2024 contentions, which "explained that the 'organic functional layers [in Samsung's products] are located between the first and second electrode' and provided examples including layers adjacent to the EML such as the electron transport layer ('ETL') and hole transport layer ('HTL'). The PICs also provided the following example of three matrix materials that comprise an 'organic functional layer,' pulling from adjacent layers: the ETL, EML, and HTL." *Id.* (citing Dkt. No. 239-15 at 28-33). "Pictiva's October 24, 2024 [contention]," Plaintiff continues, "expanded on this theory, explaining that this limitation could be satisfied by 'an organic functional layer comprising an emission layer that includes host material comprised of one or more hole transport material and one or more electron transport material as well as ETL/HBL and/or EBL/HTL at respectively the cathode-facing and anode-facing sides of the host material.' The updated contentions also expressly mapped this claim element to layers adjacent to the EML, for example, where 'the three matrix materials are respectively, the hole transport host material for emitter (first or second matrix material), an

10

*adjacent* HTL (first or second matrix material) and the electron transport host material for emitter (the third matrix material).'" *Id.* at 9-10 (citing Dkt. No. 239-18 at 51-52, 58). Turning to Mr. Humphrey's opinions, Plaintiff asserts that his report "identifies layers adjacent to the EML as part of the claimed 'organic functional layer' or 'emission layer.'" *Id.* at 10 (citing Dkt. No. 286-2 at ¶¶ 28-33 (analyzing Samsung documents and deposition testimony re: light-emitting properties of the various layers and concluding that "it is reasonable to regard at least the G-EML and the immediately adjacent HTL(G'), as well as R-EML and the immediately adjacent HTL(R'), as the light emitting layer because the two sublayers in combination are where the light emits."); *id.* at ¶ 141 (EML materials "form an organic functional layer along with adjacent HT and ET layers (referenced as G'/R'/BIL and buffer layer)"), 173 ("each of the Samsung's OLEDs and OLED displays has an organic functional layer in the form of the combination of emission material layer (EML), and adjacent electronic transport (ET) and/or hole transport (HT) material ").

Having reviewed both the infringement contentions and the relevant sections of Mr. Humphrey's report, the Court is again satisfied that he is not introducing any untimely literal infringement theories here. While the contentions do not use the same terminology as Samsung's in-house documents related to the accused products, this is not a basis for exclusion. Further, and as this Court has said many times previously, the purpose of infringement contentions is to provide Defendants notice of Plaintiff's infringement theory, which is a low bar; whether a theory is actually meritorious is assessed largely through expert reports. *See e.g. Maxell, Ltd. v. Apple Inc.*, 2020 WL 8269548, at *19 (E.D. Tex. Nov. 11, 2020) ("Unlike expert reports, infringement contentions 'are not meant as a vehicle to litigate the merits of an infringement position.'").

Accordingly, the Court finds that this portion of the Motion should be **DENIED.**

### C. Willfulness Opinions

Defendants' penultimate argument is that Mr. Humphrey's opinions on willfulness should be excluded for three reasons. Dkt. No. 239 at 12–14. First, Samsung asserts Mr. Humphrey improperly "opines about the state of mind or intent [of Samsung] to conclude willful infringement." *Id*. at 12. Second, Samsung asserts that Mr. Humphrey relies on two categories of pre-suit communications that are excluded under non-disclosure agreements ("NDAs"): communications between (a) Samsung Electronics Co., Ltd. ("SEC") and OSRAM gmbH (Plaintiffs' predecessor-in-interest) ("OSRAM") (the "SEC-OSRAM NDA"), and (b) Samsung Display Co. Ltd. ("SDC") and Pictiva (the "SDC-Pictiva NDA"). *Id*. at 13. Third, Samsung asserts that Mr. Humphrey's opinions amount to a mere presentation of Plaintiff's underlying evidence followed with an opinion that amounts to a legal conclusion as to Samsung's subjective state of mind. *Id.* at 13-14.

Plaintiff responds that Mr. Humphrey properly opined on willfulness. Dkt. No. 286 at 13. First, Plaintiff contends that the expert properly identified certain facts from the record (e.g., communications) that support an inference of a particular intent. *Id*. Plaintiff further argues that Mr. Humphrey draws upon his technical expertise in forming his opinions by referencing claim charts that Plaintiff had sent to Samsung. *Id*. Plaintiff also disputes whether the NDAs preclude Mr. Humphrey's testimony. *Id*. at 14.

The Court notes that it has previously construed both the SDC-Pictiva and SEC-OSRAM NDAs. The Court previously found that "Plaintiffs are free to disclose their own information to third parties" under the SDC-Pictiva NDA. Dkt. No. 506 at 12. However, Mr. Humphrey's opinions are based on information provided by Plaintiffs to SDC and information provided by SDC to Plaintiffs. *See* Dkt. No. 239-21 at ¶¶ 8–14. Thus, the Court finds that the Motion should

be **GRANTED** to the extent that Mr. Humphrey's opinions rely on information provided by SDC to Plaintiffs.

Additionally, the Court finds that the SEC-OSRAM NDA "applies to more than just 'confidential' information," but "only applies to notice, and that information falling within its purview can be used to show subjective intent." Dkt. No. 506 at 9. Thus, the Court finds that the Motion should be **GRANTED** to the extent that Dr. Schanze's opinions use information protected by the SEC-OSRAM NDA relating to notice for willful infringement.

As to the remaining disputes, however, the Court agrees with Plaintiffs. "Experts can opine . . . on the underlying facts that may show a party's state of mind." *Gree, Inc. v. Supercell Oy*, 2020 WL 4288350, at *3 (E.D. Tex. Jul. 27, 2020); *see also Wireless Alliance, LLC v. AT&T Mobility LLC*, 2024 WL 4573256 at *2 (E.D. Tex. Oct. 24, 2024). Here, Mr. Humphrey does exactly that. For example, Mr. Humphrey opines that Mr. Paul Seaman (Plaintiff's Director) sent SDC claim charts detailing Samsung's infringement. Dkt. No. 229-21 ¶ 7-8.

Accordingly, the Court finds that this portion of the Motion should be **GRANTED** as described in this section but **DENIED** in all other aspects.

### D.  Opinions in Conflict with the Court's Construction of Claim Terms

Defendants' final argument is that "[t]he parties have proposed competing claim terms. Even so, Mr. Humphrey did not apply Samsung's proposed constructions in his report. Thus, if the Court later[7] agrees with Samsung's proposed constructions …." Dkt. No. 239 at 14.

Plaintiff responds that Mr. Humphrey applied both parties' proposed constructions for the disputed terms of the '389 patent and '164 patent throughout his expert report. Dkt. No. 286 at 14-15 (citing Dkt. No. 286-21 at ¶ 28 ("I understand the Court has not yet issued a Claim Construction

---

[7] Expert reports in this case wound up being due before the Claim Construction Order was issued. *See* Dkt. No. 397; *compare* Dkt. No. 224 at 1.

Order in this case; I considered both parties proposed constructions in rendering my opinions in this report.")). Plaintiff then goes on to point to several examples of this. *See id.* at 15.

"Expert opinions that contradict or disregard a court's claim constructions should be excluded." *Genband, US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 WL 3475688, at *4 (E.D. Tex. Jan. 7, 2016)). However, Defendants fail to explain with any particularity an instance in which he does not conform to the claim construction which has issued in this case. Accordingly, the motion is **DENIED** as to this issue.

**SIGNED this 21st day of October, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE