IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **PICTIVA DISPLAYS INTERNATIONAL LTD., KEY PATENT INNOVATIONS LIMITED,** | ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | Civil Action No. 2:23-cv-00495-JRG |
| v. | ) ) | |
| **SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.** | ) ) ) ) | JURY TRIAL DEMANDED |
| *Defendants*. | ) | |

## SAMSUNG'S MOTION FOR A MISTRIAL

**TABLE OF CONTENTS**

      **Page**

INTRODUCTION ...........................................................................................................................1
BACKGROUND .............................................................................................................................1
LEGAL STANDARD......................................................................................................................7
ARGUMENT...................................................................................................................................7
I.    MR. SHEASBY'S CLOSING ARGUMENT IRREPARABLY PREJUDICED THE JURY.........................................................................................................................7
II.   MR. SHEASBY ENGAGED IN OTHER PREJUDICIAL BEHAVIOR THROUGHOUT THE TRIAL ...................................................................................................12
CONCLUSION..............................................................................................................................12

i

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Bufford v. Rowan Cos.*,
   994 F.2d 155 (5th Cir. 1993) ................................................................................7, 8, 9, 12

*Caldarera v. E. Airlines, Inc.*,
   705 F.2d 778 (5th Cir. 1983) ..................................................................................................7

*Clapper v. Am. Realty Invs., Inc.*,
   95 F.4th 309 (5th Cir. 2024) (per curiam) ........................................................1, 6, 7, 8, 11, 12

*Commil USA, LLC v. Cisco Sys., Inc.*,
   720 F.3d 1361 (Fed. Cir. 2013), *vacated in part on other grounds*, 575 U.S.
   632 (2015) ..............................................................................................................................10

*Edwards v. Sears, Roebuck & Co.*,
   512 F.2d 276 (5th Cir. 1975) ..............................................................................................9, 11

*In re Isbell Recs., Inc.*,
   774 F.3d 859 (5th Cir. 2014) ..................................................................................................7

*Loose v. Offshore Navigation, Inc.*,
   670 F.2d 493 (5th Cir. 1982) ..................................................................................................9

*Sandoval v. Calderon*,
   241 F.3d 765 (9th Cir. 2000) ..................................................................................................9

*Whitehead v. Food Max of Miss., Inc.*,
   163 F.3d 265 (5th Cir. 1998) ................................................................................................11

*Whitfield v. Harris*,
   474 F. Supp. 2d 822 (N.D. Miss. 2007) ..................................................................................9

Defendants Samsung Electronics Co., Ltd., and Samsung Electronics America, Inc. (together "Samsung"), respectfully move the Court for an order declaring a mistrial based on statements made during closing argument and other conduct throughout this trial by counsel for Plaintiffs.

**INTRODUCTION**

From the very beginning of the trial, rather than attacking on the merits, Mr. Sheasby instead attacked the personal integrity of Samsung's counsel. His antics forced the Court twice to try to rein him in. Mr. Sheasby continued to ignore the Court's warnings, however, and Friday's closing arguments marked the culmination of his weeklong attempt to improperly prejudice the jury. During the rebuttal portion of his closing argument—when he knew Samsung's counsel would not have another chance to speak—Mr. Sheasby pointed to Samsung's counsel and—in a booming voice but with a dramatic, somber tone—accused them of presenting false evidence and false testimony; asserted that a Samsung executive had told them to advance false arguments; invoked Scripture to condemn them; and invited the jury to do the same. Trial Tr. vol. 5 (Oct. 31, 2025) at 1397:13-16. He told the jury without a shred of evidence that the behavior of Samsung's counsel in this case violated not only "the Court's rules" but also Christian Scripture. *Id.* at 1397:20; *see id.* at 1394:5-11, 1397:4-8 (invoking the Old Testament). Mr. Sheasby's extreme rhetoric and unfounded accusations warrant a mistrial. *See Clapper v. Am. Realty Invs., Inc.*, 95 F.4th 309, 317 (5th Cir. 2024) (per curiam) (reversing and remanding for new trial where closing argument included improper "attacks against opposing counsel" and referred to "matters not in the record").

**BACKGROUND**

Mr. Sheasby's efforts to make this trial about the integrity of Samsung's counsel began when he called Plaintiffs' first witness, Dr. Angela Quinlan. In the first twenty minutes of Mr.

1

Sheasby's direct examination of Dr. Quinlan, Mr. Sheasby repeatedly pointed his finger at Samsung's lead counsel while conveying through his questions that Samsung's counsel had lied to the jury and had withheld information from the jury during opening statements. *See* Trial Tr. vol. 1 (Oct. 27, 2025) at 207:12, 212:7-9, 214:20-22. Once, while pointing at Samsung's counsel, Mr. Sheasby asked Dr. Quinlan "Was that a truthful statement that counsel was making?" to which Ms. Quinlan responded "No, that's not truthful." *Id.* at 207:12-13. Another time, Mr. Sheasby pointed at Samsung's counsel and asked Ms. Quinlan, in a raised voice, "Was counsel being truthful or untruthful?" to which Ms. Quinlan responded "Untruthful." *Id.* at 214:21-23. And at least twice more, Mr. Sheasby argued—through his questioning of Dr. Quinlan—that counsel for Samsung had lied to and/or withheld information from the jury during opening statements.[1] The pattern so pervaded his questioning that the Court called Mr. Sheasby to a sidebar to address his conduct:

> THE COURT: Counsel -- counsel, approach the bench, please.
>
> (The following was had outside the hearing of the jury.)
>
> THE COURT: I am not going to have this trial devolve into name calling. It's one thing to ask if a witness or a statement was accurate or inaccurate. It's another thing to cite, were they lying or telling the truth or not telling the truth. We're not going to get into personal attacks, and this is getting borderline in my view.
>
> MR. SHEASBY: I understand your instruction.

---

[1] The various claims that Samsung had been "untruthful" in Opening Statement were unfounded. To take one example, Mr. Sheasby argued through his questioning of Dr. Quinlan that Samsung had improperly suggested that Osram/Pictiva were incapable of creating a color OLED. Trial Tr. vol. 1 (Oct. 27, 2025) at 205:17-206:5. In making this point, Mr. Sheasby elicited testimony from Dr. Quinlan regarding a one-inch 96-by-64 full-color display supposedly released by Osram in 2006. Later, however, Homer Antoniadis—the only trial witness with personal knowledge of Osram's work—confirmed that the product identified by Dr. Quinlan did not utilize the technology that Osram was working on from 2000 to 2005, but was instead sourced from third-party supplier Univision in Taiwan. Trial Tr. vol. 3 at (Oct. 29, 2025) 728:1-731:19. In any event, regardless of the merits (or lack thereof) of counsel's accusations, it was the nature of the repeated, personal, aggressive attacks towards Samsung's counsel, that were inflammatory and prejudicial.

2

> THE COURT: You can make it accurate or inaccurate, but this is – it's too inflammatory and, quite honestly, I'm probably helping you, Mr. Sheasby, because you're going to offend the jury if you keep doing this --
>
> MR. SHEASBY: I understand, Your Honor.
>
> THE COURT: -- as well as the Court.

*Id.* at 215:4-20. But Mr. Sheasby continued to make personal attacks against Samsung's lawyers.

Perhaps the most notable instance of this was Mr. Sheasby's redirect examination of Pictiva's expert Mr. Humphrey. *See* Trial Tr. vol. 2 (Oct. 28, 2025) at 570:5-572:11. During Mr. Sheasby's three-minute redirect, he was shouting, pointing at Samsung's counsel, and effectively arguing to the jury that Samsung's counsel had lied and withheld evidence.

To remind the Court, during Mr. Humphrey's cross-examination, Samsung's counsel elicited that Mr. Humphrey had not presented any experimental data during his direct to support Mr. Humphrey's position that the emission of light occurs across multiple OLED layers. *Id.* at 554:10-555:6. As the Court later found, not only had Mr. Humphrey failed to present such experimental data during his direct examination but he had failed to present or analyze any such experimental data <u>in his expert report</u>. But on redirect, using undisclosed demonstratives, Mr. Sheasby—in a raised voice, with an incredulous tone, and using aggressive gesticulations toward Samsung's counsel—argued through his questioning that Mr. Humphrey <u>had</u> analyzed such data, that Samsung's counsel had access to that data, that Samsung's counsel had withheld it from the jury, and that Samsung could have, but did not, conduct their own tests to disprove it. This was the sum total of Mr. Sheasby's redirect of Mr. Humphrey.

As noted above, the entire premise of Mr. Sheasby's redirect was wrong. Mr. Humphrey had not relied on any experimental data to support his opinion that the emission of light occurs across multiple OLED layers—he did not rely on such data during his direct testimony, and he did

3

not rely on such data in his expert report. Yet, the entirety of Mr. Sheasby' redirect of Mr. Humphrey was a loud, dramatic, incredulous attack on Samsung's counsel—falsely conveying to the jury that Samsung's counsel was the bad actor, that Samsung's counsel knew that Mr. Humphrey had relied on data to support his opinion, and that Samsung's counsel withheld it from the jury. *See* Trial Tr. vol. 3 (Oct. 29, 2025) at 744:1-17, 747:14-20, 761:15-21.

When the Court took up the issue, Mr. Sheasby conceded that the demonstratives used with Mr. Humphrey had not been disclosed to counsel for Samsung as required by Court rules. *Id.* at 751:17-752:2. By failing to disclose those demonstratives as required, Mr. Sheasby eliminated the opportunity for Samsung's counsel to object to their content as outside the scope of Mr. Humphrey's report before they were used in front of the jury. After the damage had been done, the Court found that the content of those demonstratives were outside the scope of Mr. Humphrey's report and were improperly used. Moreover, the Court found:

> Also, as noted by Defense counsel and as will not be shown in the record, the manner in which these demonstrative slides were used and the tone and tenor and volume and body language used by Plaintiffs' counsel clearly implicated that Defense counsel had hidden or failed to come forward with something they knew, and that adds to the impropriety of this situation. The Court was here, I saw it happen in real-time. It was not just the same type of presentation; it was loud, it was targeted, it was aggressive, and there was significant emphasis placed on these demonstrative slides by Mr. Sheasby as a part of this redirect.

*Id.* at 764:2-12. At Samsung's counsel's request, the Court gave the jury a curative instruction and docked four minutes of time from Mr. Sheasby's closing. But this was still not enough to stop Mr. Sheasby's behavior. Instead, he took his improper attacks on Samsung's counsel even further during closings.

The night before closings, Mr. Sheasby filed a brief asking the Court "to preclude Defendants during their closing argument from criticizing counsel for Plaintiffs for, or otherwise

4

referring to" Mr. Sheasby's improper redirect examination of Mr. Humphrey. (Dkt. 573.) Mr. Sheasby argued in his motion:

> ***Defendants should not be permitted to impugn the character of counsel for Plaintiffs*** based on the above in closing. The Court already determined that the error was "not intentionally malicious" and thus suggesting purposeful wrongdoing would unduly and impermissibly prejudice Plaintiffs. The Court's curative instruction has already addressed any prejudice to Defendants, and the Court stated that it would not issue any further punitive measures after its deduction of ten percent of Plaintiffs' closing time. Trial Tr. at 745:11-18. ***The parties' closing arguments should focus on the evidence and the questions before the jury, and not devolve into back-and-forth attacks against the integrity of the parties' counsel.*** To be clear, nothing prevents Defendants from pointing to the absence of evidence on a point or that the slides Mr. Humphry [*sic*] showed in re-direct are to be disregarded. Defendants, however, should not be permitted to argue intentional impropriety. By its very nature any curative instruction is based on a violation of a Court rule.

*Id.* at 2 (emphasis added). In connection with this motion, the Court indicated that it would not permit Samsung's counsel to argue "to the jury that the Plaintiff intentionally ambushed the Defendant." Trial Tr. vol. 5 (Oct. 31, 2025) at 1266:10-11.

Having successfully argued that Samsung's counsel should be precluded from "impugn[ing] the character of counsel for Plaintiffs" and that Samsung's counsel should be precluded from making "attacks against the integrity of the parties' counsel" (which Samsung's counsel never intended to do), Mr. Sheasby proceeded to baselessly impugn the character and attack the integrity of Samsung's counsel repeatedly during closings.[2]

---

[2] Mr. Sheasby's reckless claims that Samsung's counsel deliberately provided the jury with "falsehoods" were inflammatory and prejudicial, which alone justifies a mistrial. Nonetheless, it bears mentioning that these claims were themselves false and without basis in the record. For example, contrary to Mr. Sheasby, Trial Tr. vol. 5 (Oct. 31, 2025) at 1391:22-1392:1, Samsung's closing argument that Pictiva failed to call rebuttal experts to address validity, *id.* at 1365:16-1366:6, is indisputably accurate. Regarding Mr. Sheasby's claim of a "falsehood" pertaining to evidence for the three matrix materials in the prior art, *id.* at 1391:22-1393:23, the Court previously overruled Mr. Sheasby's authentication objection to the relevant evidence, finding that the issue raised a question of fact for the jury. Trial Tr. vol. 4 (Oct. 30, 2025) at 1078:13-1080:15. By baselessly suggesting intentional deception on the part of Samsung in closing, Mr. Sheasby has

5

Notably, he waited to make these character attacks until the second portion of his closing—ensuring Samsung's counsel would have no opportunity to respond. At that point, his closing argument devolved into baseless, high-volume, animated attacks on the character of Samsung and its counsel—and inappropriately invoked Christian Scripture, to boot:

> There's a line from the Old Testament . . . . You will know me by my deeds. You will know me by my deeds. And the deeds in this case were the presentation of evidence that is on its face false and testimony by their own witnesses admitting that these claims are not invalid.
> ...
> You will know me by my deeds. And counsel may be very nice men, but their deeds in this case do not reflect well on Samsung. . . . .
>    …
> ***Someone—some executive at Samsung, we do not know who, told them to advance false arguments, told them to use documents that have no connection to what was actually going on in 2007.*** We'll never know who they was—that was.

Trial Tr. vol. 5 at 1394:5–1397:17 (emphasis added). To be clear for the record, Mr. Sheasby—in dramatic fashion and with zero evidence—pointed to Mr. Pak and Mr. Gillam; accused them of presenting false evidence and false testimony; pointed to Samsung's Korean client representatives; told the jury that "some executive at Samsung" told Samsung's counsel "to advance false arguments"; conveyed to the jury that G-d would judge Samsung and its counsel poorly for these deeds; and implicitly invited the jury to do the same.

The extreme and unfair prejudice of these baseless arguments, delivered by the last advocate to address the jury and just minutes before the jury retired to begin its deliberations, is

---

undermined the Court's finding and compromised the jury's ability to fairly address this factual dispute. Finally, regarding a "falsehood" pertaining to marking, Trial Tr. vol. 5 (Oct. 31, 2025) at 1394:14-1395:7, Mr. Sheasby's argument ignored Samsung's live marking defense to damages for the '547 and '425 patents, on which the jury was instructed, *id.* at 1345:17-1346:19. That Mr. Sheasby's allegations of "falsehoods" lack any basis in the record compounds the prejudicial effect to Samsung.

readily apparent. The Fifth Circuit has consistently held that such closing arguments so prejudice a jury that its verdict cannot stand. *See, e.g.*, *Clapper*, 95 F.4th at 313.

## LEGAL STANDARD

A motion for a mistrial is governed by the standards applicable to a motion for a new trial under Rule 59. *See Caldarera v. E. Airlines, Inc.*, 705 F.2d 778, 781-82 & nn. 2-3 (5th Cir. 1983). A mistrial is warranted where "improper closing argument irreparably prejudices a jury verdict." *Clapper*, 95 F.4th at 313 (citation omitted).

The Fifth Circuit has described several scenarios warranting declaration of a mistrial. For example, "unsupported, irresponsible attack[s] on the integrity of opposing counsel" may irreparably prejudice the jury. *Id.* (quoting *Bufford v. Rowan Cos.*, 994 F.2d 155, 157 (5th Cir. 1993)). A mistrial may also be necessary where "counsel, in closing argument, argues the existence of material facts that are 'false or without basis in the record.'" *Id.* (quoting *In re Isbell Recs., Inc.*, 774 F.3d 859, 872 (5th Cir. 2014)).

## ARGUMENT

Mr. Sheasby's improper statements during closing argument provide multiple grounds to declare a mistrial under *Clapper*. And while these last-minute remarks to a jury about to enter its deliberations absolutely warrant a mistrial even in isolation, they must be viewed alongside other improper behavior throughout this trial by Mr. Sheasby. Taken together, Plaintiffs' counsel has unfairly created an intolerable risk that the jury will return a verdict based on something other than the evidence before it. Accordingly, a mistrial should be granted.

### I. MR. SHEASBY'S CLOSING ARGUMENT IRREPARABLY PREJUDICED THE JURY

Mr. Sheasby's closing argument warrants a mistrial for multiple grounds. *First*, Mr. Sheasby "ma[de] an 'unsupported, irresponsible attack on the integrity of opposing counsel.'"

7

*Clapper*, 95 F.4th at 313 (quoting *Bufford.*, 994 F.2d at 157).  Mr. Sheasby did not merely ask the jury to discredit evidence presented by Samsung.  Instead, he went way over the line, accusing defense counsel of "present[ing] . . . evidence that is on its face false" in violation of this Court's rules.  Trial Tr. vol. 5 (Oct. 31, 2025) at 1394:9-10; *see id.* at 1397:20 (accusing counsel of advancing false arguments and thus failing to "comply with the Court's rules").  These statements will irreparably prejudice any verdict reached by the jury.

*Bufford* is instructive.  In that case, a workplace injury suit, the Fifth Circuit remanded for a new trial where defense counsel argued that the plaintiff's claim was fraudulent.  994 F.2d at 157.  The plaintiff's former co-worker had settled a suit against the same employer for on-the-job injuries, and the plaintiff hired the same lawyers who had represented the co-worker.  *Id.*  The defendant's theory was that the plaintiff staged his injuries and that his lawyers were in on the fraud.  *Id.* at 157-58.  The Fifth Circuit reversed the jury's verdict for the defendant, warning that litigants may not "impugn the integrity of a particular lawyer or that of lawyers in general, without basis in fact," to gain a tactical advantage at trial.  *Id.* at 158 (citation omitted).  Mr. Sheasby did the same thing here, meriting a mistrial.  Nearly every trial includes a dispute over which witness is telling the truth and whose credibility to believe; that does not open the door to attacking opposing counsel's integrity.

*Second*, a mistrial is warranted for the independent reason that Mr. Sheasby "argue[d] the existence of material facts that are 'false or without basis in the record.'"  *Clapper*, 95 F.4th at 313 (citation omitted).  Without any basis whatsoever, Mr. Sheasby told the jury that a mysterious, unknowable Samsung executive instructed defense counsel "to advance false arguments" and "to use documents that have no connection to what was actually going on in 2007."  Trial Tr. vol. 5 (Oct. 31, 2025) at 1397:14-16.  He did not suggest that this was something the jury could infer

8

from the evidence, or hyperbolically assert that Samsung's counsel's arguments were so deficient that it would appear that someone must have forced them to make them—he asserted, as fact, that "Someone -- some executive at Samsung, we do not know who, told them to advance false arguments, told them to use documents that have no connection to what was actually going on in 2007. We'll never know who they was -- that was." *Id.* at 1397:13-17.

There can be no other explanation for this inflammatory remark other than that Mr. Sheasby intended to prejudice the jury by invoking false stereotypes of shadowy and unscrupulous corporate overlords and asserting a false, baseless fact about Samsung that the jury might believe to his client's advantage.  There is, of course, absolutely no evidence in the record that could even arguably support Mr. Sheasby's statement, and he offered none. *See Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 284–85 (5th Cir. 1975) (reversing and remanding for new trial where plaintiff's counsel falsely told jury that Sears representative said claims in Sears manuals "had been recognized by the company to be false"); *cf. Bufford*, 994 F.2d at 158 ("If the defendants had proof that the Buffords' attorneys fomented fraudulent lawsuits, they were entitled to present it. . . . Relying on the identity of counsel as the basis for contending that the Buffords' claim was fraudulent, however, went beyond the pale of appropriate trial advocacy.").

It was further improper for Mr. Sheasby to invoke Christian Scripture in his rebuttal closing argument. *See Loose v. Offshore Navigation, Inc.*, 670 F.2d 493, 494 (5th Cir. 1982) ("The jury verdict . . . must be set aside because the [plaintiff's] lawyer invoked the 'Golden Rule' in his jury argument."); *id.* at 496 & n.3 (tracing Golden Rule to Gospel of Matthew); *Whitfield v. Harris*, 474 F. Supp. 2d 822, 823–24 (N.D. Miss. 2007) ("Jury arguments couched in terms of Christianity, Islam, Judaism, Hinduism or any other particular religious faith are inappropriate, especially when such appeals are made solely for one party to gain a tactical advantage in argument."); *cf. Sandoval*

9

*v. Calderon*, 241 F.3d 765, 769 (9th Cir. 2000) (granting habeas relief from capital sentence because prosecutor "paraphrased a well known Biblical passage as support for imposition of the death penalty"); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1370 (Fed. Cir. 2013) ("There is ample evidence from which the district court could conclude that the jury was biased by Cisco's actions. Throughout trial, Cisco attempted to instill in the jury, through irrelevant references to ethnicity and religion, an 'us versus them' mentality. Cisco persisted in its course of conduct even after the court warned counsel and issued a curative instruction. And, in a case involving Jewish inventors and plaintiffs, Cisco's counsel began his closing argument with a reference to the trial of Jesus Christ."), *vacated in part on other grounds*, 575 U.S. 632, 647 (2015). Mr. Sheasby knew as much; as he said himself, "I know that it's sometimes controversial to talk about religion in public places, but I'm going to do it." Trial Tr. vol. 5 (Oct. 31, 2025) at 1394:5-7. And he was true to his word, repeating his paraphrasing of Scripture multiple times during his rebuttal argument, including directly in his attacks on Samsung and its counsel. *See id.* at 1397:4-18.

What's worse, in the midst of these comments he told the jury "I think if we have more business executives from Dublin, Ireland, and less from Samsung, we'd be in a better place in this world because she told the truth." *Id.* at 1395:19-22. His contention that the world would be better off with "business executives from Dublin, Ireland," a notably Christian country, paired with his attacks on "some executive at Samsung," a Korean company, traveled in rank prejudice. This violated all propriety and proper argument, as well as this Court's standing motion *in limine* Number 2, which precludes litigants from "introducing evidence, testimony, or argument that raises religious or political beliefs, race, ethnicity, gender, national origin, sexual orientation, or health (including but not limited to vaccination status) of a party, witness, attorney, or law firm."

10

First Amended Standing Order on Motions *In Limine* in Cases Involving Allegations of Patent Infringement and/or Breach of FRAND Obligations, As Well As Declaratory Judgment Actions Which Relate to the Same (Aug. 22, 2025) at 2.[3, 4]

These improper closing arguments should never have been made. They have tainted all of the jury proceedings that preceded them and leave little confidence that the jury will render a verdict based on the evidence, instead of based on the improper accusations and invocations that peppered the last argument they heard before deliberating. *See Clapper*, 95 F.4th at 314 (stating that closing argument "often leaves an especially powerful impression on the jury"); *Edwards*, 512 F.2d at 283-84 ("Our review of counsel's [closing] argument convinces us that it so far exceeded proper bounds and was so conducive to prejudicing the jury's verdict that it substantially affected the total fairness of the trial."); *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 276 (5th Cir. 1998) (reversing and remanding for new trial where closing argument, which appealed to Golden Rule and stoked local bias against national corporation, "infected" verdict with "passion and prejudice"). The only way to remedy Mr. Sheasby's irreparably prejudicial statements is for this Court to declare a mistrial.

---

[3] Available at https://coop.txed.uscourts.gov/sites/default/files/judgeFiles/8.22.25%20First%20Amended%20Patent%20Standing%20Limine%20Order.pdf.

[4] Throughout trial, Mr. Sheasby attempted to improperly introduce arguments that raise race, ethnicity, and national origin of defendants. For example, Mr. Sheasby elicited testimony from Dr. Quinlan that OSRAM exited the OLED display market because of "cheaper Asian brands," Trial Tr. vol. 1 (Oct. 27, 2025) at 212:22-213:1, when in fact, evidence at trial showed that OSRAM's exit was a result of OSRAM's inability to manufacture full color displays demanded by the market, Trial Tr. vol 3 (Oct. 29, 2025) at 729:6-10, 731:12-19. *See also* Trial Tr. vol. 1 (Oct. 27, 2025) at 213:14-19 (Mr. Sheasby implying that OSRAM exited due to "Asian" competition). Mr. Sheasby continued to make references to the nationalities of the parties despite the Court's clear warning that such references were improper. Trial Tr. vol. 4 (Oct. 30, 2025) at 1135:14-15 ("[Y]ou're not to continue to attach national origin to any of these topics.").

## II.    MR. SHEASBY ENGAGED IN OTHER PREJUDICIAL BEHAVIOR THROUGHOUT THE TRIAL

If there was any doubt about whether Mr. Sheasby's improper statements during closing argument pose too great a risk of having irreparably prejudiced the jury to continue, the context of the rest of the trial resolves them. These improper closing arguments do not stand alone. *See Clapper*, 95 F.4th at 314 (stating that courts should examine "the 'tactics' used during trial, taken together" (quoting *Bufford*, 994 F.2d at 158)). As outlined above, Mr. Sheasby engaged in other prejudicial and inappropriate behavior throughout the trial, including specifically about opposing counsel's integrity, "building toward [the] crescendo" of his closing argument. *Bufford*, 994 F.2d at 157. He did so even after being warned multiple times by the Court. *Cf. Clapper*, 95 F.4th at 317 (stating that "isolated remarks" do not always warrant mistrial when "examined in the aggregate"). Here, a mistrial is the only remedy for the irreparable prejudice caused by Mr. Sheasby.

### CONCLUSION

For the reasons above, Samsung respectfully requests that this Court order a mistrial.

Dated: November 2, 2025

By:    */s/ Lance Yang*

Melissa R. Smith
Texas State Bar No. 24001351
melissa@gillamsmithlaw.com
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
Fax: (903) 934-9257

D. James Pak (admitted *pro hac vice*)
Lance Yang (admitted in E.D. Tex.)
Patrick Schmidt (admitted *pro hac vice*)
djamespak@quinnemanuel.com
lanceyang@quinnemanuel.com
patrickschmidt@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
Tel: 213-443-3000
Fax: 213-443-3100

Sean S. Pak (admitted *pro hac vice*)
Melissa J. Baily (admitted in E.D. Tex.)
seanpak@quinnemanuel.com
melissabaily@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
50 California Street, 22nd Floor
San Francisco, California 94111
Tel: 415-875-6600
Fax: 415-875-6700

John Bash
Texas State Bar No. 24067504
johnbash@quinnemanuel.com
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
300 West 6th Street, Suite 2010
Austin, Texas 78701-3901
Phone: (737) 667-6100
Fax: (737) 667-6110

***Attorneys for Defendants Samsung Electronics Co., Ltd. and Samsung Electronics America, Inc.***

## CERTIFICATE OF SERVICE

Pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that, on November 2, 2025, all counsel of record who have appeared in this action are being served with a copy of the foregoing via the Court's CM/ECF system.

Dated: November 2, 2025            /s/ *Lance Yang*
                                   Lance Yang